JAMES M. PEARL (SB# 198481)
jamespearl@paulhastings.com
PAUL HASTINGS LLP
1999 Avenue of the Stars, 27th Floor
Los Angeles, CA 90067
Telephone: (310) 620-5700
Facsimile: (310) 620-5899

THOMAS P. BROWN (SB# 182916)
DEREK E. WETMORE (SB# 291600)
derekwetmore@paulhastings.com
PAUL HASTINGS LLP
101 California Street, 48th Floor
San Francisco, CA 94111
Telephone: (415) 856-7000
Facsimile: (415) 856-7100

*Attorneys for Defendants*
*Dave Inc. and Jason Wilk*

*Additional Counsel for Defendants*
*listed on next page.*

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| United States of America,<br><br>                    Plaintiff,<br><br>          vs.<br><br>Dave Inc. et al.<br><br>                    Defendants. | CASE NO. 2:24-CV-09566-MRA (AGRX)<br><br>**DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>**ORAL ARGUMENT REQUESTED**<br><br>Date:  April 28. 2025<br>Time:  1:30 p.m.<br>Dept.:  10B<br>Judge:  Hon. Monica Ramirez Almadani |

1 | *Counsel for Defendants Continued*

2 | CHRISTOPHER T. NAPIER
(*pro hac vice pending*)
3 | cnapier@mitchellsandler.com
SHELBY R. SCHWARTZ
4 | (*pro hac vice pending*)
sschwartz@mitchellsandler.com
5 | MITCHELL SANDLER PLLC
2020 K Street, NW, Suite 760
6 | Washington, DC 20036
Telephone: 202-886-5260

7 |

8 | ALLYSON BAKER
(*admitted pro hac vice*)
allysonbaker@paulhastings.com
9 | MEREDITH BOYLAN
(*admitted pro hac vice*)
10 | meredithboylan@paulhastings.com
PAUL HASTINGS LLP
11 | 2050 M Street, NW
Washington, DC 20036
12 | Telephone: (202) 551-1700
Facsimile: (202) 551-1705

13 |

14 | MARGARET SHIELDS
(*admitted pro hac vice*)
margaretshields@paulhastings.com
15 | PAUL HASTINGS LLP
200 Park Avenue
16 | New York, NY 10166
Telephone: (212) 318-6334
17 | Facsimile: (212) 319 4090

18 |

19 | *Attorneys for Defendants*
*Dave Inc. and Jason Wilk*

## <u>Table of Contents</u>

<u>Page(s)</u>

I.   INTRODUCTION .................................................................................. 10

II.  LEGAL STANDARDS .......................................................................... 14

    a.  The Amended Complaint must state a plausible claim ............................ 14

    b.  The Government's claims are subject to Federal Rule of Civil Procedure 9(b) heightened pleading standards. .................................... 15

III.  THE AMENDED COMPLAINT MUST BE DISMISSED BECAUSE IT DOES NOT PLAUSIBLY ALLEGE A ROSCA CLAIM ..................... 16

    a.  ROSCA is not nearly as broad as the Government suggests. ................. 16

        1.  The Court should reject the Government's attempt to expand ROSCA's reach to terms unrelated to the alleged negative option feature. ...................................................................... 16

        2.  Defendants did not have fair notice of the Government's expansive interpretation of ROSCA. ............................................ 19

    b.  The Government has not plausibly alleged violations even under their expansive interpretation of ROSCA. ................................... 21

        1.  The Amended Complaint does not plausibly allege that Dave failed to clearly and conspicuously disclose "all material terms" pursuant to ROSCA Section 8403(1) ............................. 21

            (i)     Dave Clearly Discloses Its Monthly Membership Fee ............ 23

            (ii)    Dave's ExtraCash Disclosures Are True ............................... 24

            (iii)   Optional express delivery fee ............................................. 26

            (iv)   Optional tip ..................................................................... 27

        2.  The Amended Complaint does not plausibly allege that Dave failed to obtain informed consent. ........................................ 28

        3.  The Amended Complaint does not plausibly allege that Dave failed to provide simple mechanisms to stop recurring charges; Count V should be dismissed ........................................ 28

    c.  The facts alleged in the Amended Complaint do not support a request for ROSCA Civil Money Penalties. .................................. 30

IV.  THE AMENDED COMPLAINT DOES NOT PLAUSIBLY ALLEGE A SECTION 5 CLAIM ........................................................................ 33

    a.  Dave's ExtraCash and tipping features do not violate Section 5 of the FTC Act ............................................................................... 33

        1.  Dave's "up to" statements are not materially misleading as a matter of law. .................................................................... 33

        2.  Dave did not mislead consumers when it disclosed that its historic tipping feature was optional .......................................... 38

V.  THE GOVERNMENT'S CLAIMS AGAINST MR. WILK SHOULD BE DISMISSED ................................................................................... 41

    a.  The claims against Mr. Wilk should be dismissed as time-barred. ..........42

    b.  The Amended Complaint does not plausibly allege facts supporting its claim that Mr. Wilk should be held individually liable. ......................43

VI.    THE AMENDED COMPLAINT MUST BE DISMISSED BECAUSE THE UNITED STATES IMPROPERLY ATTEMPTED TO SUBSTITUTE INTO THE CASE ................................................................45

CONCLUSION.........................................................................................46

CERTIFICATE OF WORD COUNT ....................................................48

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*In re Alphabet Derivative Stockholder Litig.*,
    No. 19-cv-06880-RS, 2022 US Dist. LEXIS 65184 (N.D. Cal. Apr. 7,
    2022) ........................................................................................................... 33

*AMG Cap. Mgmt., LLC v. FTC*,
    593 U.S. 67 (2021) ..................................................................................... 11

*Ashcroft v. lqbal*,
    556 U.S. 662 (2009) ................................................................................... 14

*Baba v. Hewlett-Packard Co*.,
    No. C 09-05946 RS, 2011 U.S. Dist. LEXIS 8527 (N.D. Cal. Jan.
    28, 2011) ..................................................................................................... 32

*Bahr v. Regan*,
    6 F.4th 1059 (9th Cir. 2021) ...................................................................... 18

*Baxter v. Intelius, Inc.*,
    No. SACV 09-103, 2010 U.S. Dist. LEXIS 104218 (C.D. Cal. Sept.
    16, 2010) ..................................................................................................... 39

*Bell Atl. Corp v. Twombly*,
    550 U.S. 544 (2007) ................................................................................... 14

*Berenblat v. Apple, Inc*.,
    No. 08-4969 JF (PVT), 2010 U.S. Dist. LEXIS 46052 (N.D. Cal.
    Apr. 7, 2010) .............................................................................................. 31

*Bly-Magee v. California*,
    236 F.3d 1014 (9th Cir. 2001) ................................................................... 43

*Brand Tarzana Surgical Inst. v. Aetna Life Ins. Co.*,
    No. CV 18-9434, 2019 U.S. Dist. LEXIS 238511 (C.D. Cal. May
    13, 2019) ..................................................................................................... 14

*Capps v. JPMorgan Chase Bank, N.A.*,
  No. 2:22-CV-00806-DAD-JDP, 2023 U.S. Dist. LEXIS 69935
  (E.D. Cal. Apr. 21, 2023) ............................................................... 22, 24

*Coto Settlement v. Eisenberg*,
  593 F.3d 1031 (9th Cir. 2010) ................................................................. 14

*Dreiling v. Am. Express Co.*,
  458 F.3d 942 (9th Cir. 2006) .................................................................... 11

*Dunmore v. United States*,
  358 F.3d 1107 (9th Cir. 2004) .................................................................. 45

*Ebner v. Fresh, Inc.*,
  838 F.3d 958 (9th Cir. 2016) .................................................................... 22

*Edwards v. Marin Park, Inc.*,
  356 F.3d 1058 (9th Cir. 2004) .................................................................. 42

*FCC v. Fox Television Stations, Inc.*,
  567 U.S. 239 (2012) ................................................................................. 19

*Fink v. Time Warner Cable*,
  714 F.3d 739 (2d Cir. 2013) ..................................................................... 34

*FTC v. Amazon.com, Inc.*,
  No. 2:23-CV-00932-JHC, 2024 WL 2723812 (W.D. Wash. May
  28, 2024) .............................................................................................. 29, 30

*FTC v. AMG Servs., Inc.*,
  29 F. Supp. 3d 1338 (D. Nev. 2014) ........................................................ 39

*FTC v. Cardiff*,
  No. ED 5:18-CV-02104-SJO-PLAx, 2019 U.S. Dist. LEXIS
  232069 (C.D. Cal. May 16, 2019) ............................................................ 29

*FTC v. Cyberspace.com, LLC*,
  453 F.3d 1196 (9th Cir. 2006) ....................................................... 33, 34, 39

*FTC v. D-Link Sys. Inc.*,
  No. 3:17-CV-00039-JD, U.S. Dist. LEXIS 152319 (N.D. Cal. Sept.
  19, 2017) ................................................................................................... 15

DEFTS' MOTION TO DISMISS THE AMENDED
COMPLAINT; MEMO OF Ps AND As ISO THEREOF
CASE NO. 2:24-cv-09556-MRA (AGRx)

*FTC v. Frontier Communications Corp.*
   2021 U.S. Dist. LEXIS 251311 (C.D. Cal. Oct. 3, 2021) ............................ 34, 35

*FTC v. Garvey,*
   383 F.3d 891 (9th Cir. 2004) ....................................................................... 43, 44

*FTC v. Lendingclub Corp.,*
   No. 18-cv-02454-JSC, 2018 U.S. Dist. LEXIS 246585 (N.D. Cal.
   Oct. 3, 2018) ....................................................................................................... 39

*FTC v. Lights of Am., Inc.,*
   760 F. Supp. 2d 848 (C.D. Cal. 2010)........................................................ 15, 42

*FTC v. Lights of Am. Inc.,*
   SACV 10-1333 JVS (MLGx), 2012 U.S. Dist. LEXIS 199754 ....................... 39

*FTC v. Swish Mktg.,*
   No. C 09-03814 RS, 2010 U.S. Dist. LEXIS 15016 (N.D. Cal. Feb.
   22, 2010)........................................................................................................ 43, 44

*Gilberg v. Cal. Check Cashing Stores, LLC,*
   913 F.3d 1169 (9th Cir. 2019) ........................................................................... 22

*Gonzalez v. Planned Parenthood of L.A.,*
   759 F.3d 1112 (9th Cir. 2014) ........................................................................... 14

*Haskell v. Time, Inc.,*
   857 F. Supp. 1392 (E.D. Cal. 1994) .................................................................. 38

*Herron v. Best Buy Co. Inc.,*
   924 F. Supp. 2d 1161 (E.D. Cal. 2013) ............................................................. 35

*Hooper v. Jerry Ins. Agency, LLC,*
   675 F. Supp. 3d 1027 (N.D. Cal. 2023)............................................................. 22

*Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA,*
   559 U.S. 573 (2010) ........................................................................................... 31

*Kearns v. Ford Motor Co.,*
   567 F.3d 1120 (9th Cir. 2009) ........................................................................... 16

*Keebaugh v. Warner Bros. Entertainment Inc.,*
   100 F.4th 1005 (9th Cir. 2024)........................................................................... 24

- 5 -

*Keefer v. Ryder Integrated Logistics, Inc.*,
    No. 23-15225, 2024 U.S. App. LEXIS 6726 (9th Cir. Mar. 21,
    2024) ........................................................................................................22, 24

