1    JAMES M. PEARL (SB# 198481)
     jamespearl@paulhastings.com
2    PAUL HASTINGS LLP
     1999 Avenue of the Stars, 27th Floor
3    Los Angeles, CA 90067
     Telephone: (310) 620-5700
4    Facsimile: (310) 620-5899

5    THOMAS BROWN (SB# 182916)
     DEREK E. WETMORE (SB# 291600)
6    derekwetmore@paulhastings.com
     PAUL HASTINGS LLP
7    101 California Street, 48th Floor
     San Francisco, CA 94111
8    Telephone: (415) 856-7000
     Facsimile: (415) 856-7100

9

10   *Attorneys for Defendant*
     *Dave Inc.*

11   *Additional Counsel for Defendants*
     *listed on next page*

12

13              UNITED STATES DISTRICT COURT

14             CENTRAL DISTRICT OF CALIFORNIA

15

16   United States of America,          CASE NO. 2:24-cv-09566-MRA (AGRx)

17              Plaintiff,              **DEFENDANTS' REPLY IN SUPPORT OF DEFENDANTS' MOTION TO**
18         vs.                          **DISMISS PLAINTIFF'S AMENDED COMPLAINT;**

19   Dave Inc. and Jason Wilk,          **MEMORANDUM OF POINTS AND**
20              Defendants.             **AUTHORITIES**

21                                      **ORAL ARGUMENT REQUESTED**

22                                      Judge: Hon. Mónica Ramírez Almadani
                                        Magistrate Judge: Alicia G. Rosenberg
23

24

25

26

27

28

---

ALLYSON BAKER (*pro hac vice*)
allysonbaker@paulhastings.com
MEREDITH BOYLAN (*pro hac vice*)
meredithboylan@paulhastings.com
PAUL HASTINGS LLP
2050 M Street, NW
Washington, DC 20036
Telephone: (202) 551-1700
Facsimile: (202) 551-1705

MARGARET SHIELDS (*pro hac vice*)
margaretshields@paulhastings.com
PAUL HASTINGS LLP
200 Park Avenue
New York, NY 10166
Telephone: (212) 318-6334
Facsimile: (212) 319 4090

CHRIS NAPIER (*pro hac vice*)
cnapier@mitchellsandler.com
SHELBY SCHWARTZ (*pro hac vice*)
sschwartz@mitchellsandler.com
MITCHELL SANDLER PLLC
1120 20th St., NW,
Washington, DC 20036
Telephone: 202-886-5260

# TABLE OF CONTENTS

I.   INTRODUCTION ............................................................................................ 1

II.  ARGUMENT ................................................................................................... 2

    a.   The Court Should Reject the Government's Expansive and Incorrect
Interpretation of ROSCA's Disclosure Requirement. ............................................ 2

    b.   The Government Ignores the Overwhelming Weight of Authority in the Ninth
Circuit—Section 5 and ROSCA Claims Are Subject to Rule 9(b)'s Heighted
Pleading Standard. ................................................................................................... 6

    c.   Dave Discloses All Material Terms. ................................................................. 8

    d.   The Amended Complaint Does Not Plausibly State a Claim that Dave Failed
to Obtain Informed Consent. ................................................................................. 11

    e.   The Government's Cancellation Claim Fails. .................................................. 12

    f.   The Government Does Not Allege a Basis for Civil Monetary Penalties. ..... 14

    g.   The Amended Complaint's UDAAP Claims Fail as a Matter of Law. .......... 16

    h.   The Individual Liability Claims Cannot Stand. ............................................. 20

    i.   DOJ's Amendment was Improper. .................................................................. 23

    j.   Dave's Requests for Judicial Notice Should be Granted. .............................. 24

III. CONCLUSION .............................................................................................. 25

DEF'S REPLY ISO DEF'S MOTION TO DISMISS; MEMORANDUM OF POINTS AND
AUTHORITIES

1

# TABLE OF AUTHORITIES

2

**Page(s)**

3

**Cases**

4

5

*In re Alphabet Derivative Stockholder Litig.*,
    No. 19-cv-06880-RS, 2022 U.S. Dist. LEXIS 65184 (N.D. Cal.
    Apr. 7, 2022)................................................................................................... 23

*Berenblat v. Apple, Inc.*,
    No. 08-4969 JF (PVT), 2010 U.S. Dist. LEXIS 46052 (N.D. Cal.
    Apr. 7, 2010).................................................................................................... 15

*CFPB v. Prime Mktg. Holdings, LLC*,
    No. CV16-07111-BRO, 2016 U.S. Dist. LEXIS 194873 (C.D. Cal.
    Nov. 15, 2016) ................................................................................................... 7

*Clift v. BNSF Ry. Co.*,
    14:-CV-00152-LRS, 2015 U.S. Dist. LEXIS 103424 (E.D. Wash.
    Aug. 5, 2015) ................................................................................................... 23

*Depot, Inc. v. Caring for Montanans, Inc.*,
    915 F.3d 643 (9th Cir. 2019) ........................................................................... 21

*In re Fastly, Inc. Sec. Litig.*,
    No. 20-cv-06024-PJH, 2021 U.S. Dist. LEXIS 227005 (N.D. Cal.
    Nov. 23, 2021) ................................................................................................. 24

*FTC v. Am. Future Sys., Inc.*,
    No 20-2266, 2024 U.S. Dist. LEXIS 57396 (E.D. Pa. Mar. 29,
    2024).................................................................................................................. 15

*FTC v. Amazon.com, Inc.*,
    735 F. Supp. 3d 1297 (W.D. Wash. 2024) ....................................................... 15

*FTC v. Cardiff*,
    No. ED 5:18-cv-02104-SJO-PLAx, 2019 U.S. Dist. LEXIS 232069
    (C.D. Cal. May 16, 2019) ................................................................................. 13

*FTC v. Cyberspace.com LLC*,
    453 F.3d 1196 (9th Cir. 2006) ............................................................................ 6

DEF'S REPLY ISO DEF'S MOTION TO DISMISS; MEMORANDUM OF POINTS AND
AUTHORITIES

*FTC v. D-Link Sys. Inc.*,
No. 3:17-CV-00039-JD, U.S. Dist. LEXIS 152319 (N.D. Cal. Sept.
19, 2017) ..................................................................................................... 6

*FTC v. Dinamica Financiera LLC*,
No. CV 09-03554 MMM (PJWx), 2010 U.S. Dist. LEXIS 88000
(C.D. Cal. Aug. 19, 2010) ......................................................................... 21

*FTC v. DIRECTV, Inc.*,
No. 15-cv-01129-HSG, 2018 U.S. Dist. LEXIS 139192 (N.D. Cal.
Aug. 16, 2018) ........................................................................................... 20

*FTC v. Doxo, Inc.*,
2025 WL 887311 (W.D. Wash. Mar. 21, 2025) ............................................ 9

*FTC v. FleetCor Techs., Inc.*,
620 F. Supp. 3d 1268 (N.D. Ga. 2022) ............................................... 17, 18

*FTC v. Freecom Commc'ns, Inc.*,
401 F.3d 1192 (10th Cir. 2005) .......................................................... 7, 8

*FTC. v. Frontier Commc'ns Corp.*,
No. 2:21-cv-04155-RGK-MAA, 2021 U.S. Dist. LEXIS 251311
(C.D. Cal. Oct. 3, 2021) ............................................................................ 18

*FTC v. Grand Canyon Educ., Inc.*,
745 F. Supp. 3d 803 (D. Ariz. 2024) .................................................... 7, 8

*FTC v. Health Formulas, LLC*,
No. 2:14-cv-01649-RFB-GWF, 2015 U.S. Dist. LEXIS 59387 (D.
Nev. May 6, 2015) ...................................................................................... 9

*FTC v. Lights of Am., Inc.*,
760 F. Supp. 2d 848 (C.D. Cal. 2010) ................................................... 6, 7

*FTC v. Lights of Am. Inc.*,
No. SACV 10-1333, 2011 WL 1515158 (C.D. Cal. Mar. 31, 2011) ........... 21, 22

*FTC v. Medicor LLC*,
217 F. Supp. 2d 1048 (C.D. Cal. 2002) .................................................. 17

*FTC v. Network Servs. Depot, Inc.*,
617 F.3d 1127 (9th Cir. 2010) ................................................................. 22