*Klaizner v Countrywide Fin.*,
    2015 US Dist. LEXIS 18176 (D. Nev. Feb. 12, 2015).....................................43

*Knowles v. Arris Int'l plc*, No. 17-CV-01834-LHK, 2019 U.S. Dist.
    LEXIS 142293 (N.D. Cal. Aug. 20, 2019), *aff'd*, 847 F. App'x 512
    (9th Cir. 2021) ................................................................................................34

*Landgraf v. USI Film Prods.*,
    511 U.S. 244 (1994) ........................................................................................19

*Maloney v. Verizon Internet Servs.*,
    No. ED CV 08-1885-SGL(AGRx), 2009 U.S. Dist. LEXIS 131027
    (C.D. Cal. Oct. 4, 2009), *aff'd*, 413 F. App'x 997 (9th Cir. 2011) .............34, 35

*Marsh v. Zaazoom Sols., LLC*,
    No. C-11-05226-YGR, 2012 U.S. Dist. LEXIS 37758 (N.D. Cal.
    Mar. 20, 2012) ..........................................................................................17, 19

*Millam v. Energizer Brands, LLC*,
    No. 5:21-cv-01500-JWH-SHKx, 2022 U.S. Dist. LEXIS 239864
    (C.D. Cal. Dec. 9, 2022)..................................................................................34

*Mk Mgmt. v. Hartford Cas. Ins. Co.*,
    No. SA CV 19-01567-DOC, 2019 U.S. Dist. LEXIS 232412 (C.D.
    Cal. Sep. 20, 2019) ..........................................................................................11

*Moore v. Mars Petcare US, Inc.*,
    966 F.3d 1007 (9th Cir. 2020)..........................................................................33

*Oberstein v. Live Nation Ent., Inc.*,
    60 F.4th 505 (9th Cir. 2023).............................................................................24

*Pasco Sanitary Landfill NPL Site Indus. Waste Area Generator Grp.
    III v. Basin Disposal, Inc*,
    No. 4:15-CV-05022-SMJ, 2015 WL 12516735 (E.D. Wash. Nov.
    16, 2015)..........................................................................................................45

*Silva v. WhaleCo, Inc.*,
    No. 24-CV-02890-SK, 2024 U.S. Dist. LEXIS 187951 (N.D. Cal.
    Oct. 10, 2024)..................................................................................................24

- 6 -

*Tomek v. Apple Inc.*,
    636 F.App'x 712 (9th Cir. 2016)...................................................................34

*U.S. for the Use and Benefit of Wulff v. CMA, Inc.*,
    890 F.2d 1070 (9th Cir. 1989)......................................................................45

*United States v. MyLife.com, Inc.*,
    567 F. Supp. 3d 1152 (C.D. Cal. 2021)...................................................29, 44

*United States v. Nat'l Fin. Servs.*, Inc.,
    98 F.3d 131 (4th Cir. 1996)..........................................................................30

*United States v. Ritchie*,
    342 F.3d 903 (9th Cir. 2003)........................................................................14

*United States v. Stratics Networks Inc.*,
    721 F. Supp. 3d 1080 (S.D. Cal. 2024).................................................30, 32, 44

*Vess v. Ciba-Geigy Corp. USA*,
    317 F.3d 1097 (9th Cir. 2003)......................................................................15

*Wilson v. Hewlett-Packard Co.*,
    668 F.3d 1136 (9th Cir. 2012).................................................................31, 32, 44

**Statutes**

15 U.S.C. § 45(m)(1)(A)......................................................................................30

15 U.S.C. § 57b(d)...............................................................................................42

15 U.S.C. § 8401-8403 ..............................................................................*passim*

28 U.S.C. § 2462.................................................................................................42

**Rules and Regulations**

16 C.F.R. § 310(w) ................................................................................11, 16, 17, 27

16 C.F.R. § 425.4(a) ...........................................................................................18

88 Fed. Reg. 24716.............................................................................................18

88 Fed. Reg. 24717.............................................................................................20

88 Fed. Reg. 24723.............................................................................................20

DEFTS' MOTION TO DISMISS THE AMENDED
COMPLAINT; MEMO OF Ps AND As ISO THEREOF
CASE NO. 2:24-cv-09556-MRA (AGRx)

88 Fed. Reg. 24726 ............................................................................... 18

89 Fed. Reg. 90476 ......................................................................... 18, 21

89 Fed. Reg. 90478 ............................................................................... 20

89 Fed. Reg. 90479 ......................................................................... 18, 20

89 Fed. Reg. 90538 ............................................................................... 21

Fed. R. Civ. P. 9(b) ........................................................................ *passim*

Fed. R. Civ. P. 12(b)(6) ................................................................. 10, 14

Fed. R. Civ. P. 15(c)(1)(C) ................................................................ 42

Fed. R. Civ. P. 17(a) ..................................................................... 45, 46

Fed. R. Civ. P. 25 ................................................................................ 45

**Other Authorities**

CFPB, *What is an ACH transaction?* (May 14, 2024),
    https://www.consumerfinance.gov/ask-cfpb/what-is-an-ach-
    transaction-en-1065/ .................................................................... 27

Dave Inc.'s Form 8-K, Ex. 99.1 (Dec. 31, 2024),
    https://www.sec.gov/Archives/edgar/data/1841408/0001193125242
    87056/d888866d8k.htm .............................................................. 11

Dave Inc.'s Form 8-K Ex. 99.1 (Feb. 20, 2025),
    https://www.sec.gov/ix?doc=/Archives/edgar/data/0001841408/000
    119312525030195/d836526d8k.htm ............................................ 11

FTC, *.com Disclosures* (Mar. 2013),
    https://www.ftc.gov/system/files/documents/plain-language/bus41-
    dot-com-disclosures-information-about-online-advertising.pdf ......... 22

Holyoak, *Dissenting Statement of Commissioner Melissa Holyoak,
    Negative Option Rule* (Oct. 16, 2024),
    https://www.ftc.gov/system/files/ftc_gov/pdf/holyoak-dissenting-
    statement-re-negative-option-rule.pdf ........................................... 18

DEFTS' MOTION TO DISMISS THE AMENDED
COMPLAINT; MEMO OF Ps AND As ISO THEREOF
CASE NO. 2:24-09556-MRA (AGRx)

Wilson, *Dissenting Statement of Commissioner Christine Wilson, Notice of Proposed Rulemaking, Negative Option Rule* (Mar. 23, 2023), https://www.ftc.gov/system/files/ftc_gov/pdf/p064202_commissioner_wilson_dissent_negative_option_rule_finalrevd_0.pdf ................................ 18

DEFTS' MOTION TO DISMISS THE AMENDED
COMPLAINT; MEMO OF Ps AND As ISO THEREOF
CASE NO. 2:24-cv-09556-MRA (AGRx)

1   Dave Inc. ("Dave" or the "Company") and Jason Wilk ("Wilk") (collectively,

2   "Defendants") submit this combined Motion to Dismiss the Amended Complaint

3   pursuant to Fed. R. Civ. P. 12(b)(6).

4   Through a procedurally improper process, the Department of Justice ("DOJ"

5   or "Government") filed an Amended Complaint substituting the United States for the

6   Federal Trade Commission ("FTC") as the purported real party in interest.  The

7   Amended Complaint restates the FTC's original Restore Online Shoppers'

8   Confidence Act ("ROSCA") and Section 5 of the FTC Act ("Section 5") claims,

9   and—without justification—now asserts that Mr. Wilk is also individually liable for

10  these alleged violations.  In addition, the Government now seeks Civil Money

11  Penalties in connection with the previously alleged ROSCA claims.

12  The Amended Complaint suffers from the same deficiencies as the Complaint,

13  plus new ones.  The Court should reject the Government's attempt to rehabilitate the

14  FTC's flawed Complaint and dismiss the Amended Complaint with prejudice.

15  **I.    INTRODUCTION**

16  Dave is a financial technology company that provides consumers with a fully

17  integrated, mobile-first platform, to deliver innovative financial products designed to

18  help underserved consumers manage their money more effectively.  The Company

19  was launched to provide a faster, more transparent, and lower-cost alternative to

20  traditional financial institutions, particularly for those living paycheck to paycheck.

21  Dave's mission is to level the financial playing field by providing intuitive,

22  transparent, and accessible solutions that empower Dave's consumers to navigate

23  life's financial challenges with confidence and at a fraction of the cost of the services

24  offered by big banks and high interest lenders.

25  For $1 a month, Dave connects to a user's existing external bank account to

26  offer a variety of financial tools and products, including ExtraCash, automated

27  savings, credit monitoring, budgeting and financial education tools, and opportunities

28

- 10 -

DEFTS MOTION TO DISMISS THE AMENDED
COMPLAINT; MEMO OF Ps AND As ISO THEREOF
CASE NO. 2:24-cv-09556-MRA (AGRx)

1    to earn money through in-app surveys and job boards.[1]  Dave's members are charged

2    the $1 fee on a monthly basis and can cancel at any time in Dave's App or by

3    contacting Dave's customer service.

4          Dave advertises its products, primarily through digital channels, just like

5    nearly every other personal financial app and most financial institutions.  And Dave

6    takes great care to ensure that its advertisements and disclosures are straightforward

7    and transparent.    Yet the United States—stepping in inexplicably (and without

8    following the Federal Rules of Civil Procedure)—relies on a number of undated

9    advertisements and excerpts from Dave's user interface to claim that Dave failed to

10    follow ROSCA and Section 5.[2]  It does so without plausibly alleging a violation of

11    either statute.

12          ROSCA requires companies to disclose all "material terms" of a transaction

13    effectuated through a "negative option feature" before obtaining billing information.

14    A negative option feature is effectively a valid-until-cancelled contract.[3]    The

15    Amended Complaint alleges that Dave's $1 per month membership is such a feature.

16    According to the Amended Complaint, under ROSCA, Dave must disclose the

17

18    [1] Dave's offerings, consumer interface, application, and website have changed over time.  For
example, Dave recently transitioned to a simplified mandatory fee structure that eliminates optional
19    tips and express fees for the Company's ExtraCash product.  *See* Dave Inc.'s Form 8-K, Ex. 99.1
(Dec.                         31,                         2024),
20    https://www.sec.gov/Archives/edgar/data/1841408/000119312524287056/d888866d8k.htm; *see
also*   Dave   Inc.'s   Form   8-K,   Ex.   99.1   (Feb.   20,   2025),
21    https://www.sec.gov/ix?doc=/Archives/edgar/data/0001841408/000119312525030195/d836526d
8k.htm. Unless otherwise noted, this Motion to Dismiss addresses the screenshots and allegations
22    in the Amended Complaint.  The court may take judicial notice of SEC filings.  *See Mk Mgmt. v.
Hartford Cas. Ins. Co.*, No. SA CV 19-01567-DOC (ADSx), 2019 U.S. Dist. LEXIS 232412, at *8
23    (C.D. Cal. Sep. 20, 2019) (taking judicial notice of a Form 10-k); *Dreiling v. Am. Express Co.*, 458
F.3d 942, 946 n.2 (9th Cir. 2006) (the court "may consider documents referred to in the complaint
24    or any matter subject to judicial notice, such as SEC filings.").
[2] The Government's attempt to shoehorn its version of the "facts" into a ROSCA claim is not
25    surprising.  ROSCA is the Government's avenue to receive a monetary judgment; the Supreme
Court curtailed the government's ability to obtain monetary relief for alleged deceptive practices
26    under Section 5. *AMG Cap. Mgmt., LLC v. FTC*, 593 U.S. 67 (2021).
[3] A negative option is a provision "under which the customer's silence or failure to take an
27    affirmative action to reject goods or services or to cancel the agreement is interpreted by the seller
as acceptance of the offer." 16 C.F.R. § 310.2(w).