*FTC v. Pantron I Corp.*,
    33 F.3d 1088 (9th Cir. 1994) ................................................................ 6

*Gamino v. Thinx, Inc.*,
    No. EDCV 23-2067 JGB (SHKx), 2024 U.S. Dist. LEXIS 72111
    (C.D. Cal. Apr. 18, 2024) ................................................................ 18

*Kampe v. Volta Inc.*,
    No. 22-cv-02055-JST, 2024 U.S. Dist. LEXIS 191037 (N.D. Cal.
    Oct. 21, 2024) ................................................................ 24

*Khoja v. Orexigen Therapeutics, Inc.*,
    899 F.3d 988, 1000 (9th Cir. 2018) ................................................................ 24

*Lopez v. Dave Inc.*,
    No. 22-cv-04160-VC, 2022 U.S. Dist. LEXIS 210598 (N.D. Cal.
    Nov. 21, 2022) ................................................................ 9, 10

*Moore v. Mars Petcare US, Inc.*,
    966 F.3d 1007 (9th Cir. 2020) ................................................................ 16

*PMD Produce Brokerage Corp. v. USDA*,
    234 F.3d 48 (D.C. Cir. 2000) ................................................................ 14

*Regalado v. Fresno Cty.*,
    No. 1:23-cv-00672-KES-BAM, 2024 U.S. Dist. LEXIS 204614
    (E.D. Cal. Nov. 8, 2024) ................................................................ 23

*Steinle v. City & Cnty. of San Francisco*,
    919 F.3d 1154 (9th Cir. 2019) ................................................................ 5

*The Best Label Co., LLC v. Custom Label & Decal, LLC*,
    No. 19-CV-03051-LHK, 2021 U.S. Dist. LEXIS 224074 (N.D. Cal.
    Nov. 19, 2021) ................................................................ 23

*United States v. Burgerim Grp. USA, Inc.*,
    CV 22-825-DMG, 2024 U.S. Dist. LEXIS 11263 (C.D. Cal. Jan.
    19, 2024) ................................................................ 7

*United States v. Hall Family Tr. Dated June 8, 2001*,
    No. 16-cv-0538-AJB-BGS, 2019 U.S. Dist. LEXIS 244353 (S.D.
    Cal. Nov. 12, 2019) ................................................................ 23

DEF'S REPLY ISO DEF'S MOTION TO DISMISS; MEMORANDUM OF POINTS AND
AUTHORITIES

*United States v. MyLife.com, Inc.*,
   499 F. Supp. 3d 757 (C.D. Cal. 2020) ................................................ 3, 22

*United States v. Nat'l Fin. Servs.*,
   98 F.3d 131 (4th Cir. 1996) ...................................................................... 14

*United States v. Stratics Networks Inc.*,
   721 F. Supp. 3d 1080 (S.D. Cal. 2024) ............................................ 15, 22

*Vess v. Ciba-Geigy Corp USA*,
   317 F.3d 1097 (9th Cir. 2003) ..................................................................... 8

*Walter v. Hughes Commc'ns, Inc.*,
   682 F. Supp. 2d 1031 (N.D. Cal. 2010) .................................................... 18

*Watt v. Block, Inc.*,
   No. 24cv867-LL-DDL, 2024 U.S. Dist. LEXIS 211534 (S.D. Cal.
   Nov. 20, 2024) .......................................................................................... 24

*Wilson v. Hewlett-Packard Co.*,
   668 F.3d 1136 (9th Cir. 2012) .................................................................. 15

**Statutes**

15 U.S.C. § 8403 ............................................................................. *passim*

15 U.S.C. § 8503 .................................................................................. 9, 13

15 U.S.C. § 8504 ........................................................................................ 9

Federal Trade Commission Act § 5 ............................................... *passim*

Federal Trade Commission Act § 12 ........................................................ 6

**Rules and Regulations**

88 Fed. Reg. 24716 (Apr. 24, 2023) ......................................................... 5

88 Fed. Reg. 24726 (Apr. 24, 2023) ..................................................... 5, 6

Fed. R. Civ. P. 8 ...................................................................................... 20

Fed. R. Civ. P. 9 ................................................................................ *passim*

Fed. R. Civ. P. 15 .................................................................................... 23

DEF'S REPLY ISO DEF'S MOTION TO DISMISS; MEMORANDUM OF POINTS AND
AUTHORITIES

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Fed. R. Civ. P. 17 ................................................................................................ 23

Fed. R. Civ. P. 25 ................................................................................................ 23

DEF'S REPLY ISO DEF'S MOTION TO DISMISS; MEMORANDUM OF POINTS AND
AUTHORITIES

## I.    INTRODUCTION

Dave Inc. ("Dave") and Jason Wilk respectfully submit this reply brief in support of their Motion to Dismiss the Amended Complaint.

The Government has no real response to Dave's ROSCA arguments. The Opposition contends, without any support, that ROSCA requires disclosure of all material terms of a "transaction for cash advance goods and services, not merely the terms of the negative option feature." Opp'n at 19. The statutory text, however, requires disclosure of the material terms of the negative option. The Government, of course, does not quote the entirety of the statute. Nor does it even engage with the statutory text. And the Government's attempt to dodge the significance of the FTC's own statements recognizing ROSCA's limitations underscores the baselessness of its legal position.

The FTC under the prior Administration promulgated the Click to Cancel rule precisely because ROSCA's statutory text did not require companies to do what the Government argues ROSCA required Dave to do here. Prior to the Click to Cancel rule, no Federal law or regulation required companies to disclose every material terms of a contract that included a negative option element separately from the contract itself. The Click to Cancel rule changed that. But neither DOJ nor the FTC has the legal authority to enforce the new substantive requirements of the Click to Cancel Rule retroactively, including by effectively grafting the Click to Cancel Rule's provisions onto ROSCA in contravention of ROSCA's statutory text.

The other facets of the Government's ROSCA case—the requirements to obtain consumers' informed consent and to provide simple mechanisms for a consumer to cancel recurring transactions—are also deficiently pled here. The Amended Complaint shows, on its face, that consumers are aware of and affirmatively consent to the fees they are charged, and that they have various simple mechanisms to cancel their subscriptions. The Government's demands for monetary relief, as such, also fail. Similarly, the Amended Complaint shows that the

- 1 -

Government's Section 5 claims fail because Dave's advertisements and user flows are not unfair or deceptive.

As for pursuing Mr. Wilk individually, it appears to be the Government's view that an executive at a company becomes personally liable for monetary relief simply by virtue of their stature within the company. This is not correct. Such a reading would unfairly subject executives to *per se* liability for civil monetary penalties and other monetary relief. The facts alleged in the Amended Complaint, moreover, do not show that Mr. Wilk possessed the requisite knowledge to support a claim for monetary liability.

For these reasons, and for the reasons set forth in the Defendants' opening brief and below, the Court should dismiss the Amended Complaint.

## II.    ARGUMENT

### a. The Court Should Reject the Government's Expansive and Incorrect Interpretation of ROSCA's Disclosure Requirement.

Dave's Motion to Dismiss focuses on the actual text of ROSCA. ROSCA Section 8403, which is entitled, "Negative Option Marketing on the Internet," states the following:

**15 U.S. Code § 8403 - Negative option marketing on the Internet**

It shall be unlawful for any person to charge or attempt to charge any consumer for any goods or services sold in a ***transaction effected on the Internet through a negative option feature*** (as defined in the Federal Trade Commission's Telemarketing Sales Rule in part 310 of title 16, Code of Federal Regulations), unless the person—

(1) provides text that clearly and conspicuously discloses all material terms of ***the transaction*** before obtaining the consumer's billing information;

(2) obtains a consumer's express informed consent before charging the consumer's credit card, debit card, bank account, or other financial account for products or services through ***such transaction***; and

(3) provides simple mechanisms for a consumer to stop ***recurring charges*** from being placed on the consumer's credit card, debit card, bank account, or other financial account.