28

DEFTS' MOTION TO DISMISS THE AMENDED
COMPLAINT; MEMO OF Ps AND As ISO THEREOF
CASE NO. 2:24-cv-09556-MRA (AGRx)

material terms of this valid-until-cancelled membership before collecting billing information from prospective customers. That's exactly what Dave does. And the Amended Complaint does not allege otherwise. The other items that the Government contends Dave failed to adequately disclose—ExtraCash eligibility amounts, optional express fees for expedited ExtraCash delivery, and optional tipping—are not "material terms" of the negative option under the ROSCA statute. Rather, they relate to optional features of the ExtraCash product, which is one of many products offered to members. And, thus, Dave was not obligated to provide full disclosures about these offerings prior to obtaining billing information. ROSCA also requires companies offering a valid-until-cancelled contract to have simple cancellation mechanisms. Dave satisfied this obligation, as well. In fact, the Amended Complaint acknowledges that thousands of customers successfully cancel Dave's membership every month. (Am. Compl. ¶ 41). The Government has not pleaded sufficient facts to make out a ROSCA violation, let alone to support the imposition of Civil Monetary Penalties under ROSCA, which requires the Government to show that Defendants knew, or were reckless in not knowing, that they were violating the law.

The Government's Section 5 claim fares no better. Dave's allegedly offending statements are not misleading as a matter of law because they do not deceive a reasonable consumer. *First*, the Amended Complaint alleges that Dave's representation that it provides cash advances "up to" a certain amount is misleading, even though the plain language of the statement could not be clearer: Dave members may be eligible for up to $500. The statement that Dave provides "up to" $500 is unequivocally true; some Dave members receive $500 through ExtraCash, as the Amended Complaint acknowledges. The Government's position, as such, contravenes Ninth Circuit precedent. *Second*, to support its tipping allegations, the Government ignores Dave's clear disclosures on the very screenshots the Government includes in the Amended Complaint. The Government's allegations

assume that consumers cannot understand short and plain text. But that's not the law. The Ninth Circuit applies a "reasonable consumer" standard. Reasonable consumers understand that optional tips are not mandatory fees, just as they understand that "up to" $500 does not mean that everyone will receive $500.

The Government's allegations against Dave's Chief Executive Officer ("CEO") Mr. Wilk likewise fail. To survive a motion to dismiss, the Amended Complaint must plausibly allege that Mr. Wilk participated directly in the acts, had authority to control them, and that he knew about the alleged misrepresentations or was recklessly indifferent to them. It does not. Instead, the Amended Complaint relies on conclusory (and largely undated) allegations to suggest that Mr. Wilk "knew" about customer complaints concerning advance amounts and the membership fee, and that Mr. Wilk received information about tipping. These conclusory allegations—which do not show that Mr. Wilk controlled or participated directly in the conduct that allegedly violated ROSCA and Section 5, or that he knew about the alleged violations, or that he was recklessly indifferent to the alleged violations—are insufficient to establish individual liability.

Despite what the Government alleges, customers like Dave and the services Dave offers. Dave maintains a 4.8-star rating (out of 5 stars) on the Apple App Store, based on more than 716,000 reviews,[4] and a 4.4-star rating (out of 5 stars) on the Google Play Store, based on more than 540,000 reviews.[5] No amount of cherry-picked customer complaints, cites to incomplete data, or mischaracterized internal Dave communications and documents can change that objective reality. And although it is troubling that the Government would take such liberties with the facts in its Amended Complaint (despite Dave having repeatedly informed the FTC of

---

[4] App Store Preview, *https://apps.apple.com/us/app/dave-fast-cash-banking/id1193801909* (last visited Feb. 26, 2025).
[5] Google Play, *https://play.google.com/store/apps/details?id=com.dave&hl=en-US* (last visited Feb. 26, 2025).

clear factual errors in the original Complaint prior to filing), none of the Government's distortions change the most important fact: the Amended Complaint does not plausibly allege that Dave's advertisements and disclosures are deceptive or deficient.

The Amended Complaint fails as a matter of law and must be dismissed.

## II.    LEGAL STANDARDS

### a.  The Amended Complaint must state a plausible claim.

Under Federal Rule of Civil Procedure 12(b)(6), "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. lqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp v. Twombly*, 550 U.S. 544, 570 (2007)).

When deciding a motion to dismiss, courts may consider "documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice—without converting the motion to dismiss into a motion for summary judgment." *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003). The incorporation-by-reference doctrine extends to "situations where the complaint necessarily relies upon a document or the contents of the document are alleged in a complaint, the document's authenticity is not in question and there are no disputed issues as to the document's relevance." *Brand Tarzana Surgical Inst. v. Aetna Life Ins. Co.*, No. CV 18-9434 (AGRx), 2019 U.S. Dist. LEXIS 238511, at *3–4 (C.D. Cal. May 13, 2019) (citing *Coto Settlement v. Eisenberg*, 593 F.3d 1031, 1038 (9th Cir. 2010)).   A court need not accept conclusory allegations that contradict documents attached to or incorporated in the complaint, or matters subject to judicial notice. *Gonzalez v. Planned Parenthood of L.A.*, 759 F.3d 1112, 1115 (9th Cir. 2014).

### b. The Government's claims are subject to Federal Rule of Civil Procedure 9(b) heightened pleading standards.

District courts in the Ninth Circuit have routinely held that the heightened pleading standards of Federal Rule of Civil Procedure Rule 9(b) apply to deception claims under Section 5 of the FTC Act where, as here, the Government alleged that the defendant violated the Act by deceiving consumers with misleading or false statements. *See, e.g.*, *FTC v. Lights of Am., Inc.*, 760 F. Supp. 2d 848, 852–53 (C.D. Cal. Dec. 17, 2010) (applying Rule 9(b) where FTC alleged that "representations were 'false or not substantiated,'" and "conduct was unfair or deceptive."); *FTC v. D-Link Sys. Inc.*, No. 3:17-CV-00039-JD, U.S. Dist. LEXIS 152319, at *3–5 (N.D. Cal. Sept. 19, 2017) (holding that Rule 9(b) applied to a claim under Section 5(a) regarding misleading statements made by a company to consumers).[6]

Similarly, the Government contends that a violation of ROSCA "constitutes an unfair or deceptive act or practice in violation of Section 5(a) of the FTC Act." The ROSCA claims are thus similarly grounded in (false) claims of deception and misrepresentation in connection with the disclosures and cancellation mechanisms and therefore must be plead with particularity. *See D-Link Systems, Inc.*, 2017 U.S. Dist. LEXIS 152319, at *4 ("Our circuit has consistently held that UCL and similar consumer claims rooted in allegations of false or misleading statements about a product sound in fraud and must meet Rule 9(b)'s requirements.").

Under Rule 9(b), to state a claim for fraud, a party must plead with "particularity the circumstances constituting the fraud," and the allegations must "be specific enough to give defendants notice of the particular misconduct . . . so that they can defend against the charge and not just deny that they have done anything

---

[6] The United States alleges that Dave deceived customers through omission and with misleading or false statements. Such claims sound in fraud. And where claims are "grounded in fraud" or "sound in fraud," the pleadings must satisfy the particularity requirements of Fed. R. Civ. P. 9(b). *See Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1104–05 (9th Cir. 2003).

wrong." *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124 (9th Cir. 2009) (internal citation and quotation omitted).   The Government's Amended Complaint here repeatedly levels temporally ambiguous conclusory allegations about what Dave disclosed (or allegedly failed to disclose) to consumers.  Rule 9(b) requires far more.

## III.   THE AMENDED COMPLAINT MUST BE DISMISSED BECAUSE IT DOES NOT PLAUSIBLY ALLEGE A ROSCA CLAIM

ROSCA requires that a business that offers a good or service through a valid-until-cancelled contract to do three things: (1) clearly and conspicuously disclose the material terms of the subscription before collecting billing information; (2) obtain express informed consent; and (3) provide simple mechanisms to "to stop recurring charges from being placed on the consumer's credit card, debit card, bank account, or other financial account."  15 U.S.C. § 8403.  The Amended Complaint does not allege facts that, if true, would enable a court to conclude that Dave violated ROSCA. Instead, the Amended Complaint attempts to stretch the meaning and scope of ROSCA beyond recognition.

### a.  ROSCA is not nearly as broad as the Government suggests.

1. *The Court should reject the Government's attempt to expand ROSCA's reach to terms unrelated to the alleged negative option feature.*

Government alleges that Dave violated Section 8403 of ROSCA (15 U.S.C. § 8403), which is titled "Negative option marketing on the Internet." [7]   The

---

[7] Section 8403 states:

**Negative option marketing on the Internet**
It shall be unlawful for any person to charge or attempt to charge any consumer for any goods or services sold in a transaction effected on the Internet through a negative option feature (as defined in the Federal Trade Commission's Telemarketing Sales Rule [TSR] in part 310 of title 16, Code of Federal Regulations), unless the person—

1. provides text that clearly and conspicuously discloses all material terms of the transaction before obtaining the consumer's billing information;
2. obtains a consumer's express informed consent before charging the consumer's credit card, debit card, bank account, or other financial account for products or services through such transaction; and

Government's theory seems to be that because Dave allegedly offers a product with a negative option feature—according to the Government, this is the $1 monthly Dave membership (Am. Compl. ¶ 102)[8]—Dave was required to disclose "all material terms," even those *wholly unrelated* to the $1 membership, prior to obtaining consumers' billing information.  *See* 15 U.S.C. § 8403(1).  By failing to do so, the Government reasons, Dave violated ROSCA.  This argument distorts ROSCA beyond recognition.  The Government distorts the statute's requirement to disclose "material terms"—which the statute does not define—to mean all terms, including terms that do not relate to the $1 monthly membership fee—i.e., details regarding ExtraCash eligibility, the option to expedite the transfer of funds through an optional express delivery fee, and the ability to leave an optional tip.  All of these relate to optional aspects of ExtraCash, which is only one of the products available to Dave members.

ROSCA's disclosure requirements do not apply to terms unrelated to a negative option feature, that is, the specific feature relating to the subscription and the decision around whether to pay for the subscription.  The FTC agrees, which is why the FTC has passed a ***new*** rule to expand disclosure requirements beyond what Congress dictated in ROSCA.    In commentary preceding the Commission's announcement of its recent "Click to Cancel" Rule[9]—which is designed to fill gaps

---

3.   provides simple mechanisms for a consumer to stop recurring charges from being placed on the consumer's credit card, debit card, bank account, or other financial account.

[8] Dave does not concede that its membership fee is a "negative option feature," as defined in the Telemarketing Sales Rule and reserves future arguments on this point.  *See* 16 C.F.R. § 310.2(w) ("Negative option feature means, in an offer or agreement to sell or provide any goods or services, a provision under which the customer's silence or failure to take an affirmative action to reject goods or services or to cancel the agreement is interpreted by the seller as acceptance of the offer."); *see also Marsh v. Zaazoom Sols., LLC*, No. C-11-05226-YGR, 2012 U.S. Dist. LEXIS 37758, at *24 (N.D. Cal. Mar. 20, 2012) (discussing ROSCA and "trial-membership periods for online services where consumers understood they would have an opportunity to accept or reject the membership offer at the end of the trial period ('negative options')").