15 U.S.C. § 8403 (emphasis added).  Section 8403 defines what a "negative option feature" is by cross-referencing the Telemarketing Sales Rule's definition, which states: "Negative option feature means, in an offer or agreement to sell or provide any goods or services, a provision under which the customer's silence or failure to take an affirmative action to reject goods or services or to cancel the agreement is interpreted by the seller as acceptance of the offer."  Negative option features have been interpreted to include subscription plans that automatically renew.  *See United States v. MyLife.com, Inc*., 499 F. Supp. 3d 757, 762 (C.D. Cal. 2020).[1]

While Dave's motion focuses on the entire text, the Government selectively excerpts Section 8403 in its brief and then takes a distorted and expansive view of what the statute means.[2]  The Government's interpretation and application of ROSCA substantially contradicts ROSCA's text.  The Government argues that Section 8403 should be broadly interpreted to require Dave to disclose all "'material terms' of [a] transaction for cash advance goods and services, not merely the terms of the negative option feature."  Opp'n at 19.  But this isn't what the statute says or means.

The introductory language to ROSCA's "Negative option marketing on the Internet" provision states that it applies to "goods or services sold in a transaction *effected on the Internet through a negative option feature*."  In the context of an automatically renewing subscription plan, this means the sale of the plan itself, not every potential interaction with the company's services that may occur thereafter.  This language carries through to each of the subsections, and means that:

---

[1] The Government alleges that Dave's membership fee is a "negative option feature"; Dave reserves all its defenses as to this characterization.  Similarly, Dave reserves all of its arguments regarding the Government's distorted and incorrect presentation of alleged "facts."

[2] And, as Dave explained in its opening brief, it did not have fair notice of the Government's application of ROSCA.  And, the Government admits that the salient inquiry is notice of what ROSCA, "'the statute itself requires.'"  Opp'n at 18 (quoting *FTC v. Amazon*, 735 F. Supp. 3d 1297, 1330-1 (W.D. Wash. 2024)).  Defendants, of course, agree, but the Government's interpretation of ROSCA goes well beyond what the "statute itself requires," and in this way, too, Defendants have been deprived of fair notice.

- 3 -

- Before a person can charge for "goods or services sold *in a transaction effected* on the Internet *through a negative option feature*," they must "provide [ ] text that clearly and conspicuously discloses *all material terms of the transaction* before obtaining the consumer's billing information." 15 U.S.C. § 8403(1). Thus, the "material terms of the transaction" that must be disclosed are those that relate to the negative option transaction.

- A person offering "goods or services sold *in a transaction effected* on the Internet *through a negative option feature*" must obtain a consumer's express informed consent regarding "such transaction." 15 U.S.C. § 8403(2). Thus, the consumer must consent to the negative option transaction.

- A person offering "goods or services sold *in a transaction effected* on the Internet *through a negative option feature*" must provide "simple mechanisms for a consumer to stop recurring charges." 15 U.S.C. § 8403(3). Thus, the consumer must have a simple mechanism to stop the recurring charge relating to the negative option transaction.

The Government proposes reading the provision's key prefatory language limiting its applications to "transactions effected" "*through* a negative option feature" out of Section 8403's subparts.

The Government then argues that "the value of the cash advance product, the speed of funding," and the option to leave a tip may have influenced a consumer's decision to "enroll in a membership for cash advances" (Opp'n at 20),[3] and, thus, must be disclosed pursuant to ROSCA, even though those "terms" are unconnected to the "transaction effected on the Internet through a negative option feature." Opp'n at 19. The Government's interpretation of ROSCA to mean that all material terms of an underlying product must be disclosed prior to collecting billing information for the negative option feature—regardless of the product's connection to the negative option transaction—alters the meaning of the statute's plain language and incorrectly applies ROSCA.[4] And the Government's expansive and unsupported definition of ROSCA would lead to truly absurd results. For example, a travel membership program like AAA would need to disclose to every prospective member every

---

[3] Further, the $1 monthly fee provides customers with access to more features than cash advances (*e.g.*, budgeting and financial education tools). The Government overlooks this fact, too.

[4] The Government's suggestion that "membership plans" are "illegal" (Opp'n at 18) is incorrect. Nothing in ROSCA states that membership plans are not lawful. The Court should disregard the Government's unsupported and inflammatory statement.

DEF'S REPLY ISO DEF'S MOTION TO DISMISS; MEMORANDUM OF POINTS AND AUTHORITIES

material term, including costs and fees, regarding every feature available to AAA members—*i.e.*, travel agency services, discount programs at hotels, roadside assistance, auto repair—not just the material terms of the recurring membership. That is not practical, nor is it what ROSCA requires.

The Government also argues that the Court should not consider the FTC's own statements about ROSCA because the analysis of ROSCA "begins and ends with the statute." Opp'n at 18. But it is important to note that the sources Dave cited[5] interpret the statute itself. They are ***not*** drawn from legislative history that predates ROSCA's enactment or ROSCA's finalized text.[6] Rather, the sources reflect the FTC's recent interpretation of ROSCA and its limitations, ***as the statute is written***. For instance, if ROSCA really requires disclosure of all material terms relating to any underlying product, and not just those material terms regarding negative option features, then the FTC would not have expressed, in 2023, that there was a need to enact a **new** rule designed to "prohibit[] any person from misrepresenting, expressly or by implication, any material fact regarding the entire agreement—***not just facts related to a negative option feature***."[7] And to the extent the Government argues that Dave is liable under ROSCA because the Amended Complaint alleges that consumers were "misled" about "the amounts and availability of cash advances and the true costs of obtaining them" (Opp'n at 23), the FTC, in its own interpretation of ROSCA, has

---

[5] These sources relate to the enactment of the FTC's Negative Option ("Click to Cancel") Rule, and were written in 2023 and 2024, more than a decade after ROSCA's [2010] effective date and which show that the FTC believed that ROSCA—as enacted—contained gaps. *See, e.g.*, Notice of Proposed Negative Option ("Click to Cancel") Rule, 88 Fed. Reg. 24716, 24726 (Apr. 24, 2023).

[6] This is in contrast to *Steinle v. City & Cnty. of San Francisco*, 919 F.3d 1154, 1163 (9th Cir. 2019) (Opp'n at 18), which involved legislative history predating a statute's enactment. *See id.* ("Plaintiffs also point to legislative history and contend that congressional reports relating to §§ 1373(a) and 1644 demonstrate that those sections were intended to eliminate any restrictions on the flow of immigration information.").

[7] Notice of Proposed Negative Option ("Click to Cancel") Rule, 88 Fed. Reg. 24716, 24726 (Apr. 24, 2023) (emphasis added).

acknowledged that "misrepresentations . . . are not expressly covered by ROSCA, even when on the internet."[8]

The Government, relatedly, conflates the disclosure of material terms regarding the "transaction effected on the Internet through a negative option feature" under ROSCA, with the prohibition on "material misrepresentations" under a different statute—Section 5 of the FTC Act.   The Government cites *FTC v. Cyberspace.com LLC*, 453 F.3d 1196, 1201 (9th Cir. 2006), which is a Section 5 case that predates ROSCA, and which considered whether an advertisement was likely to mislead consumers in a material way; it does not address which terms of an agreement—let alone the terms of a negative option transaction—are material. Similarly, *FTC v. Pantron I Corp.*, 33 F.3d 1088, 1096 (9th Cir. 1994)—another pre-ROSCA decision, discussing Section 5 and Section 12 of the FTC Act— addressed a false advertising claim and whether representations made in an advertisement were material.   Again, it does not involve determining the material terms of an agreement, and certainly does not discuss what constitutes a material term of a transaction "effected on the Internet through a negative option feature."   15 U.S.C. § 8403.   These decisions are inapplicable here.

Accordingly, the Court should dismiss Count III.

### b.  The Government Ignores the Overwhelming Weight of Authority in the Ninth Circuit—Section 5 and ROSCA Claims Are Subject to Rule 9(b)'s Heighted Pleading Standard.

In its Motion to Dismiss, Dave cited two district court cases holding that Rule 9(b) applies when the FTC levels Section 5 claims alleging that "representations were 'false or not substantiated,'" and "conduct was unfair or deceptive."[9]   *FTC v. Lights of Am., Inc.*, 760 F. Supp. 2d 848, 852–53 (C.D. Cal. 2010); *see also FTC v.*

---

[8] *Id.* Further, as Dave explained in connection with the Government's Section 5 allegations (*see* Section II.g) Dave's practices are not deceptive, contrary to the Government's contention.  Opp'n at 15, 22.

[9] As discussed in Dave's opening brief, the Government's ROSCA claims are based on alleged unfair or deceptive act(s) or practice(s) in violation of Section 5(a) of the FTC Act.