[9] The Rule is formally known as the "'Rule Concerning Use of Prenotification Negative Option Plans,' retitled the 'Rule Concerning Recurring Subscriptions and Other Negative Option Programs.'"

DEFTS' MOTION TO DISMISS THE AMENDED
COMPLAINT; MEMO OF Ps AND As ISO THEREOF
CASE NO. 2:24-cv-09556-MRA (AGRx)

in the existing regulatory regime [10] —the Commission implicitly recognized ROSCA's limitations, noting that the new rule is intended to "prohibit[] any person from misrepresenting, expressly or by implication, any material fact regarding the entire agreement—***not just facts related to a negative option feature***."[11]  If ROSCA reached all material terms, not just those related to the negative option, this expansion would indeed be superfluous.  Moreover, some FTC Commissioners have noted that the Click to Cancel Rule's requirement to disclose material facts relating to the entire agreement[12] is inconsistent with ROSCA.  One former Commissioner stated: "[t]he requirement in ROSCA to disclose 'all material terms of the transaction' cannot reasonably be interpreted to include all product efficacy claims or any material fact about the underlying good or service."[13]  Another Commissioner noted that the "capacious" Click to Cancel Rule "goes well beyond what existing laws, such as the Restore Online Shoppers' Confidence Act ("ROSCA"), Telemarketing Sales Rule ("TSR"), or Regulation E require."[14]

Of course, the Government cannot (and does not, at least overtly) assert a claim under the Click to Cancel Rule, which went into effect on January 14, 2025—two weeks after the Government filed the Amended Complaint.  After all, "'[i]f the statute [or regulation] would operate retroactively, our traditional presumption teaches that it does not govern.'"  *See Bahr v. Regan*, 6 F.4th 1059, 1072 (9th Cir. 2021) (*quoting*

---

[10] *See* Negative Option Rule, 89 Fed. Reg. 90476, 90479 (Nov. 15, 2024).

[11] Notice of Proposed Negative Option ("Click to Cancel") Rule, 88 Fed. Reg. 24716, 24726 (Apr. 24, 2023) (emphasis added).

[12] The Click to Cancel Rule requires disclosure of "all Material terms, regardless of whether those terms directly relate to the Negative Option Feature." 16 C.F.R. 425.4(a).

[13] Christine A. Wilson, *Dissenting Statement of Commissioner Christine Wilson, Notice of Proposed Rulemaking, Negative Option Rule* (Mar. 23, 2023), https://www.ftc.gov/system/files/ftc_gov/pdf/p064202_commissioner_wilson_dissent_negative_option_rule_finalrevd_0.pdf. Commissioner Wilson also stated: "The provisions in Section 8403 were ancillary to the intent of the statute and there is no indication in the statute or the legislative history that they were intended to confer on the Commission authority to seek civil penalties or redress for representations wholly unrelated to the terms of the negative option feature." *Id.*

[14] Melissa Holyoak, *Dissenting Statement of Commissioner Melissa Holyoak, Negative Option Rule* (Oct. 16, 2024), https://www.ftc.gov/system/files/ftc_gov/pdf/holyoak-dissenting-statement-re-negative-option-rule.pdf.

*Landgraf v. USI Film Prods*., 511 U.S. 244, 280 (1994)).  Yet, the Government, borrowing FTC's expansive interpretation of ROSCA in the Complaint—and its assertion that ROSCA's disclosure requirements apply to terms outside of those regarding Dave's $1 monthly membership fee—appears to be dressing up a claim under the Click to Cancel Rule as an alleged ROSCA violation to elude these retroactivity principles.  This is improper and should be rejected.

### 2. *Defendants did not have fair notice of the Government's expansive interpretation of ROSCA.*

If the Government truly had such an expansive interpretation of ROSCA, no one, including Dave, had fair notice of this application of ROSCA Specifically, no one would have known how to comply with these newly-articulated disclosure and cancellation provisions as the Government interprets them in the Amended Complaint.  It is "[a] fundamental principle in our legal system" that parties must be given "fair notice of conduct that is forbidden." *FCC v. Fox Television Stations, Inc*., 567 U.S. 239, 253 (2012).[15]

This newly-articulated interpretation distorts ROSCA's statutory language and legislative history.  For example, nothing in ROSCA's Declaration of Policy suggests that Congress intended ROSCA to be used in the way that the Government proposes to use it here.  *See* 15 U.S.C. § 8401.  The Government cites this provision in support of its ROSCA Count (Am. Compl. ¶ 99) but omits other critical context that appears in this section.  Section 8401 explains that Congress enacted ROSCA against the backdrop of an investigation into the sales tactics of third-party marketing companies that "offered membership clubs to consumers as they were in the process of completing their initial transactions" with other online retailers.[16]  *See also Marsh v.*

---

[15] There are no regulations implementing ROSCA.  This, however, does not mean that the Government is free to distort and expand ROSCA's terms and requirements as it sees fit and without notice.  The Government should not be permitted to take advantage of a Constitutional loophole.

[16] The marketing companies often enrolled consumers in a free trial period "after which they periodically charged consumers until consumers affirmatively canceled the memberships." 15

DEFTS' MOTION TO DISMISS THE AMENDED COMPLAINT; MEMO OF Ps AND As ISO THEREOF
CASE NO. 2:24-cv-09556-MRA (AGRx)

*Zaazoom Sols., LLC,* No. C-11-05226-YGR, 2012 U.S. Dist. LEXIS 37758, at *23 (N.D. Cal. Mar. 20, 2012) ("With respect to ROSCA, the premise of the statute is simple—it requires transparency by post-transaction third-party sellers where the consumers are in the process of completing a transaction with an initial merchant."). This scenario bears no resemblance to the facts alleged here.

Dave also did not have fair notice of how the FTC is interpreting ROSCA's individual requirements. The FTC, in statements relating to the Click to Cancel rulemaking process, acknowledged that ROSCA does not specifically state what conduct complies with the statute but rather only offers "general provisions related to disclosures, consent, and cancellation."[17] Indeed, ahead of issuing the Click to Cancel Rule (and to explain the need for it), the FTC recognized that:

- ROSCA does not "prescribe specific steps marketers must follow to comply with these [disclosure] provisions."[18]

- ROSCA's uncertainty about what constitutes a "clear and conspicuous" disclosure is a "shortcoming" noted by state regulators, who commented that ROSCA "lacks specificity as to how informed consent should be obtained or how clear and conspicuous disclosures should be made."[19]

- ROSCA does not explain "simple mechanisms" for cancellation. The FTC wrote, "ROSCA lacks specificity about cancellation procedures and the placement, content, and timing of cancellation-related disclosures. Instead, the statute requires marketers to provide 'simple mechanisms' for the consumer to stop recurring charges without guidance about what is simple."[20]

ROSCA, as the FTC has admitted, does not provide an adequate explanation of what conduct is required and what conduct is forbidden under its strictures. Because the Defendants did not have fair notice of the government's novel

---

U.S.C. § 8401(8). Congress concluded that "[t]his use of 'free to pay conversion' and 'negative option' sales took advantage of consumers' expectations that they would have an opportunity to accept or reject the membership club offer at the end of the trial period." *Id.*

[17] Notice of Proposed Rule, Negative Option ("Click to Cancel") Rule, 88 Fed. Reg. at 24717.

[18] Negative Option Rule, 89 Fed. Reg. at 90478.

[19] Notice of Proposed Negative Option Rule, 88 Fed. Reg. at 24723.

[20] Negative Option Rule, 89 Fed. Reg at 90479.

DEFTS' MOTION TO DISMISS THE AMENDED COMPLAINT; MEMO OF Ps AND As ISO THEREOF CASE NO. 2:24-cv-09556-MRA (AGRx)

interpretation of ROSCA, the Amended Complaint's ROSCA claims (Counts III through V) and its request for Civil Monetary Penalties (which, as discussed below, requires that the Defendants violated ROSCA with "actual knowledge or knowledge fairly implied on the basis of objective circumstances"), should be dismissed.

### b. The Government has not plausibly alleged violations even under their expansive interpretation of ROSCA.

1. *The Amended Complaint does not plausibly allege that Dave failed to clearly and conspicuously disclose "all material terms" pursuant to ROSCA Section 8403(1).*

ROSCA's "Negative option marketing on the Internet" provision states that for "any goods or services sold in a transaction effected on the Internet[21] through a negative option feature," a business must provide "text that clearly and conspicuously discloses all material terms of the transaction before obtaining the consumer's billing information." 15 U.S.C. § 8403(1) The Government claims that Dave violated ROSCA because it did not sufficiently disclose "all material transaction terms" (Am. Compl. ¶ 106). ROSCA does not define "material terms," but, as discussed above, Section 8403's disclosure requirements (and thus its materiality requirements) apply only to the negative option feature, i.e., the subscription itself.

Here, however, according to the Government, the material terms that Dave was required to disclose, but didn't, are that: (i) it charges consumers a "recurring membership subscription fee"; (ii) it offers few cash advances at or near the amounts advertised; (iii) consumers pay an additional, optional fee to receive expedited disbursements; and (iv) Dave "charges" consumers an optional tip. *See* Am. Compl. ¶106.  As discussed below, the only one of these items that could plausibly be

---

[21] ROSCA does not define "Internet," or state whether transacting on a mobile app, like Dave, is a transaction "effected on the Internet." The FTC, apparently recognizing that the term "Internet" may be construed narrowly, provided a new term in its Click to Cancel Rule "for clarity." It defines an "interactive electronic medium," as including communications through the "internet, mobile application, text, chat, instant message, email, software, or any online service." Negative Option Rule, 89 Fed. Reg. at 90538.

DEFTS' MOTION TO DISMISS THE AMENDED
COMPLAINT; MEMO OF Ps AND As ISO THEREOF
CASE NO. 2:24-cv-09556-MRA (AGRx)

considered material to the negative option transaction is the $1 membership fee; ROSCA does not apply to the others.

ROSCA does not define "clear and conspicuous" either. In other contexts, however, a disclosure has been defined as "'clear' if it is 'reasonably understandable' and unclear if it 'would confuse a reasonable reader' or if 'a reasonable person would not understand the language.'" *Keefer v. Ryder Integrated Logistics, Inc*., No. 23-15225, 2024 U.S. App. LEXIS 6726, at *2 (9th Cir. Mar. 21, 2024) (*quoting Gilberg v. Cal. Check Cashing Stores, LLC*, 913 F.3d 1169, 1176–77 (9th Cir. 2019)). The sufficiency of disclosures is evaluated under a "reasonable consumer" standard. *Ebner v. Fresh, Inc*., 838 F.3d 958, 965 (9th Cir. 2016).[22] And, when terms are disclosed near requests for customers to provide their consent, or to take some other action, they are often found to be clear and conspicuous. *Capps v. JPMorgan Chase Bank, N.A.*, No. 2:22-CV-00806-DAD-JDP, 2023 U.S. Dist. LEXIS 69935, at *11 (E.D. Cal. Apr. 21, 2023) ("The notice is conspicuously displayed directly above the 'Create Your Account' button and is in regular sized, bold font."); *Hooper v. Jerry Ins. Agency, LLC*, 675 F. Supp. 3d 1027, 1034–35 (N.D. Cal. 2023) ("[T]he notice text is plainly readable." The dark grey text contrasts clearly with the white background and is "conspicuously displayed directly . . . below the action button."). Indeed, the FTC's own guidance regarding ".Com" disclosures highlights the importance of proximity, color, plain language, and repeated disclosures,[23] all of which are present in Dave's advertisements and app flow.