*D-Link Sys. Inc.*, No. 3:17-CV-00039-JD, U.S. Dist. LEXIS 152319, at *3–5 (N.D. Cal. Sept. 19, 2017).[10]  The Government does not address either case, let alone attempt to distinguish them.  It simply ignores case law it disfavors and instead offers two inapposite cases to support its argument.

*First*, the Government cites dicta in a footnote to the Tenth Circuit's decision in *FTC v. Freecom Commc'ns, Inc.*, 401 F.3d 1192, 1203 n.7 (10th Cir. 2005).[11] *Freecom* concerned a district court's extraordinary award of attorney fees arising from the FTC's bad faith in bringing (and losing) a Section 5 trial against an individual defendant.  *Id.* at 1196–1200.  The Tenth Circuit overturned the attorney fee award, holding that the defendant had not met the exacting burden of showing that the FTC's case was "entirely without color" and lacking in "*any* legal or factual basis."  *Id.* at 1201.  In so doing, the Tenth Circuit discussed what evidence the FTC may have been able to bring if the trial court had ruled in the FTC's favor on motions *in limine*.  The cite on which the Government's pleading standard argument relies is buried in that footnote.  The tangential nature of this out-of-circuit dicta is entirely at odds with its prominent placement in the Government's brief.  Next, the Government cites a District of Arizona case that relies predominately on out-of-circuit law and does not cite or distinguish any of the Ninth Circuit cases applying Rule 9(b).  *FTC v. Grand Canyon Educ., Inc.*, 745 F. Supp. 3d 803, 837 (D. Ariz. 2024).[12]

---

[10] Other Central District courts have followed the reasoning in *Lights of Am.* and held the Government to a heightened pleading standard.  *See, e.g.*, *United States v. Burgerim Grp. USA, Inc.*, CV 22-825-DMG, 2024 U.S. Dist. LEXIS 11263, at *2 (C.D. Cal. Jan. 19, 2024) ("Rule 9's pleading standards apply to claims for violations of the FTC Act.") (citing *Lights of Am.*, 760 F. Supp. 2d at 854); *CFPB v. Prime Mktg. Holdings, LLC*, No. CV16-07111-BRO (JEMx), 2016 U.S. Dist. LEXIS 194873 , at *16 (C.D. Cal. Nov. 15, 2016) (citing favorably *Lights of Am.* as the basis to apply 9(b) to the analogous CFPA and holding that while "the FTC omitted the word 'fraud' from its complaint," the omission did "not detract from the apparently fraudulent nature of the allegations.") (internal citations omitted).

[11] Judge Selna made just such an observation in *Lights of Am.*, 760 F. Supp 2d at 851. ("The court's comments regarding the inapplicability of Rule 9(b) to the FTC's allegations in [*FTC v. Commc'ns*] were purely dicta.")

[12] *Grand Canyon Educ.* also vividly demonstrates the glaring deficiencies in the Government's pleadings.  The FTC's complaint specified timeframes, identified the challenged representations, and the role of each defendant in the deceptive practices.  *Id.* at 836 (citing to the FTC's Opposition

Neither *Freecom* nor *Grand Canyon Educ.* reflects the prevailing rule in the Ninth Circuit.  And courts in the Central District routinely apply the heightened pleading standards of Federal Rule of Civil Procedure Rule 9(b) to deception claims under Section 5 of the FTC Act where, as here, the Government alleges that the defendant violated the Act by deceiving consumers with misleading or false statements. *See supra*.  Many other courts in the Ninth Circuit do, as well. *See* Mot. at 15.  To survive this Motion to Dismiss, the Government must adequately plead "the who, what, when, where, and how of the misconduct charged" and "set forth what is false or misleading about the statement, and why it is false." *Vess*, 317 F.3d at 1106.  It has not done so.

### c.  Dave Discloses All Material Terms.

In its opening brief, Dave individually addressed each of the Government's four alleged "material terms."  Mot. at 23–28.  Dave demonstrated that the Complaint does not plausibly allege that Dave failed to properly disclose the recurring $1 fee (the alleged negative option feature).  Further, Dave demonstrated why ROSCA does not apply to the remainder of the terms.  As Dave explained:

- ***Recurring Membership Fee***: The Amended Complaint shows that the recurring monthly one-dollar membership fee was clearly and conspicuously disclosed in the image described as "App Screenshot 3." Am. Compl. ¶ 27.  The text disclosing the monthly fee appears to be the same size as surrounding text and is located **directly above** the "Connect account" button.  *Id*.  It is in no way concealed by "design elements" in the app, as the Government claims.  Thus, the Government has not plausibly alleged a ROSCA violation.

- ***Extra Cash***: The Amended Complaint does not demonstrate that the potential ExtraCash amount for which a member may be eligible is a negative option feature under ROSCA.  The crux of the Government's argument is that Dave did not sufficiently disclose that ExtraCash had eligibility requirements.  The Government does not and cannot allege that ExtraCash is a recurring charge.  Thus, ROSCA does not apply.[13]

---

to the Motion to Dismiss).  As such, the court ruled, even if Rule 9(b) applied, the complaint adequately plead "the who, what, when, where, and how of the misconduct charged" and "set forth what is false or misleading about the statement, and why it is false." 745 F. Supp. 3d at 838 (citing *Vess v. Ciba-Geigy Corp USA*, 317 F.3d 1097, 1106 (9th Cir. 2003)).  The Government's complaint here is woefully short on specifics.

[13] Further, Dave discloses that eligibility requirements apply.  And, as discussed in Dave's Section 5 argument, "up to" claims are not misleading.

DEF'S REPLY ISO DEF'S MOTION TO DISMISS; MEMORANDUM OF POINTS AND AUTHORITIES

Dave also clearly advised users at the inception of the enrollment flow that advances would be subject to eligibility requirements.

- ***Express Delivery Fee****:* The Amended Complaint does not allege that the express delivery fee was a recurring negative option feature. Rather, the Amended Complaint shows that the express transfer fee was an optional one-time charge a customer could select to use a faster funds transfer mechanism.[14] Am. Compl. ¶ 43. ROSCA therefore does not apply. The Amended Complaint also shows that Dave disclosed the express fee at the start of the enrollment flow. Am. Compl. ¶ 27, App Screenshot 3.

- ***Tipping****:* The Amended Complaint does not allege that the option to leave a tip was a negative option feature. Rather, the Amended Complaint shows that it was a discretionary one-time charge, not a recurring charge. Am. Compl. ¶ 46.[15] Thus, ROSCA does not apply. Further, the Amended Complaint shows that whether a customer chose to leave a tip or not had no bearing on whether the customer was eligible for an advance. Indeed, "App Screenshot 4," excerpted in the Amended Complaint, shows that by the time a customer was presented with the option to leave a tip they had been told: "Your advance is on the way!" Am. Compl. ¶ 46.

The Amended Complaint therefore does not plausibly allege a ROSCA violation pursuant to Section 8503(1).[16]

The Government, in response, cites *FTC v. Health Formulas*, to argue that hyperlinks cannot be part of a clear and conspicuous disclosure. But in that case the disclosures, including references to terms and conditions, were "buried in fine print" and only included in terms and conditions that appeared on a separate page. *FTC v. Health Formulas*, *LLC*, No. 2:14-cv-01649-RFB-GWF, 2015 U.S. Dist. LEXIS 59387, at *48 (D. Nev. May 6, 2015). *Health Formulas* does not address terms that are hyperlinked through a clear and conspicuous hyperlink. The disclosures here, which are stated in a clear, concise sentence directly above the "connect account" button, are not "buried in fine print." The other case the government cites, *Lopez v.*

---

[14] And the Amended Complaint shows that Dave clearly disclosed that instant transactions were available for a fee.

[15] As explained in Dave's Section 5 argument, its presentation of the optional tipping feature was not deceptive.

[16] *FTC v. Doxo, Inc.*, cited by the FTC (Opp'n at 20) involved recurring subscription fees and non-optional bill payment fees; it did not address the theory advanced by the FTC here, namely that other product claims (*i.e.*, eligibility requirements) and optional features (*i.e.*, optional express delivery and optional tip) are "material terms" within ROSCA Section 8504(1). *FTC v. Doxo, Inc.*, 2025 WL 887311 (W.D. Wash. Mar. 21, 2025).