Even if the Government's expansive definition of "material terms" is correct, Dave appropriately disclosed all terms the Government alleges are material. The Amended Complaint does not plausibly allege otherwise.

---

[22] This standard "requires a probability that a significant portion of the general consuming public or of targeted consumers, acting reasonably in the circumstances, could be misled." *Id.* (applying California law) (internal quotation and citation omitted).

[23] *See* FTC, *.com Disclosures* (Mar. 2013), https://www.ftc.gov/system/files/documents/plain-language/bus41-dot-com-disclosures-information-about-online-advertising.pdf.

DEFTS' MOTION TO DISMISS THE AMENDED COMPLAINT; MEMO OF Ps AND As ISO THEREOF CASE NO. 2:24-cv-09556-MRA (AGRx)

(i)    **Dave Clearly Discloses Its Monthly Membership Fee**.    The Government alleges that Dave does not sufficiently disclose that it "charge[s] consumers a recurring membership subscription fee" prior to collecting their "billing information." (Am. Compl. ¶ 106(d)).[24]  Not so.  The Amended Complaint itself shows that, during the enrollment process, and prior to obtaining consumers' bank information, Dave clearly and conspicuously discloses that customers will be charged a recurring $1 monthly membership fee. *See* Am. Compl. ¶ 27.  This is demonstrated in what the Amended Complaint describes as "App Screenshot 3," as shown below:



(Am. Compl. ¶ 27).

Dave's interface does not draw consumers' attention away from the subscription terms (Am. Compl. ¶ 28).  Rather, directly above the button prompting a user to connect a bank account is text stating: "Dave charges a membership fee of $1 per month to connect your bank.  Questions?  See our FAQs."  The disclosure is presented in regular font that does not appear markedly smaller than the surrounding

---

[24] ROSCA does not define "billing information."  The Government suggests, without specificity, that Dave obtains billing information when customers click the "Connect account" button referenced in ¶¶ 27–28.  But this ambiguous allegation fails Rule 9(b)'s heightened pleading requirements.

DEFTS MOTION TO DISMISS THE AMENDED COMPLAINT; MEMO OF Ps AND As ISO THEREOF
CASE NO. 2:24-cv-09556-MRA (AGRx)

text, "See our FAQs" stands out with bolded blue text, and the consumer is prompted to take action—connecting a bank account—only after the disclosure is displayed in immediate proximity.  *See Capps*, 2023 U.S. Dist. LEXIS 69935, at *9 (finding notice conspicuous when displayed directly above a create account button).[25]

The Amended Complaint thus demonstrates that the fact and terms of the $1 monthly membership fee, and the reason for it, are "reasonably understandable," as well as conspicuous.  *See Keefer*, 2024 U.S. App. LEXIS 6726, at *2.  Count III should be dismissed.

(ii)    **Dave's ExtraCash Disclosures Are True**.  The Government further alleges that Dave violated ROSCA because it did not disclose that "very few" consumers received ExtraCash deposits "at or near the amounts advertised." (Am. Compl. ¶ 106(a)).  But ROSCA does not apply here because the disclosure is not related to the negative option feature.  To put it another way, the ExtraCash feature has nothing to do with cancellation so it is not related to the negative option (recurring charges unless canceled).  The Government cannot plausibly assert, let alone with the required specificity, that advance eligibility or a specific advance amount (just one of several products and services Dave offers its members) is a "material term" in relation to a $1 a month membership.

Even if ROSCA applied in this context, Dave clearly disclosed, before customers linked their bank accounts, that eligibility requirements applied.  The image described as "App Screenshot 1" in Amended Complaint ¶ 25, which is presented to consumers before they are asked to link a bank account, shows that, where Dave's enrollment flow referenced advances "up to $500*", the statement

---

[25] *See also Silva v. WhaleCo, Inc*., No. 24-CV-02890-SK, 2024 U.S. Dist. LEXIS 187951, at *10 (N.D. Cal. Oct. 10, 2024) ("[U]sers are presented with hyperlinks to [Terms] which are displayed directly below the 'continue' button.  The language of [Terms] is large enough to read, and it is capitalized and underlined in blue, which stands out from the surrounding text.") (citing *Oberstein v. Live Nation Ent., Inc*., 60 F.4th 505, 512-13 (9th Cir. 2023) and *Keebaugh v. Warner Bros. Entertainment Inc.*, 100 F.4th 1005, 1013 (9th Cir. 2024)).

appears on an uncluttered screen and is set off by an asterisk.  Directly below that statement and above the button that states "Sign up for Dave," is a "See terms" hyperlink—bolded, in blue, with the corresponding asterisk, as shown below, which allowed the user to seek additional information:





App Screenshot 1

(Am. Compl. ¶ 25).

In addition, the image in ¶ 26—again, which appears before inviting prospective members to connect a bank account—shows that the consumer encounters another screen that references the maximum advance amount and states that receiving an advance is "*Subject to eligibility requirements."

1
2
3
4
5
6
7
8
9
10
11
12
13



14

15  (Am. Compl. ¶ 26).

16  This disclosure, again, appears above the button asking the prospective member to take action (here, "Get Started").

17
18  The Amended Complaint, therefore, shows that Dave clearly and conspicuously advised users that advances are subject to eligibility at the inception of the enrollment flow.  Even if this is a material term for ROSCA purposes (it is not), the Government fails to state a claim.

19
20
21
22  (iii)    **Optional express delivery fee**.  The Government contends that Dave did not sufficiently disclose information about its optional express delivery fee (Am. Compl. ¶ 106(b)).  Again, ROSCA does not apply to the optional express delivery fee because the express delivery fee is not part of the negative option feature, let alone a "material term" of the transaction.  *First*, the express fee—which allows a member to decide, for each individual advance, whether to select an expedited

23
24
25
26
27
28

DEFTS' MOTION TO DISMISS THE AMENDED
COMPLAINT; MEMO OF Ps AND As ISO THEREOF
CASE NO. 2:24-cv-09556-MRA (AGRx)

delivery option—does not relate in any way to the alleged negative option feature— i.e., the $1 monthly membership.  A Dave member may choose, or not choose, to seek an advance through ExtraCash.  Then the member may choose, or not choose, to transfer the funds from the member's advance to another bank account using a faster funds transfer method.  Thus, the express fee is not a material term of the Dave membership.  *Second*, the Government does not allege that the express delivery fee itself is a negative option feature or a recurring charge,[26] or that the express fee is required to obtain an advance.  Nor could it credibly do so.

Even if ROSCA applied (under the theory that the optional express fee was a material term of the negative option transaction, though it is not), the express fee feature is explicitly disclosed at the start of the enrollment flow.  As the Amended Complaint shows, the "Connect Account" screen (App Screenshot 3) states "Get money instantly for a small fee" above the "Connect Account" button.  (Am. Compl. ¶ 27).  This information is not hidden or minimized.  It is presented where the customer is likely to see it—above the button that prompts the user to act.[27]  To the extent Dave was required under ROSCA to disclose the express fee, the Amended Complaint shows that Dave did exactly that.

(iv)  **Optional tip**.  ROSCA likewise does not apply to Dave's optional tipping feature (Am. Compl. ¶ 106(c)).  An optional tip is not a negative option or recurring charge—it's a wholly voluntary one-time payment.  (Am. Compl. ¶ 46).

---

[26] *See* 15 U.S.C. § 8403 (citing 16 C.F.R. 310.2(w)).

[27] Dave does not "require" customers to wait 2–3 business days before receiving an advance unless they pay the Express Fee.  (Am. Compl. ¶ 42).  That's just how the financial system works.  For example, "[b]ecause of the way ACH transactions are processed and because the network must guard against fraud and money laundering, payments can take days to complete." CFPB, *What is an ACH transaction?* (May 14, 2024), *https://www.consumerfinance.gov/ask-cfpb/what-is-an-ach-transaction-en-1065/*.  Providers that offer same day ACH transfers incur fees.  *See, e.g.,* Fifth Third, *What is the Difference Between Same Day ACH and Real-Time Payments? A Treasury Professional Primer* (June 6, 2017), *https://www.53.com/content/fifth-third/en/financial-insights/business/treasury-cash-flow/difference-between-ach-real-time-payments.html* ("instead of settling ACH transactions in one to two days," NACHA introduced "the option of settling funds within 24 hours ….  A 'same day fee' is included with each Same Day ACH transaction to cover the costs associated with the faster settlement process.").

DEFTS' MOTION TO DISMISS THE AMENDED COMPLAINT; MEMO OF Ps AND As ISO THEREOF
CASE NO. 2:24-cv-09556-MRA (AGRx)

Nor is an option to leave a tip a "term" of the Dave membership. Not all members even request funds through ExtraCash. And, for those members who seek an advance, tipping is not a requirement. So an agreement to leave a tip cannot possibly be a condition of subscribing or a material term of the subscription. Optional tips have no place in the Government's ROSCA claim.

2. *The Amended Complaint does not plausibly allege that Dave failed to obtain informed consent.*

ROSCA Section 8403(2) requires that a consumer's "express informed consent" be obtained "before charging the consumer's credit card, debit card, bank account, or other financial account for products or services through such transaction." Here, Dave discloses a $1 monthly recurring membership fee before consumers incur any charges. *See* Section, III(b)(1)(i), *supra*. Dave also discloses, before charging an express fee, that expedited delivery is optional and available for an additional cost. *See* Section, III(b)(1)(iii), *supra*. And, before accepting payment of a tip from a customer, Dave discloses that leaving a tip is entirely optional. *See* Section, III(b)(1)(iv), *supra*. Dave also discloses—before a customer incurs the Dave membership fee—that eligibility requirements apply to ExtraCash. Finally, Dave discloses the amount of the ExtraCash advance before the customer agrees to accept a deposit.

One need look no further than the Amended Complaint to find that Dave obtains informed consent from consumers on all the points the Government challenges. Count IV should be dismissed.

3. *The Amended Complaint does not plausibly allege that Dave failed to provide simple mechanisms to stop recurring charges; Count V should be dismissed.*

The ROSCA claim then stands or falls on the third requirement of ROSCA:

whether Dave "provide[d] simple mechanisms" to stop recurring charges.[28]    15
U.S.C. § 8403(3).  The Government acknowledges that Dave provides members with
mechanisms to cancel their $1 per month memberships: (1) members can contact
Dave's customer service by email (Am. Compl. ¶ 81) and (2) except for a limited
period of time, members have been able to utilize Dave's in-app processes to stop the
recurring charge (Am. Compl. ¶ 77).[29]  Indeed, "[t]housands of consumers contact
Dave each month to cancel their accounts" (Am. Compl. ¶ 41).

And, although the Amended Complaint alleges that customers must take "nine
separate steps" to "complete Dave's current in-app cancellation process," such
allegation is neither legally nor factually sufficient.[30]    The Government
conspicuously does not describe the mechanisms that Dave offered to enable its users
to stop recurring charges, nor what it is alleging are separate "steps" in the context of
a mobile application.  Critically, the Government also does not explain what was
"complex" about those mechanisms or purported steps, or what Dave should have
done to make the process of avoiding recurring charges "simpler."