DEF'S REPLY ISO DEF'S MOTION TO DISMISS; MEMORANDUM OF POINTS AND AUTHORITIES

*Dave* is a decision from 2022 that addressed the applicability of Dave's historical arbitration disclosure, not disclosures around its membership fee; the arbitration clause is not at issue in this case. *Lopez* is not relevant here. *See Lopez v. Dave Inc*., No. 22-cv-04160-VC, 2022 U.S. Dist. LEXIS 210598, *3–4 (N.D. Cal. Nov. 21, 2022).[17]  Moreover, the screenshots in *Lopez* bear no resemblance to the screenshots depicted in the Amended Complaint which show that the hyperlinks were set apart from the surrounding text, in a contrasting color, as demonstrated below.






| App Screenshot 1 | App Screenshot 2 | App Screenshot 3 |

*See, e.g.*, Am. Compl. ¶¶ 25–27.

---

[17] The disclosures excerpted in the Amended Complaint also conform with FTC's Dot.com guidance which recommends offsetting hyperlinks with different colors and using consistent styles for hyperlinks.  Both of which Dave does.  *See* FTC, Dot.com Disclosures (Mar. 2013), bus41-dot-com-disclosures-information-about-online-advertising.pdf.    Further the FTC's conclusory argument that the linked FAQs and Terms did not inform customers about "key information" is devoid of any supporting factual allegations and does not meet the *Iqbal/Twombly* standard.  It certainly does not meet Rule 9(b)'s heightened pleading requirements.

### d. The Amended Complaint Does Not Plausibly State a Claim that Dave Failed to Obtain Informed Consent.

ROSCA's informed consent requirement addresses whether a person offering "goods or services sold in a transaction effected on the Internet through a negative option feature" obtained a consumer's express informed consent regarding "***such transaction***." 15 U.S.C. § 8503(2). "Such transaction" refers to the negative option transaction. As shown on the face of the Amended Complaint in App Screenshot 3 (Am. Compl. ¶ 27), Dave clearly and conspicuously disclosed its monthly membership fee. Mot. at 23, *supra* at II.c. The disclosure occurred on the face of App Screenshot 3 itself ("Dave charges a membership fee of $1 per month to connect your bank"), and the adjacent link to "See our FAQs" appeared bolded, in blue (not hidden or in a lighter text), clearly denoting a hyperlink with additional information. All of this appeared above and before the customer was prompted to click the "Connect account" button. This is not a scenario where customers were "merely clicking on a button . . . viewed in the abstract" (Opp'n at 23),[18] and the Government's characterization does not correctly describe what is depicted in the Amended Complaint in App Screenshot 3.

And, although ROSCA does not apply to advance eligibility requirements, expedited transfer fees, or tips, customers are also informed about each of those factors. With respect to eligibility factors:

- Advertisement 1 and Advertisement 2, among others, disclose that "terms apply" to advances (Am. Compl. ¶ 17);
- App Screenshot 1 directs users—through a blue bolded hyperlink following the reference to getting a cash advance—to "*See terms" (Am. Compl. ¶ 25); and
- App Screenshot 2 states that advance amounts were "*Subject to eligibility requirements" (Am. Compl. ¶ 26).

Thus, prospective members were informed that eligibility requirements governed cash advance amounts. With respect to the express delivery fee, App Screenshot 3

---

[18] Quoting *Berman v. Freedom Fin. Network, LLC*, 30 F.4th 849, 857–58 (9th Cir. 2022).

DEF'S REPLY ISO DEF'S MOTION TO DISMISS; MEMORANDUM OF POINTS AND AUTHORITIES

from Dave's enrollment flow states: "Get money instantly for a small fee" above the "Connect account" button. Am. Compl. ¶ 27.[19]  There was, accordingly, no confusion that instant delivery was subject to a cost.  And, as far as optional tips are concerned, the Amended Complaint shows that members were specifically, and accurately, informed that: the "optional tip helps [Dave] stay in business" (Am. Compl. ¶ 46, App Screenshot 4); that Dave "provide[d] a meal for every %" tipped (Am. Compl. ¶ 55, App Screenshot 5); and that members could choose a pre-calculated tip amount or leave a custom tip (which could be $0).

Even based on the selective information presented by the Government in the Amended Complaint, its informed consent claim is implausible and Count IV should be dismissed.

### e.  The Government's Cancellation Claim Fails.

The Government's argument that Dave fails to provide "simple mechanisms for a consumer to stop recurring charges" 15 U.S.C. 8403(3)—that is, the $1 monthly membership fee—ignores three critical facts alleged in the Amended Complaint:

1. Members can contact Dave's customer service by email (Am. Compl. ¶ 81);
2. Members can utilize Dave's in-app process to stop the membership charge (Am. Compl. ¶ 77);[20] and
3. "Thousands of consumers contact Dave each month to cancel their accounts"  (Am. Compl. ¶ 41).

These points alone show that the Government's claim is implausible. Customers have multiple mechanisms to contact Dave, and the Government alleges that they regularly do so.  The Government also mischaracterizes or did not respond to several of Dave's arguments.  Opp'n at 25.[21]

---

[19] The Government strategically chose not to include the specific screenshots that accompanied the member's option to select an express delivery fee.

[20] The Government alleges that the in-app process was not available to some members for a period of time, but it does not allege that those members were charged a recurring fee.

[21] The Government also mischaracterizes its own Amended Complaint.  *See* Opp'n at 25.  For example, paragraphs 77-80 contain allegations related to an aspect of the Dave service that did not require customers to connect an external account and were not subject to the $1 a month monthly

*First*, Dave did not ask for the Government to "call out" Dave's customers "individually by name." Rather, Dave observed that in order for the court to draw inferences necessary from the allegations, the Government must provide some context about the customer and the Dave service. The Amended Complaint does not. It does not, for example, allege that all users of all Dave services at all times were subject to a $1 monthly fee. In the absence of such allegations, it is not reasonable for the Court to infer that Dave customers struggled to cancel or pause the monthly subscription.

*Second*, the Government does not address in its Amended Complaint or Opposition what "nine separate steps" are allegedly required for members to complete Dave's in-app cancellation process, nor does the Government address what purportedly makes Dave's process "complex."[22] Dave has not asked the Government to "describe a hypothetical, alternative business model." (Opp'n at 25). Rather, it has pointed out that the existing allegations do not support a conclusion that the processes available to terminate the $1 per month subscription were anything other than "simple," as ROSCA requires.

*Third*, the Government fails to address Dave's response to the allegation that Dave wrongly collects "sensitive information" as a "roadblock" to cancellation. As Dave explained, it is common and prudent for a financial services app that provides banking services to validate a customer's identity before making account changes. Mot. at 29–30.

Thus, the Government's concessions in the Amended Complaint—coupled with its failure to meaningfully respond to a number of Dave's arguments—demonstrate the implausibility of its Section 8503(3) claim. The Court should dismiss Count V.

---

charge. The quotations from Dave employees about that aspect of the service are irrelevant to the Government's ROSCA claim.
[22] The court should not rely on *FTC v. Cardiff*, No. ED 5:18-cv-02104-SJO-PLAx, 2019 U.S. Dist. LEXIS 232069, *4, (C.D. Cal. May 16, 2019), as that order resulted from a stipulated permanent injunction.

DEF'S REPLY ISO DEF'S MOTION TO DISMISS; MEMORANDUM OF POINTS AND AUTHORITIES

### f. The Government Does Not Allege a Basis for Civil Monetary Penalties.

To establish a basis for civil monetary penalties, the Government must allege more than that the Defendants knew about ROSCA—the Government must allege that Defendants knew that their conduct violated ROSCA. *See United States v. Nat'l Fin. Servs.*, 98 F.3d 131, 139 (4th Cir. 1996) ("A defendant is responsible where a reasonable person under the circumstances would have known of the existence of the provision ***and that the action charged violated that provision***.") (emphasis added). Dave and Mr. Wilk could not reasonably have known that their conduct could be alleged to have violated ROSCA, especially under the expansive theory that the Government alleges here, particularly because the FTC previously acknowledged ROSCA's limitations. *See PMD Produce Brokerage Corp. v. USDA*, 234 F.3d 48, 54 (D.C. Cir. 2000) (party had no notice, let alone knowledge, where the government had not articulated its interpretation of a rule). Therefore, the Amended Complaint does not sufficiently allege facts to establish civil monetary penalties.