Further, the Government's allegation that Dave sought "sensitive information"
from customers before allowing them to cancel or close their accounts does not
amount to a "roadblock" (Am. Compl. ¶ 83) that could plausibly support a ROSCA
violation.  Given that Dave is a financial services app that provides bank accounts

---

[28] ROSCA does not define what "simple mechanisms" a seller must provide "for a consumer to stop recurring charges," *see* 15 U.S.C. § 8403(3), let alone mandate a particular method that businesses must provide to allow consumers to stop recurring charges.
[29] The Amended Complaint fails to allege whether any of the consumers who were not provided with an in-app process were, in fact, charged a recurring fee.
[30] The Government's allegations do not resemble those describing the "Iliad Flow" discussed in *FTC v. Amazon.com, Inc.*, No. 2:23-CV-00932-JHC, 2024 WL 2723812, at *13 (W.D. Wash. May 28, 2024).  Nor do they resemble those in *United States v. MyLife.com, Inc*., 567 F. Supp. 3d 1152, 1169 (C.D. Cal. 2021), where customers could cancel only by phone and "the customer was confronted with a six-part 'retention' sales script aimed at convincing the customer not to cancel." The Court should not rely on the interpretation of simple cancellation mechanisms articulated in *FTC v. Cardiff*, No. ED 5:18-CV-02104-SJO-PLAx, 2019 U.S. Dist. LEXIS 232069, at *32–33 (C.D. Cal. May 16, 2019), as the framework was the result of a negotiated Stipulated Order between the FTC and the defendant.

- 29 -

holding the customer's funds and other banking services,[31] it is reasonable and prudent for Dave to validate a customer's identity before making changes to the customer's account or moving the customer's deposits. This is standard practice.

The Government attempts to dodge its burden to allege facts to support a conclusion that Dave failed to provide "simple mechanisms" to stop recurring charges with a barrage of anonymous quotes for which the Government provides no context, including the dates that the complaints were received. Likewise, the Amended Complaint fails to provide any information about the volume of objections relative to the number of users of the app or the number of users who successfully avoided recurring charges.

But, Dave has not violated ROSCA merely because the Government alleges Dave's cancellations methods should be more "prominent" (Am. Compl. ¶¶ 76, 78) or that some unspecified number of consumers were dissatisfied with Dave's App or the cancellation mechanisms at some unspecified point in time. Count V should be dismissed.

### c. The facts alleged in the Amended Complaint do not support a request for ROSCA Civil Money Penalties.

A person or corporation may only be liable for Civil Monetary Penalties where they acted with actual or implied knowledge that their conduct was prohibited by such rule. 15 U.S.C. § 45(m)(1)(A). This standard requires that the defendant either knew, or a reasonable person would have known, of the existence of the legal provision and that their action violated that provision. *FTC v. Amazon.com, Inc.*, 735 F. Supp. 3d 1297, 1332 (*citing United States v. Nat'l Fin. Servs*., Inc., 98 F.3d 131, 139 (4th Cir. 1996)). Where a defendant is "'unaware of the relevant federal prohibition' and would not reasonably have known its conduct was unlawful," the defendant is not liable for Civil Monetary Penalties. *United States v. Stratics*

---

[31] Banking services are provided through a bank partner.

DEFTS' MOTION TO DISMISS THE AMENDED COMPLAINT; MEMO OF Ps AND As ISO THEREOF
CASE NO. 2:24-cv-09556-MRA (AGRx)

*Networks Inc.*, 721 F. Supp. 3d 1080, 1100 (S.D. Cal. 2024) (citing *Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA*, 559 U.S. 573, 583–84 (2010)).

Here, neither Mr. Wilk nor the Company knew or had reason to know that ROSCA applied to any portion of the service apart from disclosing the material terms of the negative option feature, which Dave did. No reasonable person could have known the same. As discussed, *see* Section III(a)(1), *supra*, the Government pushes a new theory of ROSCA liability that ignores its own recognition that such conduct was not covered prior to issuing the Click to Cancel Rule. Defendants thus did not have actual or implied knowledge of the violation and cannot be liable for Civil Monetary Penalties.

The Government attempts to rely on Defendants' alleged knowledge of customer complaints, "internal analyses," and its compliance program to support its theory of Civil Monetary Penalties. Those attempts fail. Factually, customer complaints about ExtraCash amounts, the express fee, or tips would not have put Dave on notice of ROSCA's requirements, let alone a potential ROSCA violation, given that ROSCA does not apply to those features. And legally, reliance on customer complaints to demonstrate knowledge of a legal violation is not supported by case law. In other contexts, courts have held that evidence of online complaints alone are insufficient to indicate knowledge. *See, e.g.*, *Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136, 1147 (9th Cir. 2012) (allegations of fourteen complaints, where twelve were undated, were insufficient to establish knowledge); *Berenblat v. Apple, Inc.*, No. 08-4969 JF (PVT), 2010 U.S. Dist. LEXIS 46052, at *27 (N.D. Cal. Apr. 7, 2010) (complaints on website "merely establish the fact that some consumers were complaining." And "[b]y themselves they are insufficient to show that Apple had knowledge" of the alleged defect.).

Similarly, the Amended Complaint attempts to point to "internal analyses" that purportedly show Defendants' knowledge. The alleged internal analyses merely

establish that Dave was aware of customer complaints, not that it had any knowledge those complaints raised potential ROSCA violations.  Indeed, "[a]wareness of a few customer complaints . . . does not establish knowledge. . . ."  *Wilson,* 668 F.3d at 1147–48 (explaining that knowledge of complaints was insufficient to show that a manufacture had knowledge of a product defect, citing *Baba v. Hewlett-Packard Co.*, No. C 09-05946 RS, 2011 U.S. Dist. LEXIS 8527, at *9–10 (N.D. Cal. Jan. 28, 2011)).

The Government likewise cannot rely on the existence of Dave's regulatory compliance management program (Am. Compl. ¶ 87) to support its allegation that Defendants knew about the alleged ROSCA violations.  *See Stratics Networks Inc.*, 721 F. Supp. 3d at 1101 ("retention of counsel does not show a party knew its conduct was prohibited either.").  To the contrary, Dave had every reason to believe that its practices were compliant.  As described in Dave's public filings, the Consumer Financial Protection Bureau ("CFPB") opened and closed an investigation—and declined to recommend an enforcement action against Dave.  *See* Dave Inc., Annual Report (Form 10-K) at 34–35 (Mar. 25, 2022),[32] ("In June 2020, we received a Civil Investigative Demand ('CID') notifying us that the CFPB had opened a non-public investigation into various aspects of our non-recourse cash paycheck advance business in compliance with the prohibition against UDAAPs, the EFTA, and, to the extent it applies, the Truth in Lending Act. We provided the CFPB with all information and documents required by the CID, and on September 27, 2021, the CFPB staff notified us that it currently did not intend to recommend that the CFPB take any enforcement action.").

Further, although the Amended Complaint alleges that Dave received an FTC CID in January 2023 "investigating Dave's potential violations of the FTC Act and

---

[32]
https://www.annualreports.com/HostedData/AnnualReportArchive/d/NASDAQ_DAVE_2021.pdf.

DEFTS' MOTION TO DISMISS THE AMENDED
COMPLAINT; MEMO OF Ps AND As ISO THEREOF
CASE NO. 2:24-cv-09556-MRA (AGRx)

ROSCA," (Am. Compl. ¶ 87), this is insufficient to meet the pleading standard. After all, the mere existence of regulatory investigations or litigation does "not necessarily demonstrate" that the defendants "knew or should have known that the corporation was violating the law." *In re Alphabet Derivative Stockholder Litig.*, No. 19-cv-06880-RS, 2022 US Dist. LEXIS 65184, at *13–14 (N.D. Cal. Apr. 7, 2022).

The Government has not alleged any facts sufficient to establish that Defendants knew or should have known about the alleged ROSCA violations. Without such facts, the Government's claim for Civil Monetary Penalties fails.

## IV. THE AMENDED COMPLAINT DOES NOT PLAUSIBLY ALLEGE A SECTION 5 CLAIM

### a. Dave's ExtraCash and tipping features do not violate Section 5 of the FTC Act.

The Government alleges that Dave misled consumers regarding: (1) the amount of ExtraCash advance available to consumers; and (2) Dave's "tipping" feature. Dave did not mislead consumers, and neither claim could survive this motion to dismiss under a notice pleading standard, let alone the heightened Rule 9(b) standard.

#### 1. *Dave's "up to" statements are not materially misleading as a matter of law.*

The Amended Complaint alleges that Dave misled consumers when it disclosed that customers were eligible for "up to" $500. The disclosure itself is indisputably accurate. The Government nevertheless reasons that consumers do not understand plain language terms like "up to," claiming that (1) consumers cannot understand the plain meaning of "up to" and (2) they are blind to any additional information. That is not the law.

Courts may, and this Court should, dismiss a complaint for failure to state a claim where it can conclude as a matter of law that members of the public are not likely to be deceived by advertising, marketing, promotions, or offers of sale. *Moore v. Mars Petcare US, Inc.*, 966 F.3d 1007, 1018 (9th Cir. 2020); *see also FTC v.*

*Cyberspace.com, LLC* 453 F.3d 1196, 1199–1200 (9th Cir. 2006) (A practice is deceptive (1) if it is likely to mislead consumers acting reasonably under the circumstances (2) in a way that is material.).  Courts take a holistic approach when evaluating whether an advertisement is likely to mislead.  It is the "net impression" that matters.  *See Cyberspace.com, LLC*, 453 F.3d at 1199–1200.

Dave did not mislead consumers as a matter of law.  Dave told consumers that they were eligible for "up to" $500 (with smaller maximum amounts advertised early in the product's evolution).  "Up to" does not mean "exactly" or "always."  That's common sense.[33]  Courts in the Ninth Circuit agree.  In *Millam v. Energizer Brands, LLC*, applying California consumer protection law, the court found that claims that batteries were "up to 50% longer lasting" would not mislead a customer to believe that the batteries were "always or consistently" 50% longer lasting.  *Millam v. Energizer Brands, LLC*, No. 5:21-cv-01500-JWH-SHKx, 2022 U.S. Dist. LEXIS 239864, at *9 (C.D. Cal. Dec. 9, 2022); *see also Tomek v. Apple Inc.,* 636 F.App'x 712, 714 n.1 (9th Cir. 2016) (holding that "up to" statements are akin to puffery and noting that "we concluded [in *Maloney*] that advertisements similar to the ones at issue here that include 'up to' speed qualifiers would not deceive reasonable consumers."); *Knowles v. Arris Int'l plc*, No. 17-CV-01834-LHK, 2019 U.S. Dist. LEXIS 142293, at *36 (N.D. Cal. Aug. 20, 2019), *aff'd*, 847 F. App'x 512 (9th Cir. 2021) (dismissing claims based upon a statement that the product provided "speeds up to" a certain speed partly because "up to" does not mean "always" or "consistently").

When courts reject motions to dismiss "up to" claims, it is because the advertisements are demonstrably false.  In *FTC v. Frontier Communications Corp.*, for example, a court denied a motion to dismiss where advertisements represented

---

[33] *See, e.g.*, *Fink v. Time Warner Cable*, 714 F.3d 739, 742 n.3 (2d Cir. 2013) (finding up to claim concerning internet speed deficient as a matter of law on motion to dismiss because "'up to' would 'lead a reasonable consumer to expect that speeds could be less than the advertised '3x faster' and '100x faster' speeds.'").