The Government argues, citing *Amazon*, that a reasonable company would be aware of ROSCA. While the Court in the *Amazon* matter opined that Amazon had to have been aware that its conduct violated ROSCA, that case addressed a much narrower reading of the statute (*i.e.*, regarding Amazon's recurring subscription and "Iliad" cancellation flow), and not an expansive view of what constitute "material terms" under ROSCA's disclosure provision. Here, the Government must allege more—that a reasonable company or person would know that the specific types of conduct alleged in the Amended Complaint violated ROSCA. *See United States v. Nat'l Fin. Servs.*, 98 F.3d at 139. The Government has not done so.

The Government also argues that receipt of complaints suffices as a matter of law to establish knowledge of ROSCA.[23] This would be an absurd conclusion

---

[23] Nor are "internal analyses" of complaints sufficient to show that Defendants knowingly violated ROSCA. Although the Government conclusorily alleges that consumers complained that Dave was

because in "any business, some customer complaints are expected." *FTC v. Am. Future Sys., Inc.*, No 20-2266, 2024 U.S. Dist. LEXIS 57396, at *55 (E.D. Pa. Mar. 29, 2024). Both *Amazon* and *Stratics* clearly alleged more than the mere existence of some customer complaints. *FTC v. Amazon.com, Inc.*, 735 F. Supp. 3d 1297, 1333 (W.D. Wash. 2024) (in addition to customer complaints, FTC alleged that Amazon deliberately rolled back clarifying changes because they reduced the number of new subscribers and that Amazon knew that "accidental signups" for Prime creates "customer friction."); *United States v. Stratics Networks Inc.*, 721 F. Supp. 3d 1080, 1101 (S.D. Cal. 2024) (in holding that Defendant knew it was violating the Telemarketing Sales Rule, the court noted that, in addition to customer complaints, that FTC had explicitly publicized that the TSR applied to defendants' specific service). Notably, the Government has not addressed the cases Dave cited in its motion which hold that consumer complaints are insufficient to establish knowledge. *See, e.g.*, *Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136, 1147 (9th Cir. 2012) (allegations of fourteen complaints, where twelve were undated, were insufficient to establish knowledge); *Berenblat v. Apple, Inc.*, No. 08-4969 JF (PVT), 2010 U.S. Dist. LEXIS 46052, at *27 (N.D. Cal. Apr. 7, 2010) (complaints on website "merely establish the fact that some consumers were complaining" and "[b]y themselves they are insufficient to show that Apple had knowledge" of the alleged defect.).[24] Regardless, to be liable for civil monetary penalties, Defendants would have to be aware that their conduct violated ROSCA, including the Government's impermissibly broad interpretation of ROSCA, not just that some customers

---

"violating ROSCA" (Opp'n at 87) nowhere in the Amended Complaint does the FTC point to a complaint referencing ROSCA, or an "internal analysis" that does.

[24] Nor can the Government rely on the existence of Dave's regulatory compliance management system to support civil monetary penalties. *See* Mot. at 32. That absurd conclusion would open any company working to comply with the law to additional penalties for those efforts; this nonsensical conclusion would undermine the very purpose of civil money penalties in the first instance. The Government also argues that Dave and Mr. Wilk knew they were being investigated by the FTC. But that does not establish knowledge. *See* Section II.h.

DEF'S REPLY ISO DEF'S MOTION TO DISMISS; MEMORANDUM OF POINTS AND AUTHORITIES

complained about some aspect of Dave's offering.  Therefore, the Government has not established a basis for civil monetary penalties.

### g.  The Amended Complaint's UDAAP Claims Fail as a Matter of Law.

The Government has not plausibly alleged that Dave's disclosures regarding cash advances (Count I) and its historical tipping feature (Count II) were inaccurate. *See* Mot. Section IV.  The Government argues, nonetheless, that even if the disclosures were accurate, consumers would have been deceived, claiming that "dismissal of a deception claim is warranted only if 'common sense would not lead anyone to be misled.'" Opp'n at 11 (citing *Moore v. Mars Petcare US, Inc.*, 966 F.3d 1007, 1018 (9th Cir. 2020)).  The Ninth Circuit applies a commonsense test, but the Government's Opposition leaves common sense at the door.

*First*, the Government misleadingly claims that the Defendants "do not dispute that Count I states a claim relating to representations that their cash advances are available instantly without any hidden fees."  Opp'n at 11.  That is simply untrue. Dave moved to dismiss the Amended Complaint in its entirety, including Counts I and II, with prejudice. Mot. at 46.[25]  Dave also explained in detail that the Amended Complaint failed to sufficiently allege that Dave's disclosures regarding its cash advance and express delivery fee were inadequate and that the Amended Complaint demonstrated that Dave's representations about eligibility and fees were clearly disclosed and accurate.[26]  Mot. at 24–28.

*Second,* the Government offers cherry-picked cites and relies on dicta to support its argument that Dave's literally true "up to" statements violated Section 5. The Amended Complaint does not allege that Dave failed to offer cash advances of

---

[25] The Government also appears to have overlooked that Motion to Dismiss Section IV reads, "the Amended Complaint does not plausibly allege a Section 5 claim."  Mot. at 33.

[26] The Government argues that fine print disclosures, and additional disclosures in the terms of service, are insufficient.  Opp'n at 9.  However, Dave's disclosures are accurate on their own.  The disclosures are not buried in fine print, they appear directly in the app flow, in clear, readable print. And, although not necessary to cure any disclosures, Dave also made its terms of use clear and conspicuous to any customer through clear blue, bold hyperlinks.  *See supra* Section II.c.

DEF'S REPLY ISO DEF'S MOTION TO DISMISS; MEMORANDUM OF POINTS AND AUTHORITIES

$500 dollars—Dave can, did, and does offer $500 dollar cash advances to eligible members.[27]  Instead, the Government cites a series of inapposite decisions for the proposition that "it was misleading to give consumers the impression they had an appreciable chance of receiving $500 through the app." Opp'n at 12.  The first case— *FTC v. Medicor LLC*, 217 F. Supp. 2d 1048 (C.D. Cal. 2002)—concerns a generic "results may vary" disclaimer, rather than "up to" language, which is at issue here. Critically, that court held that Defendants could not, and did not, meet the results claimed in their advertisements.  Defendants advertised that consumers could make between $20,000 and $45,000 a year processing medical claims at approximately $3 per claim.  *Id.* at 1054.  The FTC provided "uncontroverted" evidence that the total number of claims processed through Medicor's software over a two-year period was 2,641, meaning that the 40,420 consumers who purchased the software made a total of roughly $7,923 or $5.10 each, on average, for each of Medicor's 40,000-plus customers—far below the $20,000 to $45,000 per consumer Medicor advertised. *Id.* Here, the Government acknowledges that Dave offered advances up to the amounts it advertised.  *See* Mot. at 34–35.

The other cases upon which the Government relies are also not applicable to the facts here, as Dave's ExtraCash advertisements and disclosures were undeniably true.  The Court in *FTC v. FleetCor Techs., Inc.*, 620 F. Supp. 3d 1268 (N.D. Ga. 2022) granted the FTC's motion for summary judgment, finding, as in *Medicor*, that the "advertised 'up to 6¢ per gallon savings' ***is not in fact available*** 'wherever

---

[27] The Amended Complaint alleges that during one particular period, 0.002% of Dave customers received a cash advance of $500. Am. Compl. ¶¶ 3, 34, 36.  The Government relies heavily on this "fact" to argue that "$500 cash advances were exceedingly rare." Opp'n at 12.  But the allegation is not true.  And the Government should well know that it is not accurate, because Dave has repeatedly explained to the Government—both before and after the Government filed the instant action—that the Government's method of calculating cash advances was wrong and the data it used was incomplete.  The Government wanting the 0.002% figure to be true does not make it so.  Dave reserves all rights to seek appropriate remedies for the Government's repeated failure to correct inaccurate pleadings after being put on notice about these inaccuracies.