- 34 -

DEFTS' MOTION TO DISMISS THE AMENDED
COMPLAINT; MEMO OF Ps AND As ISO THEREOF
CASE NO. 2:24-cv-09556-MRA (AGRx)

that an internet service would go "up to" a certain speed.  Plaintiffs plausibly alleged that the company "d[id] not or cannot provide speeds that [were] 'as fast as' [its] advertising represents."  2:21-cv-04155-RGK-MAA, 2021 U.S. Dist. LEXIS 251311, at *18 (C.D. Cal. Oct. 3, 2021).  The Government does not allege that Dave did not or could not provide ExtraCash deposits of $500.  Dave can, does, and did provide $500 advances.

"Up to" statements are even less likely to mislead when accompanied by additional disclosures, as they are here.  *See Maloney v. Verizon Internet Servs.*, No. ED CV 08-1885-SGL(AGRx), 2009 U.S. Dist. LEXIS 131027, at *13–14 (C.D. Cal. Oct. 4, 2009) (holding that "up to" language would put a reasonable consumer on notice, and was reinforced by the terms of service), *aff'd*, 413 F. App'x 997, 999  (9th Cir. 2011).[34]  Even according to the images the Government cites in the Amended Complaint,[35] Dave disclosed to consumers that their eligibility for the program—and by extension the amount of money they could receive—was not guaranteed.  For example, the first two internet banner ad images the Government cites in ¶ 17 disclose that "Terms apply."





---

[34] Even where courts in the Ninth Circuit have held that "up to" claims may be deceptive, *see, e.g.*, *Herron v. Best Buy Co. Inc.*, 924 F. Supp. 2d 1161, 1171–73 (E.D. Cal. 2013) (denying motion to dismiss where there were no accompanying disclosures), they have made clear that such claims are not deceptive as a matter of law where, as here, there is an accompanying explanation that the representation depends on certain factors.  *See Maloney,* 413 F. App'x at 999.

[35] The Government alleges, generally, "[s]ince at least 2020, Dave has advertised its cash advance product on social media platforms such as Facebook, Instagram, and TikTok" (Am. Compl. ¶17), but it does not specify whether the "examples" it cites were actual advertisements available to the public (versus mock ups or proposals, which some were), where they appeared, or when they appeared.  This fails to satisfy Rule 9(b).

DEFTS' MOTION TO DISMISS THE AMENDED COMPLAINT; MEMO OF Ps AND As ISO THEREOF
CASE NO. 2:24-cv-09556-MRA (AGRx)



And these advertisements—as common across advertisements on the internet—when clicked by a consumer would take them to a landing page that provided additional information about Dave and its products. However, the Amended Complaint does not acknowledge, let alone describe with particularity, what information would have been presented about the terms when someone clicked on the ad images.

Prospective Dave members receive similar disclaimers and links to disclosures *before* they sign up for Dave. The screenshot in the Amended Complaint shows that Dave conspicuously qualifies the "up to $500" language. An asterisk at the end of the bolded, large font statement in the screenshot after ¶ 25 encourages anyone who downloads the Dave app to "see terms" before getting started.



- 36 -

(Am. Compl. ¶ 25).

Likewise, the asterisk on the screenshot cited at ¶ 26 cautions, in a sentence immediately above the "get started" button, that ExtraCash advances are "subject to eligibility requirements."



(Am. Compl. ¶ 26).

A reasonable consumer encountering the plain language term "up to" would not, as a matter of law, be misled to think they were guaranteed to get $500, especially when provided with disclaimers about eligibility requirements and with additional disclosures.  The Government's Section 5 claims should be dismissed.

### 2. *Dave did not mislead consumers when it disclosed that its historic tipping feature was optional.*

Until recently, Dave offered an optional tipping feature. Dave's tipping advertisements, product flow, and representations were clear: consumers were not required to leave a tip. In fact, Dave only presented the optional tipping screen to members after Dave offered the advance and the member accepted the advance. The Amended Complaint itself proves that point. One need look no further than the second line of the screenshot the Government included at ¶¶ 46, 55, and 59: "Your advance is on its way! Your ***optional*** tip helps us stay in business." (emphasis added).

> ## Your advance is on its way!
> Your optional tip helps us stay in business. We also provide a meal for every % you tip.

Ignoring the timeline, the word "optional" and the plain meaning of tip (something given voluntarily or beyond obligation),[36] the Government alleges that consumers were misled into believing that tipping is mandatory. The Government's other two claims regarding the tipping feature, namely, that consumers would be misled into believing that tapping the "Thank you!" button on the screen simply concludes the transaction and that Dave will pay for or donate a specified number of meals, fare no better.

If the overall "net impression" of a statement is not likely to materially mislead a reasonable consumer, the statement is not deceptive as a matter of law. The Government has not alleged, let alone with the particularity required, that a reasonable consumer would be deceived by the tipping screenshot on which its allegations depend. *See Haskell v. Time, Inc.*, 857 F. Supp. 1392, 1399 (E.D. Cal. 1994) (holding that, like the FTC Act, deception claims under California law "must

---

[36] *See* Gratuity, *Merriam-Webster's Dictionary*, https://www.merriam-webster.com/dictionary/gratuity (last visited Feb. 27, 2025).

DEFTS' MOTION TO DISMISS THE AMENDED COMPLAINT; MEMO OF Ps AND As ISO THEREOF
CASE NO. 2:24-cv-09556-MRA (AGRx)

be evaluated from the vantage of a reasonable consumer"); *FTC v. Lights of Am. Inc*., SACV 10-1333 JVS (MLGx), 2012 U.S. Dist. LEXIS 199754, at *4 (C.D. Cal. Apr. 25, 2012) (the FTC must show that the statements were likely to mislead a reasonable consumer). As the screenshot makes clear, Dave disclosed in plain language that tipping is "optional." The disclosure about the "optional tip" was centered on the screen and information about the collection of tips and the option to leave a "custom tip" is directly above the "Thank you!" button that the customer must click to continue. Any reasonable consumer would see and read these statements. They would understand tipping was, as stated, optional.

Moreover, reasonable consumers are not likely to be misled by statements where disclosures are in close proximity on the same page, as they are here. *See Baxter v. Intelius, Inc*., No. SACV 09-103, 2010 U.S. Dist. LEXIS 104218, at *9–10 (C.D. Cal. Sept. 16, 2010) (holding that a webpage was not deceptive as a matter of law where full terms were located next to the boxes for entering the customer's email address and next to the button for "YES, And show my report."). Dave's disclosures about the optional tipping feature were prominent and could not be missed by a consumer reading the plain, large text. When facially accurate, as they are here, Courts have only found the "net impression" of statements to be misleading where clarifying text is buried on the back of mailers, deep in paragraphs of text, or impossible to find without extensive searching. *Cyberspace.com, LLC*, 453 F.3d at 1200–01 (holding that mailers purporting to be checks with small-print disclosures on the back were deceptive); *FTC v. Lendingclub Corp*., No. 18-cv-02454-JSC, 2018 U.S. Dist. LEXIS 246585, at *18–19 (N.D. Cal. Oct. 3, 2018) (links with disclosures were hidden unless customer clicked on tooltip or APR); *FTC v. AMG Servs., Inc.*, 29 F. Supp. 3d 1338, 1353 (D. Nev. 2014) (disclosure was "inconspicuous because it was buried in the fourth paragraph and overshadowed by two all caps hyperlinks.").

Dave's disclosures were neither inconspicuous nor hidden. The clarifying text appeared on the same page, in the center, and directly above the buttons that customers must click to continue. The screens were uncluttered. The text was not unreadable or buried. A reasonable consumer would have read and understood the plain language text in its entirety, thus understanding that the tip was optional and that they could leave a custom tip. Taking the statements and product flow together, a reasonable consumer would have also understood that clicking "Thank you!" completed the transaction, including any tip. Simply put, the representations about tipping did not create a misleading "net impression."

Lastly, the information on the screenshot truthfully represented that Dave would provide a certain number of meals based on the consumer's tip. (Am. Compl. ¶ 59). The Government alleges this was false or misleading because less than 100% of tips went to pay for meals. (Am. Compl. ¶ 64). But again, the Amended Complaint ignores Dave's plain English disclosures that (1) "[y]our optional tip *helps us stay in business*"; and (2) "[w]e also provide *a meal* for every % you tip." *See* Am. Compl. ¶¶ 46, 55, and 59 (emphasis added). A reasonable consumer reading this conspicuous language would understand that if she left a 10% tip, Dave would donate money for 10 meals and keep some to "help us stay in business." A tip, by its common definition, is not understood to be a charitable donation. Dave laid out its intention clearly, with unmistakable language.

The Government does not allege that Dave failed to donate money to Feeding America, only that Dave does not donate the entirety of each tip (which is disclosed). Nor does the Government allege that the amount of money Dave donated was insufficient to provide the designated number of meals. Instead, the Government offers only legally insufficient conclusory allegations that Dave's representations were misleading because: (1) Dave donates to a hunger relief organization instead of directly serving meals to people in need; and (2) the "hunger relief organization"

- 40 -

combines financial donations from entities like Dave with bulk food donations from food manufacturers and retailers to maximize the number of people it can serve. (Am. Compl. ¶ 64). How much does the Government believe a healthy meal should cost? It does not say. How direct must Dave's involvement be in "providing" the healthy meal to not be misleading? Again, the Government does not say. Nor does the government allege why any of this information would be material to a consumer's decision to leave an optional tip.

The Amended Complaint ignores that Dave provided prospective consumers with additional disclosures, including about tipping. As the screenshots in the Amended Complaint show, there was a green "Feeding America" link at the top of the tipping pages (Feeding America is the prominent, well-regarded "hunger relief organization" the Government curiously refuses to identify). *See* Am. Compl. ¶¶ 46, 55, 59. However, the Amended Complaint does not acknowledge, let alone describe with particularity, what additional information would have been presented when someone clicked on the link.

The Amended Complaint and the documents incorporated-by-reference therein demonstrate, as a matter of law, that Dave's disclosures regarding tipping would not have misled a reasonable consumer. Despite the Government's selective quotes, the plain language *and* the "net impression" of the tipping screens was clear— tipping was optional and could be changed to zero; Dave retained a portion of any tips; and Dave donated money to provide one meal for each percentage a consumer tipped. Because the Government has not adequately pled that Dave's statements were misleading, the Section 5 allegations should be dismissed.

## V.   THE GOVERNMENT'S CLAIMS AGAINST MR. WILK SHOULD BE DISMISSED.

The claims in the Amended Complaint against Mr. Wilk are vague as to time and conclusory as to his role in the alleged misconduct. Both infirmities are fatal to

the Government's belated effort to bring suit against Mr. Wilk.

  **a. The claims against Mr. Wilk should be dismissed as time-barred.**

  The Government has alleged Mr. Wilk violated ROSCA, and that Mr. Wilk is liable for monetary relief and Civil Monetary Penalties.  Those claims are barred by the statute of limitations.[37]  The statute of limitations for seeking consumer redress under Section 19 of the FTC Act for violations of ROSCA is three years.  15 U.S.C. § 57b(d).  For Civil Monetary Penalties, the statute of limitations is five years.  28 U.S.C. § 2462.