DEF'S REPLY ISO DEF'S MOTION TO DISMISS; MEMORANDUM OF POINTS AND AUTHORITIES

MasterCard is accepted.'" *Id.* at 1294–1295 (emphasis added).[28]  In other words, Fleetcor could not and did not offer savings at certain gas stations where MasterCard is accepted, as Fleetcor's advertisements claimed.  The same goes for the Government's other cases.  *See Gamino v. Thinx, Inc.*, No. EDCV 23-2067 JGB (SHKx), 2024 U.S. Dist. LEXIS 72111, at *7 (C.D. Cal. Apr. 18, 2024) ("As such, based on its own tests, Thinx knows that the products do not and cannot absorb the advertised amount of fluid.") (internal citation omitted); *FTC. v. Frontier Commc'ns Corp.*, No. 2:21-cv-04155-RGK-MAA, 2021 U.S. Dist. LEXIS 251311, at *18 (C.D. Cal. Oct. 3, 2021) ("Frontier does not or cannot provide internet speeds that are 'as fast as' Frontier's advertising represents."); *Walter v. Hughes Commc'ns, Inc.*, 682 F. Supp. 2d 1031, 1043 (N.D. Cal. 2010) (The complaint "specifically alleges that [plaintiff] was unable to experience the speeds that Hughes had advertised its services as reaching 'up to' . . . .").

*Third*, the Government offers a sleight-of-hand (complaining that Dave excerpted a portion of a screenshot from the Amended Complaint) in an attempt to waive away the clear language on the tipping screen in paragraph 46 of the Amended Complaint.  The full screenshot is below.

---

[28] According to n.8, which the Government cites, the "up to" language was only on a "small number of the ads at issue" in the case.  *FleetCor*, 620 F. Supp. 3d at 1297 n.8.  Here, the Government does not allege that Dave failed to include common sense "up to" qualifies on relevant advertisements.

DEF'S REPLY ISO DEF'S MOTION TO DISMISS; MEMORANDUM OF POINTS AND AUTHORITIES

App Screenshot 4

The sentences excerpted at page 38 of the Motion to Dismiss (indicated above with a red box) are anything but obscure.  At the top of the screen, Dave informs consumers that "Your advance is on its way!," which makes it clear that leaving a tip is not a condition of receiving an advance.  Immediately under that statement, Dave explains that "Your *optional tip* helps us stay in business.  We also provide a meal for every % you tip." (emphasis added).  This disclosure is near the top of the screenshot, in the same font, and the same size as most of the other text on the page. Immediately above the "Thank you!" button, Dave also discloses—again in the same

font as most of the other text on the page—that "Your tip will be collected when you pay your settlement."  Consumers can select from one of the three tip options on the page or select the prominent green textbox hyperlink to "Leave a custom tip," which can be $0.  Taken together, the historic tipping screenshot included in the Amended Complaint is anything but misleading.[29]

Finally, the Government repeats another unsupported—and insufficiently pled—allegation: it is an "illusion" that "tips will provide a particular number of meals to people in need."  Dave's donations to Feeding America are not an illusion.  The Government does not and cannot allege that the amount of money Dave donated to Feeding America was insufficient to provide the designated number of meals to people in need.  *See* Mot. at 40–41.

The Court should dismiss Counts I and II for failure to state a claim.

### h.  The Individual Liability Claims Cannot Stand.

The Government has failed to establish Mr. Wilk's individual liability.  The Amended Complaint lacks any temporal precision, in contravention of pleading rules under Rule 9(b) and also Rule 8.  Moreover, the Government's entire theory of Mr. Wilk's liability stems from its misunderstanding of the law; an individual's leadership status within an organization does not *per se* impose individual liability.

Most of the allegations in the Amended Complaint regarding Dave's advertisements and its enrollment and cancellation flows are undated.  Yet, the Government wants to hold Mr. Wilk liable based on his alleged knowledge of these undated and decontextualized statements, blithely stating in its opposition that Dave has engaged in advertising since 2020 but offering no additional timelines in the

---

[29] The Government also argues tips were deceptive because Dave's internal documents recommended changes.  Opp'n at 15.  This evidence does not establish tips were deceptive.  *See FTC v. DIRECTV, Inc.*, No. 15-cv-01129-HSG, 2018 U.S. Dist. LEXIS 139192, at *58 (N.D. Cal. Aug. 16, 2018) ("DIRECTV's investment of substantial resources in analyzing its operations, candidly identifying areas for improvement, and following through on a number of improvements does not support a finding that the company violated the FTC Act.").

DEF'S REPLY ISO DEF'S MOTION TO DISMISS; MEMORANDUM OF POINTS AND AUTHORITIES

related allegations.[30]  Of course, a three-year statute of limitations period applies to claims seeking consumer redress, something that the Government acknowledges in its opposition while also conclusorily stating that its allegations are "not [] about stale conduct."  Opp'n at 30.  At a minimum, the redress claims against Mr. Wilk should be dismissed at this juncture for this reason alone.  Further, this type of nebulous pleading cannot suffice to establish the requisite knowledge for the Government to seek monetary relief from Mr. Wilk.

In that regard, the Government's statement that an individual's status as a CEO or Chairman of a company "alone establishes individual liability" (Opp'n at 28) is, at best, a substantial exaggeration.  The Government cites *FTC v. Dinamica Financiera LLC* for this proposition, but the Government glosses over that decision's critical point: an individual's leadership or ownership status is **not** alone sufficient to establish monetary liability.  *See id.,* No. CV 09-03554 MMM (PJWx), 2010 U.S. Dist. LEXIS 88000, at *39–40 (C.D. Cal. Aug. 19, 2010) ("'Individual defendants may be held liable for injunctive relief for the corporate defendants' violations of the FTC Act if the FTC demonstrates that the individual defendants participated directly in the wrongful acts or practices, or had authority to control the corporations" but "[t]o hold individual defendants liable for restitution, the FTC must additionally show that they 'had knowledge that the corporation or one of its agents engaged in the wrongful acts or practices.'") (internal citation omitted); *see also FTC v. Lights of Am. Inc.,* No. SACV 10-1333, 2011 WL 1515158, at *2 (C.D. Cal. Mar. 31, 2011) (noting "confusion appears to result from the showing of knowledge that is required

---

[30] The Government argues that it need not allege a "precise time frame."  Opp'n at 8.  But the Government has not alleged a time frame that meets the requirements of Rule 9(b).  *See Depot, Inc. v. Caring for Montanans, Inc.*, 915 F.3d 643, 668 (9th Cir. 2019) ("Plaintiffs vaguely allege that defendants made these misrepresentations '[i]n the course of marketing' the plans to plaintiffs over a period of eight years—from 2006 to 2014.  Plaintiffs do not allege the details of these misrepresentations, such as when defendants made them . . .").

1  for the FTC to obtain restitutionary relief, as opposed to injunctive relief, against

2  individuals for violations of the Act.")[31]

3       *FTC v. Network Servs. Depot, Inc.*, 617 F.3d 1127, 1138–39 (9th Cir. 2010) is

4  not analogous to the facts alleged here.  There, the individual defendants had

5  perpetuated a fraudulent investment scam and had purposely "turned a blind eye" to

6  the falsity of statements surrounding a sham investment opportunity into which

7  consumers paid $18 million for internet "kiosks," when the individual defendants

8  knew that kiosks were not being installed, that the kiosks were "incapable" of

9  generating the promised income, and the individuals had deliberately misled

10  consumers so the consumers would not discover the lack of kiosks.  *Id.*

11       Finally, the Government dismisses the significance of the outcome of Dave's

12  CFPB investigation, which began in 2020.  In September 2021, the CFPB advised

13  Dave that it would not recommend an enforcement action against the company.  The

14  Government now claims that it would be "absurd" for Dave and Mr. Wilk to conclude

15  from the CFPB's determination that the Company's conduct was legally compliant.