  Any allegation based on events occurring prior to December 30, 2021 fall outside the three-year statute of limitations for consumer redress.[38]  Notably, the Amended Complaint is (perhaps deliberately) vague as to when the alleged conduct occurred, but the Government does not allege any specific actionable conduct by Mr. Wilk after December 30, 2021.  Although the Amended Complaint's vagueness may be designed to avoid a challenge on statute of limitations grounds, it creates another problem for the Government: Fed. R. Civ. P. 9(b) applies here, and these temporally ambiguous allegations do not satisfy the Rule's heightened pleading standard.  Federal Rule of Civil Procedure 9(b) requires allegations of fraud to be pled with specificity, including a statement of the "time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentations." *Edwards v. Marin Park, Inc*., 356 F.3d 1058, 1066 (9th Cir. 2004) (citation omitted); *see also Lights of Am., Inc*., 760 F. Supp. 2d at 854-55 ("The Complaint fails to allege the 'who, what, when, where, and how' of the Defendants' course of conduct.  The allegations do not differentiate between conduct committed by [the different

---

[37] Dave reserves its arguments that the United States' claims against the business are time-barred.
[38] The claims against Mr. Wilk do not relate back to the filing of the original complaint.  Rule 15(c)(1)(C) only allows for relation back for an amended party if the party received notice of the action and there was a mistake of the proper party's identity.  Here, the Government has not alleged (nor could it) that there was a mistake regarding Mr. Wilk's identity; therefore the claims against him do not relate back to the original complaint.

DEFTS' MOTION TO DISMISS THE AMENDED
COMPLAINT; MEMO OF Ps AND As ISO THEREOF
CASE NO. 2:24-cv-09556-MRA (AGRx)

defendants], nor do they explain when or where the alleged misrepresentations were made."); *Klaizner v Countrywide Fin.*, 2015 US Dist. LEXIS 18176, at \*14–15 (D. Nev. Feb. 12, 2015) ("Plaintiff did not allege the times, dates, places, or benefits received, much less the people involved in the fraud and their authority.  Indeed, the inability of this court to determine if this claim is time-barred proves that plaintiff did not state his claim with sufficient particularity to satisfy Rule 9(b).")

The Government fails to allege the time periods for its allegations with specificity and thus fails to provide Mr. Wilk with the ability to defend himself.  *See Bly-Magee v. California*, 236 F.3d 1014, 1019 (9th Cir. 2001) (citation and quotations omitted) ("To comply with Rule 9(b), allegations of fraud must be specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong.").  Such ambiguity is particularly problematic where, as here, Dave's product offerings, advertising, Terms of Use, and disclosures varied over time.  The court must dismiss the allegations against Mr. Wilk.

### b. The Amended Complaint does not plausibly allege facts supporting its claim that Mr. Wilk should be held individually liable.

An individual is personally liable for a corporation's Section 5 or ROSCA violations only if the "individual 'participated directly' in the acts or practices or 'had authority to control them.'"  *FTC v. Garvey*, 383 F.3d 891, 900 (9th Cir. 2004).   In order for an individual to be liable for restitution, the individual must also have had actual knowledge of the alleged practices or been "recklessly indifferent to" or "had an awareness of a high probability of" the alleged practices.  *See FTC v. Swish Mktg.*, No. C 09-03814 RS, 2010 U.S. Dist. LEXIS 15016, at \*9 (N.D. Cal. Feb. 22, 2010).

The Amended Complaint fails to establish that Mr. Wilk participated directly in the alleged conduct.  Instead, the Government relies on conclusory allegations that Mr. Wilk "controls the design of tipping" and that tipping "was implemented by

Wilk" (Am. Comp. ¶ 47) and that "Wilk concluded that Dave's experimentation showed its strategy of presenting 'tips' as connected to the provision of healthy meals was important to preserving the company's revenue." (Am. Compl. ¶ 69). These allegations are insufficient to establish Mr. Wilk's participation in the alleged offenses. "[C]onclusory assertions of authority—untethered to virtually any supportive facts" do not support an inference of involvement. *See Swish Mktg.*, 2010 U.S. Dist. LEXIS 15016, at *14–15.

Moreover, the Amended Complaint fails to establish Mr. Wilk's knowledge of the alleged violations. The Amended Complaint's allegations about Mr. Wilk's knowledge are similarly conclusory, for example alleging that "Wilk knows" about tipping issues (Am. Compl. ¶ 47) without any factual basis or support. The Amended Complaint also attempts to rely on Mr. Wilk's receipt of consumer complaints to establish his knowledge of ROSCA violations. As described, *see* Section III(c), *supra*, complaints alone are insufficient to establish knowledge of a violation of law. *See Wilson*, 668 F.3d at 1147. While the Government relied on customer complaints in *United States v. MyLife* and *United States v. Stratics Networks Inc.*, these cases bear important distinctions from the present case. In both cases, the court determined plaintiffs sufficiently alleged knowledge, because in addition to the consumer complaints, both companies faced ongoing litigation regarding the alleged issues raised by the consumers. *MyLife.com, Inc.*, 499 F. Supp. 3d at 756 (complaints were sufficient to establish knowledge, or at least reckless indifference where there were "hundreds of consumer complaints, and have resulted in prior litigation. . ."); *Stratics Networks Inc.*, 721 F. Supp. 3d at 1102 (complaints were sufficient where defendant was involved in prior litigation and FTC investigational hearing). No such similar litigation is alleged against Dave.

Nor was Mr. Wilk recklessly indifferent to the alleged Section 5 or ROSCA violations. The Ninth Circuit rejected a claim of individual liability in *Garvey*, 383

F.3d at 902, where the defendant had "first-hand anecdotal evidence of the efficacy" of the product he was promoting and had reviewed scientific studies of the product. The court concluded the defendant was therefore not "recklessly indifferent" to the fraud. Mr. Wilk likewise had first-hand evidence that Dave was not acting in violation of Section 5 or ROSCA because the CFPB had investigated and decided not to pursue an enforcement action. This fact provided Mr. Wilk first-hand evidence that the Company was not acting contrary to law.

The Government's allegations therefore do not adequately allege that Mr. Wilk knew about, or was recklessly indifferent to, any of the alleged violations.

## VI.   THE AMENDED COMPLAINT MUST BE DISMISSED BECAUSE THE UNITED STATES IMPROPERLY ATTEMPTED TO SUBSTITUTE INTO THE CASE

Finally, the Amended Complaint must be dismissed because the United States is not the correct party. The United States claims, without citing any rule or other authority, that it "substitute[d]" itself as "the real party in interest" in this matter. (Am. Compl. ¶8). Such substitution by amendment is improper.

Substitution, which is governed by Federal Rules of Civil Procedure 17(a) and 25[39], may only occur in limited circumstances, such as when a mistake has been made. *See, e.g.*, *U.S. for the Use and Benefit of Wulff v. CMA, Inc*., 890 F.2d 1070, 1074 (9th Cir. 1989) ("The purpose of this portion of Rule 17(a) is to prevent forfeiture of an action when determination of the right party to sue is difficult or when an understandable mistake has been made."); *Pasco Sanitary Landfill NPL Site Indus. Waste Area Generator Grp. III v. Basin Disposal, Inc*, No. 4:15-CV-05022-SMJ, 2015 WL 12516735, at *2 (E.D. Wash. Nov. 16, 2015) (citing *Dunmore v. United*

---

[39] The Government cannot possibly rely on Fed. R. Civ. P. 25. First, substitution under the rule is not self-effectuating via amendment; a motion to substitute must be filed. The United States filed no such motion. Second, the United States has no basis to bring a Rule 25(a)(3) motion. Circumstances where substitution is allowed under Fed. R. Civ. P. 25 include (a) a party dies; (b) a party becomes incompetent; (c) there is a transfer of interest; or (d) a public officer who is a party ceases to hold office. DOJ's tactical effort to piggy-back on an earlier-filed complaint falls far outside the list.

*States*, 358 F.3d 1107, 1112 (9th Cir. 2004)) (holding that the Ninth Circuit has advised that Rule 17(a)(3) should only apply to those cases involving an understandable mistake). The Government did not make a mistake. This was deliberate.

The FTC and DOJ are well aware of the process for referring a case from FTC to DOJ to file a lawsuit seeking Civil Monetary Penalties; the Amended Complaint lays out the process in Paragraph 8. And, the FTC has been investigating this matter, as the Government acknowledges in the Amended Complaint, since January 2023. (Am. Compl. ¶ 87). The FTC and DOJ could have (and should have) followed the appropriate process to refer the case to DOJ in the first instance. But instead, the FTC filed a complaint on November 5, 2024. The FTC—not the United States—was the real party in interest in the Complaint. Then, just shy of two months later, DOJ filed an Amended Complaint on behalf of the United States attempting to sneak a new party and new claims into an existing case (availing themselves of the FTC's filing date for statute of limitation purposes and avoiding the embarrassment of dismissing and refiling, as the rules require). This deliberate and tactical circumvention of the Federal Rules of Civil Procedure prejudices Dave and Mr. Wilk (who was not previously named) and should not be countenanced. The Amended Complaint must be dismissed as improperly filed.

## **CONCLUSION**

For the reasons set forth above, Dave Inc. and Mr. Wilk respectfully request that the Court dismiss the Amended Complaint in its entirety with prejudice.

Dated: February 28, 2025                    Respectfully submitted.

By:   /s/ James M. Pearl
James M. Pearl
JAMES M. PEARL (SB# 198481)
jamespearl@paulhastings.com
Paul Hastings LLP
1999 Avenue of the Stars, 27th Floor
Los Angeles, CA 90067

- 46 -

1
Telephone: (310) 620-5700
Facsimile: (310) 620-5899

2
ALLYSON B. BAKER
3
(*admitted pro hac vice*)
allysonbaker@paulhastings.com
4
MEREDITH L. BOYLAN
(*admitted pro hac vice*)
5
meredithboylan@paulhastings.com
PAUL HASTINGS LLP
6
2050 M Street, NW
Washington, DC 20036
7
Telephone: (202) 551-1700
Facsimile: (202) 551-1705

8
THOMAS P. BROWN (SB# 182916)
9
DEREK E. WETMORE (SB# 291600)
derekwetmore@paulhastings.com
10
PAUL HASTINGS LLP
101 California Street, 48th Floor
11
San Francisco, CA 94111
Telephone: (415) 856-7000
12
Facsimile: (415) 856-7100
MARGARET SHIELDS
13
(*admitted pro hac vice*)
margaretshields@paulhastings.com
14
PAUL HASTINGS LLP
200 Park Avenue
15
New York, NY 10166
Telephone: (212) 318-6334
16
Facsimile: (212) 319 4090

17
CHRIS NAPIER
(*pro hac vice pending*)
18
cnapier@mitchellsandler.com
SHELBY SCHWARTZ
19
(*pro hac vice pending*)
sschwartz@mitchellsandler.com
20
MITCHELL SANDLER PLLC
2020 K Street, NW, Suite 760
21
Washington, DC 20006
Telephone: 202-886-5260

22

23

24

25

26

27

28

- 47 -
DEFTS' MOTION TO DISMISS THE AMENDED
COMPLAINT; MEMO OF Ps AND As ISO THEREOF
CASE NO. 2:24-cv-09556-MRA (AGRx)

**CERTIFICATE OF WORD COUNT**

The undersigned, counsel of record for Dave Inc., certifies that this brief contains 11,506 words, which complies with the word limit of L.R. 11-6.1.

Dated:  February 28, 2025

/s/ James M. Pearl
James M. Pearl