16  Opp'n at 29.  But it is perfectly reasonable for a company to interpret this type of

17

18  ―――――――――――――
[31] In addition, in *Lights of America*, the Court did not merely hold that the individual's involvement
19  in the business established knowledge of alleged wrongdoing; the defendants had also received the
results of testing that showed the defendants' claims about their product were incorrect.  *Id.* at 4.
20  ("These allegations permit the reasonable inference that the Vakils were aware of the
representations made on the labels and promotional materials for their LED lamps and were aware
21  of the results of the DOE's CALiPER tests.")  And while the *MyLife* and *Stratics* decisions may
not have specifically held that prior litigation was necessary to find knowledge, in both cases that
22  factor was considered as part of the courts' determinations.  *See MyLife.com, Inc.*, 499 F. Supp. 3d
at 755–56 ("The Complaint also permits a plausible inference of Tinsley's knowledge of, or at least
23  reckless indifference to, the alleged misconduct.  As described in the Complaint, the alleged
practices include prominent features of MyLife's public website, have prompted hundreds of
24  consumer complaints, and have resulted in prior litigation, in which Tinsley has submitted
declarations."); *United States v. Stratics Networks Inc.*, 721 F. Supp. 3d 1080, 1102 (S.D. Cal. 2024)
25  ("Plaintiff alleges Petersen helped draft scripts for the prerecorded messages and alleges Petersen
and DiRoberto received consumer complaints related to telemarketing regulation violations…
26  DiRoberto is also alleged to have been involved in prior TSR litigation, and Petersen is alleged to
have participated in an FTC investigational hearing related to Atlas's debt relief service and
27  representations about it.").  The Government also argues complaints alone are sufficient to establish
knowledge, but this is not supported by the case law.  *See* Section II.f.
28

result, particularly from a regulator that was focused on protecting consumers with jurisdiction that is co-extensive with the FTC, as a positive indicator that it has sound consumer protection practices.  Nor does the FTC's Civil Investigative Demand to Dave plausibly impute knowledge to Mr. Wilk.  *See In re Alphabet Derivative Stockholder Litig.*, No. 19-cv-06880-RS, 2022 U.S. Dist. LEXIS 65184, at *13–14 (N.D. Cal. Apr. 7, 2022) (holding that the existence of a regulatory investigation does not necessarily demonstrate that a defendant knew a corporation was violating the law).

### i.  DOJ's Amendment was Improper.

The Government claims it was allowed to substitute the United States for the FTC through Federal Rule of Civil Procedure 15(a)(1) because the United States is "the real party in interest."  Am. Compl. ¶ 8.  Substitution of a plaintiff as the real party in interest is governed by Federal Rule of Civil Procedure 17.  *See Regalado v. Fresno Cty.*, No. 1:23-cv-00672-KES-BAM, 2024 U.S. Dist. LEXIS 204614, *15 (E.D. Cal. Nov. 8, 2024) (noting that "while the motion to amend only references Rule 15, the request to substitute the plaintiffs in this action implicates Rule 17 of the Federal Rules of Civil Procedure").[32]

A case may be dismissed pursuant to Rule 17 if no understandable mistake was made.  *United States v. Hall Family Tr. Dated June 8, 2001*, No. 16-cv-0538-AJB-BGS, 2019 U.S. Dist. LEXIS 244353, *17 (S.D. Cal. Nov. 12, 2019) ("The flip side of this rule is that in cases where the proper party was easy to identify at the outset and there has been no understandable mistake, the Court is not obligated to permit amendment and it should instead dismiss the case."); *Clift v. BNSF Ry. Co.*, 14:-CV-00152-LRS, 2015 U.S. Dist. LEXIS 103424, at *16 (E.D. Wash. Aug. 5, 2015)

---

[32] As described in Defendants' motion, while substitution based on a transfer of interest may occur under Federal Rule of Civil Procedure 25, such a process is not self-effectuating and must be done through a motion.  *See* Mot. at 25 n. 49; Fed. R. Civ. P. 25(c); *The Best Label Co., LLC v. Custom Label & Decal, LLC*, No. 19-CV-03051-LHK, 2021 U.S. Dist. LEXIS 224074, *21 (N.D. Cal. Nov. 19, 2021) ("Rule 25(c) applies if the transfer occurs during the pendency of the action.").

DEF'S REPLY ISO DEF'S MOTION TO DISMISS; MEMORANDUM OF POINTS AND AUTHORITIES

1   (where there is no understandable mistake, the action should be dismissed). The

2   Government did not make an "understandable mistake."[33]    The Government

3   acknowledges that it knew of the proper procedures for referring a case from the FTC

4   to the DOJ. Am. Compl. ¶ 8; Opp'n at 31. Instead, the Government deliberately

5   circumvented well-established procedures. The United States may not freely

6   substitute itself at this juncture by filing an Amended Complaint changing the party

7   on one side of the "v."

8               **j.  Dave's Requests for Judicial Notice Should be Granted.**

9        The Government argues that the court should not take judicial notice of

10  Defendants' SEC filings. Yet, the Government—trying to have it both ways—cites

11  the very SEC filings it seeks to discredit in an (unsuccessful) attempt to support its

12  argument about tipping and amendment of the complaint.

13       Moreover, courts routinely find that SEC documents are not subject to

14  reasonable dispute and can be judicially noticed for their content.[34] *See, e.g.*, *In re*

15  *Fastly, Inc. Sec. Litig.*, No. 20-cv-06024-PJH, 2021 U.S. Dist. LEXIS 227005, \*24

16  (N.D. Cal. Nov. 23, 2021) ("The SEC-filed document is not subject to reasonable

17  dispute, and it is relevant to establish Fastly's reported revenues as well as

18  consideration of whether defendants misled investors."); *Kampe v. Volta Inc.*, No.

19  22-cv-02055-JST, 2024 U.S. Dist. LEXIS 191037, \*13-14 (N.D. Cal. Oct. 21, 2024)

20  ("the accuracy of publicly filed SEC documents cannot be reasonably questioned")

21  (internal quotations omitted); *Watt v. Block, Inc.*, No. 24cv867-LL-DDL, 2024 U.S.

22  Dist. LEXIS 211534, \*8 (S.D. Cal. Nov. 20, 2024) (taking judicial notice of an 8-K).

23  Therefore, the court may properly take judicial notice of Dave's SEC filings.

24

25

26  [33] Even if the Government had made an "understandable mistake," Dave and Mr. Wilk were prejudiced by the Government's circumvention of the federal rules. *See* Mot. at 46.

27  [34] The case cited by the Government, *Khoja v. Orexigen Therapeutics, Inc*., does not apply here. There, the court did not take judicial notice of an investor relations transcript because the substance

28  of the transcript was unclear and subject to different interpretations. *See* 899 F.3d 988, 1000 (9th Cir. 2018).

1

## III.    CONCLUSION

2      For the reasons set forth above, Dave Inc. respectfully requests that the Court

3   dismiss the Amended Complaint in its entirety with prejudice.

4   Dated April 21, 2025                           Respectfully submitted.

5
                                                   By: /s/ *James M. Pearl*
6                                                  James M. Pearl

7                                                  JAMES M. PEARL (SB# 198481)
                                                   jamespearl@paulhastings.com
8                                                  Paul Hastings LLP
                                                   1999 Avenue of the Stars, 27th Floor
9                                                  Los Angeles, CA 90067
                                                   Telephone: (310) 620-5700
10                                                 Facsimile: (310) 620-5899

11                                                 ALLYSON B. BAKER (*pro hac vice*)
                                                   allysonbaker@paulhastings.com
12                                                 MEREDITH L. BOYLAN (*pro hac vice*)
                                                   meredithboylan@paulhastings.com
13                                                 PAUL HASTINGS LLP
                                                   2050 M Street, NW
14                                                 Washington, DC 20036
                                                   Telephone: (202) 551-1700
15                                                 Facsimile: (202) 551-1705

16                                                 THOMAS BROWN (SB# 182916)
                                                   DEREK E. WETMORE (SB# 291600)
17                                                 derekwetmore@paulhastings.com
                                                   PAUL HASTINGS LLP
18                                                 101 California Street, 48th Floor
                                                   San Francisco, CA 94111
19                                                 Telephone: (415) 856-7000
                                                   Facsimile: (415) 856-7100
20
                                                   MARGARET SHIELDS (*pro hac vice*)
21                                                 margaretshields@paulhastings.com
                                                   PAUL HASTINGS LLP
22                                                 200 Park Avenue
                                                   New York, NY 10166
23                                                 Telephone: (212) 318-6334
                                                   Facsimile: (212) 319 4090
24
                                                   CHRIS NAPIER (*pro hac vice*)
25                                                 cnapier@mitchellsandler.com
                                                   SHELBY SCHWARTZ (*pro hac vice*)
26                                                 sschwartz@mitchellsandler.com
                                                   MITCHELL SANDLER PLLC
27                                                 1120 20th St., NW,
                                                   Washington, DC 20036
28                                                 Telephone: 202-886-5260

1

## **CERTIFICATE OF COMPLIANCE**

2      The undersigned, counsel of record for Defendants Dave Inc. and Jason

3   Wilk, certifies that this brief contains 8,486 words, which complies with the word

4   limit set by court order dated January 28, 2025.

5

6   Dated April 21, 2025                              /s/ *James M. Pearl*
                                                      James M. Pearl

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DEF'S REPLY ISO DEF'S MOTION TO DISMISS; MEMORANDUM OF POINTS AND AUTHORITIES