UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION AT SANTA ANA

HONORABLE MÓNICA RAMÍREZ ALMADANI, JUDGE PRESIDING

**CERTIFIED TRANSCRIPT**

| | |
|---|---|
| FEDERAL TRADE COMMISSION, | ) |
| | ) |
| PLAINTIFF, | ) |
| | ) |
| vs. | ) SACV NO. 24-09566-MRA |
| | ) |
| DAVE, INC., et al., | ) |
| | ) |
| DEFENDANTS. | ) |
| _____ | ) |

REPORTER'S TRANSCRIPT OF PROCEEDINGS

SANTA ANA, CALIFORNIA

MONDAY, JUNE 30, 2025

2:32 P.M.

DEBORAH D. PARKER, CSR 10342
OFFICIAL COURT REPORTER
UNITED STATES DISTRICT COURT
411 WEST FOURTH STREET
SUITE 1-053
SANTA ANA, CALIFORNIA 92701
(657) 229-4305
transcripts@ddparker.com

*Deborah D. Parker, U.S. Court Reporter*

APPEARANCES OF COUNSEL:

    FOR THE PLAINTIFF, FEDERAL TRADE COMMISSION:

                SARAH WILLIAMS
                U.S. DEPARTMENT OF JUSTICE
                CIVIL DIVISION
                CONSUMER PROTECTION BRANCH
                450 - 5th STREET N.W.
                SUITE 5407
                WASHINGTON, D.C. 20001
                (202) 616-4269
                sarah.williams@usdoj.gov


    FOR THE DEFENDANT, DAVE, INC.:

                ALLYSON B. BAKER
                PAUL HASTINGS LLP
                2050 M Street, N.W.
                WASHINGTON, DC 20036
                (202) 551-1700
                allysonbaker@paulhastings.com


    FOR THE DEFENDANT, JASON WILK:

                THOMAS P. BROWN
                PAUL HASTINGS LLP
                101 CALIFORNIA STREET
                48th FLOOR
                SAN FRANCISCO, CALIFORNIA 94111
                (415) 856-7100
                tombrown@paulhastings.com


    Also Present:

        Joan Aristei, Chief Legal Officer, Dave, Inc.

**SANTA ANA, CALIFORNIA; MONDAY, JUNE 30, 2025; 2:32 P.M.**

-o0o-

THE CLERK:  Calling Calendar Item No. 1,

CV 24-9566, Federal Trade Commission v. Dave, Inc.

Counsel, please state your appearances for the

record, beginning with the plaintiff.

MS. WILLIAMS:  Good afternoon, Your Honor.

Sarah Williams for the plaintiff, United States of

America.

THE COURT:  Good afternoon.

MS. BAKER:  Good afternoon, Your Honor.

Allyson Baker for Dave.

MR. BROWN:  Tom Brown, Your Honor, for

Defendant Jason Wilk.

MS. ARISTEI:  Joan Aristei.  I'm the chief legal

officer for Dave.

THE COURT:  Good afternoon, everyone.  You may be

seated.

Before the Court is defendants' motion to dismiss

the first-amended complaint.  Defendant raises numerous

grounds for dismissal of the Government's claims.  However,

my tentative ruling is to deny the motion.

The Government's first-amended complaint contains

detailed factual allegations explaining how Dave mislead

consumers by offering an instant cash advance of up to $500

02:32:53  1  without hidden fees but concealing the consumers almost

2  never received the $500 amount; that cash would only be

3  received instantly with a small fee and that additional

4  fees, including a recurring monthly membership fee and tips

02:33:12  5  apply.

6          I do want to hear argument today.  As I said, this

7  is my tentative ruling.

8          I will hear, first, from defendant.

9          MS. BAKER:  Thank you, Your Honor.

02:33:27  10          If may approach?

11          THE COURT:  Yes.

12      *(Pause.)*

13          MS. BAKER:  Thank you.

14          Good afternoon, Your Honor.  I'm Allyson Baker, on

02:33:46  15  behalf of Dave.  My colleague Tom Brown is going to be

16  speaking on behalf of Mr. Wilk.

17          I wanted to, first of all, explain to Your Honor a

18  number of reasons why we believe this complaint should be

19  dismissed in its entirety.  First of all, there's a

02:34:03  20  procedural flaw with the complaint.  The Department of

21  Justice was substituted in as a plaintiff impermissibly, and

22  I want to kind of go back and give Your Honor a little bit

23  of that history.

24          So on November 5th of 2024, the complaint by the

02:34:19  25  Federal Trade Commission was brought against Dave and only

02:34:22  1    Dave.

2                Between November 5th, 2024 and December 30th,

3    2024, when this first amended complaint that's in front of

4    Your Honor today was filed, as I understand it, there's a

02:34:34  5    process in place by which if the Federal Trade Commission

6    seeks to impose civil money penalties, it gives the

7    Department of Justice the first right of refusal to either

8    take the case or not take the case.

9                Here, the Department of Justice took the case, and

02:34:48 10    they filed what they call an amended complaint on

11    December 30th, and they impermissibly filed that complaint

12    procedurally.  What they should have done is dismissed the

13    November 5th complaint and re-filed.  And I want to explain

14    why.

02:35:02 15                There is no procedural rule that allows for the

16    Department of Justice to have done what it did.  Rule 15

17    does not allow for it.  They reference Rule 17, actual party

18    of interest in their papers, but Rule 17 doesn't provide for

19    that.  Rule 17, as Your Honor knows, does not have a

02:35:25 20    procedure for substituting in a plaintiff in this situation.

21                THE COURT:  But the rule is clear that the real

22    party-in-interest, correct, is the party that is authorized

23    to pursue the claim.  So why is the United States here not

24    authorized to pursue this claim?

02:35:46 25                MS. BAKER:  It's not -- the question isn't whether

*Deborah D. Parker, U.S. Court Reporter*

02:35:46  1   or not the United States is authorized to pursue this claim,

2   respectfully.  The question is whether or not they are

3   pursuing this claim under any cognizable rule.

4            So Rule 17 says:  Real party-in-interest

02:35:58  5   designation and general --

6            *(Court Reporter requests clarification for the*

7            *record.)*

8            MS. BAKER:  Absolutely.

9            -- the following may sue in their own names

02:36:04 10   without joining the person for whose benefit the action is

11   brought, an executor, an administrator, a guardian, a

12   bailee, a trustee, a party with whom or in whose name a

13   contract has been made for another's benefit and a party

14   authorized by statute.

02:36:19 15            But that's not the situation here.  There isn't

16   any real party-in-interest here that is contemplated by

17   Rule 17.  There's no mistake here.  There's no situation

18   where subsequent to November 5th the Government learned that

19   it was indeed the real party-in-interest.

02:36:36 20            Now, I want to point something out, because I

21   think this is really an important point that the Government

22   makes in its brief about this procedural point.  They say

23   that there is no prejudice and thus because there's no

24   prejudice, no harm, no foul.  But that's not correct.  There

02:36:51 25   is prejudice.  Indeed, the amended complaint that was filed

02:36:54  1    on December 30th names a new party and that party, Mr. Wilk,

2    from whose counsel you'll hear from in a few minutes,

3    Your Honor, had no notice that this complaint was going to

4    be filed previously.  So it isn't the case that this is a

02:37:09  5    prejudice-free situation.  And there's no procedural basis

6    for doing it.  So that is as a matter of course, Your Honor

7    should dismiss this complaint.  But there's a number of

8    other reasons why Your Honor, also, should dismiss this

9    complaint, and I want to get to those.

02:37:22  10           THE COURT:  How was your client prejudiced?

11           MR. BROWN:  Well, my client is prejudiced by a few

12    things.  First of all, on November 5th, 2024, my client

13    believed that the Federal Trade Commission was pursuing this

14    case.  The Department of Justice and the Federal Trade

02:37:36  15    Commission could have brought civil money penalties at any

16    point in time.  This statute, the statutory provision that

17    allows them to pursue that, is not new.  They chose to not

18    only pursue civil money penalties after the fact but to have

19    a new party step in and be substituted.

02:37:53  20           And so sitting here and saying how is my client

21    prejudiced, my client is prejudiced because there's --

22        *(Court Reporter requests clarification for the*

23        *record.)*

24           MR. BROWN:  -- there's a different party that's

02:38:00  25    prosecuting the case.  There are civil money penalties that

*Deborah D. Parker, U.S. Court Reporter*

02:38:03   1   are now imposed and its CEO is now a named party.  So those

2   are all the tangible ways that it's prejudiced, but the

3   rules themselves -- the rules themselves do not contemplate

4   this situation.

02:38:14   5          And I want to turn to the material claims in

6   Count 3, Count 4 and Count 5 which concern the

7   Restore Online Shoppers Confidence Act, ROSCA, and those

8   claims also should be dismissed.

9          So Count 3 of the complaint talks about the fact

02:38:40  10   that Dave and Mr. Wilk failed to provide clear and

11   conspicuous disclosures.  And then it enumerates -- and I'm

12   reading from page 36, paragraph 106 of the complaint,

13   Your Honor.  And then it enumerates four specific material

14   transaction terms that the complaint alleges were not

02:39:07  15   disclosed and that ROSCA contemplates being disclosed.  The

16   problem is that there is no statutory basis to assert that

17   any of these first three are material terms, and there is no

18   precedent -- there is no precedent for this expanded reading

19   of ROSCA.

02:39:28  20          So, first, let me -- let me go through each of

21   what is alleged.  The very first allegation claims that

22   defendant offers cash advances at or near the amounts

23   advertised to very few consumers and do not offer any cash

24   advances to some customers.  And the Government claims and

02:39:46  25   contends that that's a material term of a transaction that's

02:39:50  1    covered by ROSCA.  And Your Honor knows ROSCA seeks to

2    address the way a negative option is offered to consumers.

3           Now, we're not conceding that there's a negative

4    option in this instance.  But for purposes of today's

02:40:05  5    hearing, I want to address, specifically, the allegations in

6    Count 3, Count 4 and Count 5 which presume that there is a

7    negative option under ROSCA.

8           So, first, ROSCA itself -- and I'm looking at 15

9    U.S.C. Section 8403, subpart 1 -- makes it very clear ROSCA

02:40:26 10    requires that text that clearly and conspicuously discloses

11    all material terms of the transaction before obtaining the

12    consumer's billing information.  Now, Your Honor may say,

13    *Well, what is the transaction?*

14           The transaction itself is the negative option or

02:40:42 15    the fact of the subscription.  So what ROSCA seeks to govern

16    here 15 U.S.C. 8403, Section 1, is the material -- a

17    disclosure of those terms that inform the subscription.

18    That's very important, because Count 3 expands ROSCA beyond

19    recognition.  The terms that are alleged in Count 3 -- and,

02:41:07 20    specifically, I'm looking at Paragraph 106A, B and C -- and

21    I'll come back to D in a moment.  None of those terms in A,

22    B and C concern the offering of a subscription.  And

23    Your Honor need look no further than precedent in this

24    circuit from the last 18 months.  So precedent from this

02:41:30 25    circuit in the last 18 months, three are three specific

02:41:33  1    cases that have all addressed ROSCA claims and all have

2    addressed this question of what a material term is.  And

3    none of those cases, none of those cases when they've looked

4    at this question of what material term is, have gone beyond

02:41:47  5    the immediate subscription event itself.  And I want to talk

6    about each of those cases in due course, if I may.

7            So, first, there is an *Adobe* case that was decided

8    this past May, and it was decided in the Northern District

9    of California.  And in that case, in that case, there were

02:42:12 10    three different material terms that were at issue:  An

11    annual paid monthly plan, the fees that were associated with

12    canceling that plan and the mechanics of how that plan was

13    cancelled.  Those were the three material terms.  Those were

14    the three material terms.  Those are not the terms that are

02:42:36 15    being alleged in Count 3.  And in that case, the Court found

16    that one of those terms was adequately disclosed and so

17    dismissed a portion of that claim.

18            There is no --

19            THE COURT:  You would agree that the operative

02:42:54 20    phrase here is "all material terms of the transaction,"

21    correct?

22            MS. BAKER:  So --

23            THE COURT:  Not all material terms of the negative

24    option feature, correct?

02:43:03 25            MS. BAKER:  The negative option feature,

02:43:05  1    Your Honor, is the transaction.

2            So let me respond to your question.  What the

3    Federal Trade Commission and now the Department of Justice

4    have essentially done is they have said that every material

02:43:18  5    term associated with a product -- the product called

6    "ExtraCash" -- is part and parcel of the subscription event.

7    That's what --

8            THE COURT:  But isn't that based on the specific

9    facts here and the flow of this specific app?  A consumer

02:43:35 10    seeking ExtraCash must connect their bank account, correct,

11    to be considered?

12            MS. BAKER:  Your Honor, what your question

13    presupposes is that ExtraCash and the subscription itself

14    are one and the same.  And that's not correct.

02:43:51 15            And let me explain why:  First of all, there are

16    consumers who subscribe who never get ExtraCash advances and

17    never want them and never choose them.  They're offered them

18    and they decline them, but they subscribe.

19            Number two, ExtraCash is not the only product that

02:44:10 20    Dave offers.  You can subscribe to Dave and get a bank

21    account product.  You can subscribe to Dave and get what's

22    called a "Side Hustle," which is basically the

23    opportunity -- a product that allows you to see other job

24    options, like surveys, for example.  You can subscribe to

02:44:32 25    Dave and participate in its Goal Account which allows

*Deborah D. Parker, U.S. Court Reporter*

02:44:38  1    consumers to save.  None of those things, none of those
          2    products are mentioned in this complaint.  So ExtraCash and
          3    the subscription event are not one and the same in this
          4    case.
02:44:50  5         THE COURT:  So are you saying that you don't need
          6    to subscribe in order to obtain ExtraCash?
          7         MS. BAKER:  Your Honor, the question of whether
          8    you need to subscribe to obtain ExtraCash, there are -- one
          9    of the problems with the complaint Your Honor gets to is
02:45:05 10    that the complaint lacks specificity as to time.
         11         THE COURT:  But I'm asking you a factual question.
         12         MS. BAKER:  I understand.
         13         So the complaint itself alleges that, but there
         14    are, as I understand it, Your Honor -- and I want to
02:45:17 15    triple-check this -- but as I understand it, Your Honor,
         16    there are discreet moments -- there have been discreet
         17    moments in time when it's been possible to do that
         18    without -- without paying --
         19         THE COURT:  But in general that's how the
02:45:26 20    Government alleges that the app works, correct?
         21         MS. BAKER:  Well, the Government's allegations
         22    about how the app works sort of say that, and I want to go
         23    to -- I want to go to paragraph 70 in the complaint.
         24         *(Pause.)*
02:46:30 25         MS. BAKER:  Is Your Honor there?

02:46:31  1           THE COURT:  You can proceed.

2           MS. BAKER:  Of course.

3           So it says that Dave charges consumers who connect

4  their bank accounts to its app an automatically recurring

02:46:43  5  monthly fee.  It does not allow users to get a cash advance

6  without first enrolling in this automatically recurring

7  charge.  But what Dave -- what isn't alleged in this

8  complaint is that a consumer has to pay a membership fee to

9  get that charge.

02:46:57 10           But more importantly, more importantly, Count 3

11  misconstrues -- misconstrues the way that the product works.

12  And I want to give Your Honor an analogy that I think is

13  very important.  So we talk about the *Adobe* case.  I want to

14  talk a bit about the *Prime* case and the *Doxo* case.

02:47:14 15           Each of those cases involved a ROSCA claim and

16  material terms relating to that ROSCA claim that only

17  concerned the mechanics of the subscription itself.  So,

18  for example, we talked about *Adobe*.  Now, if you were to

19  extend the *Adobe* complaint and have it be analogized to

02:47:41 20  Count 3 in this case, what would have been alleged in *Adobe*

21  is not just the mechanics of the subscription itself, but

22  the way that the product works, the way the PDF function

23  works.  That's not alleged in that complaint.  That's not

24  part of the material terms of ROSCA for a reason, because

02:47:58 25  that's not what ROSCA contemplates.

*Deborah D. Parker, U.S. Court Reporter*

02:48:00  1          And the transaction language that Your Honor is

2    referencing in the statute, the transaction language that

3    Your Honor is referencing in the statute does not, does not

4    contemplate every single product or feature associated with

02:48:14  5    a company that offers a subscription.  And, you know, you

6    need look no further than the *Prime* case, the *Amazon* case

7    out of the Western District of Washington.

8          So the three material terms in that case were the

9    free trial and whether -- the fact that it automatically

02:48:31 10    converted into a paid subscription, the monthly costs of

11    that subscription and the fact that consumers were enrolling

12    in it at all.  That Court did not examine what happens if

13    you get a Prime subscription and, you know, how are your

14    products delivered to your house?  What's the timeline

02:48:50 15    around that.  Those components of Prime and all of the

16    features and all of the products and services that you can

17    get from the Amazon Prime platform are not addressed in that

18    ROSCA analysis.

19          So when the Court found that those three material

02:49:04 20    terms were not adequately disclosed, those terms were very

21    carefully hewed -- hewed very carefully and very closely to

22    the specific enrollment function.  That's markedly

23    different, that's markedly different than what is in

24    Count 3.

02:49:19 25          The *Doxo* case is another example.  The *Doxo* case,

02:49:24  1    which was decided in the Western District of Washington in

2    March of this year, there, too, the material terms that were

3    at issue were material terms that were specific to the

4    subscription itself.  And in that case, it had to do with

02:49:41  5    whether or not a consumer even knew that there was a

6    subscription or that they were paying for the subscription.

7    That's not -- that's very, very different than a situation

8    where a product, a single product that a company offers in

9    connection with other products and other features, that that

02:49:58  10   one product becomes the singular focus of a ROSCA claim.

11   That's not what ROSCA does.  ROSCA is not the same thing as

12   Section 5 of the Federal Trade Commission Act.

13        And what the Government is doing here is they are

14   mixing and matching -- they're mixing and matching deception

02:50:16  15   in ROSCA and that's not how the law works.  And you need

16   look no further, of course, than the actual click-to-cancel

17   rule which has been in place, as Your Honor knows, since

18   January of this year.  And that makes it very clear.  When

19   it talks about the reasons for that rule having been

02:50:33  20   written, one of the things that that rule says in the

21   advance notice of rulemaking that ROSCA does not prescribe

22   specific steps for how marketers have to follow or comply

23   with its provisions.  So it acknowledges that ROSCA doesn't

24   go as far as Count 3 in this complaint.

02:50:50  25        The equivalent of Count 3 in this complaint is,

02:50:54   1    essentially, a situation where if you were, for example,

2    looking at something like AAA and you subscribe to AAA to

3    fix your car every year and the subscription component

4    around AAA wasn't the only point of focus for ROSCA.  It was

02:51:12   5    whether or not somebody came and they fixed your tire if you

6    needed it, how soon you could get someone on the phone, all

7    of the different components that AAA offers, the nature of

8    their insurance.

9          Similarly, for Costco.  If you walked into Costco,

02:51:26  10    you have to have a subscription.  The components of that

11    subscription do not subsequently also address a concern

12    whether or not the product that you're buying is really

13    organic or the nature of the warranty associated with the

14    furniture you buy there.  That's what Count 3 does here.

02:51:43  15    Count 3 goes well beyond the statute.  It goes well beyond

16    any precedent in this circuit or anywhere else.

17          And again, Your Honor, *Adobe, Amazon* and *Doxo* are

18    all examples of material terms that are very specific to the

19    point of enrollment in a subscription, and they do not talk

02:52:01  20    about any of the features or products associated with the

21    larger non-subscription related aspects of the company.  And

22    that's the case here, too.  So Count 3 should be dismissed.

23          Now --

24          THE COURT:  Let me ask you a question with respect

02:52:17  25    to this count, so this is clear and conspicuous disclosures

02:52:24  1    of all material terms.

2                    MS. BAKER:  Yes.

3                    THE COURT:  You argue that a customer's decision

4    to leave a tip has no bearing on their eligibility for cash

02:52:35  5    advance; is that correct?

6                    MS. BAKER:  Absolutely, correct.

7                    THE COURT:  But you -- would you agree that it

8    affects the ultimate amount that they receive?

9                    MS. BAKER:  No, it does not.

02:52:45  10   THE COURT:  It does not affect it?

11                   MS. BAKER:  It does not affect the amount.  No,

12   Your Honor.

13                   THE COURT:  And how is that?

14                   MS. BAKER:  Your Honor, if I may direct your

02:52:58  15   attention to paragraph 46 of the complaint, please, which is

16   page 19.  And it's the App Screenshot 4.

17                   So this screenshot is a screenshot that the

18   Government includes in its complaint.  And it's a screenshot

19   that shows -- or the Government contends shows -- that this

02:53:26  20   is the tipping dynamic that a customer sees.  And at the

21   very top of the screen it says "Your advance is on its

22   way!," which means that by the time the consumer encounters

23   this tip screen, he or she has already received the amount

24   of their advance.  They already know what their advance is.

02:53:44  25                   So the mechanism of tipping is not connected to

02:53:48    1    how much a consumer receives, or is eligible to receive, or

2    can receive in an advance.  And, indeed, it makes it very

3    clear right, because right under where it says "Your advance

4    is on its way!," it says:

02:53:59    5              "Your optional tip helps us stay in

6              business.  We also provide a meal for

7              every percentage you tip."

8         And then there's an option there to tip, but it's

9    totally optional and it's not tethered to the amount.

02:54:13   10         THE COURT:  Do they have to agree to the

11   membership before they get to this screenshot?

12         MS. BAKER:  So are you -- is Your Honor asking if

13   they have to -- if they have to become a member and allow

14   for access to their bank account to understand the amount of

02:54:30   15   the advance --

16         THE COURT:  To be considered for the advance cash.

17         MS. BAKER:  -- in the flow?

18         That's much earlier in the flow before you get to

19   the section where you have an advance.  Yes, Your Honor, but

02:54:37   20   it's not -- it's not connected.  The amount of the advance

21   has nothing to do with whether you tip, how much you tip.

22   It's totally optional to tip or not tip.  And by the way,

23   that's a historic fact as well, because the company doesn't

24   have a tipping model anymore.

02:54:53   25         THE COURT:  Counsel, you have 10 more minutes, if

*Deborah D. Parker, U.S. Court Reporter*

02:54:55  1  you'd like to address the other --

2          MS. BAKER:  I would, Your Honor.

3          So I want to go to Count 4.  Count 4 talks

4  about -- and before I ask, 10 minutes and then my colleague

02:55:07  5  can speak about Mr. Wilk?

6          THE COURT:  Briefly, yes.

7          MS. BAKER:  Okay.  Okay.

8          Count 4 talks about the need to have billing must

9  obtain express informed consent before charging consumers.

02:55:17  10  And for all the reasons that we've explained, Count 3 which

11  doesn't -- which enumerates a number of material terms

12  which, by the way, are disclosed adequately but they're also

13  not ROSCA specific.  Hereto, Count 4 should be dismissed

14  because clearly consumers are aware of the fact of the

02:55:38  15  subscription and the fact that the subscription is -- I want

16  to direct your attention, specifically, to paragraph 27 --

17  the App Screenshot 3.

18          So the fact that the subscription starts and how

19  you subscribe and what it says is that "Dave charges a

02:55:58  20  membership fee of $1 per month to connect your bank."  So

21  consumers understand that they are paying a dollar a month

22  before they subscribe.  And to the extent there's any term

23  in Count 3 that is arguably material to the subscription

24  event, it's only that subpart D.  And, indeed, that's what

02:56:18  25  concerns Count 4 as well.

02:56:20  1          So consumers are very well aware of the mechanics

2    of what's involved; that there's a one-dollar fee associated

3    with connecting your bank account before you click

4    "Connect."  And, indeed, you can see here --

02:56:33  5          *(Court Reporter requests clarification for the*

6          *record.)*

7              MS. BAKER:  Sure.  And, indeed, you can see that

8    where it says "Dave charges a membership fee of $1 per month

9    to connect your bank," that is not only, you know, a fact

02:56:47 10    that a consumer sees before they click "Connect," but it's a

11    fact that is rendered conspicuous.  And it's conspicuous

12    because, one, it's above that green bar and, two -- and I

13    have a color copy of this complaint -- you see that the "See

14    our FAQs" is right next to that frame, so it pulls it out.

02:57:07 15    So it's not something that just blends into the background.

16              So Count 4 should also be dismissed.

17              Now, Count 5, which talks about simple

18    cancellation and the need to have simple cancellation and,

19    specifically, what it's referencing is, again, ROSCA itself,

02:57:25 20    15 U.S.C. Section 8403, subpart 3, which says that you have

21    to provide a simple mechanism for a consumer to stop

22    recurring charges from being placed on the consumer's credit

23    card.

24              THE COURT:  I'm just going to slow you down for a

02:57:38 25    second.

02:57:38  1              Going back to Count 4 --
        2              MS. BAKER:  Sure.
        3              THE COURT:  -- these disclosures that you
        4    describe, is there any language -- and the way I understand
02:57:49  5    the Government's complaint is that there isn't any language
        6    informing a consumer that clicking these green buttons
        7    constitutes assenting to the terms and conditions of the
        8    agreement?
        9              MS. BAKER:  Your Honor, I don't believe that
02:58:08 10    that's correct.  I can't -- what you've just described is
       11    not --
       12              THE COURT:  Why is that a plausible --
       13              MS. BAKER:  Well, I'm just looking at the App
       14    Screenshot 3 in their complaint.
02:58:18 15              THE COURT:  I'm looking at it, too.
       16              MS. BAKER:  Yes.  And it says here:  "Dave charges
       17    a membership fee of $1 per month."
       18              So, first of all, at the very top, it says:
       19    "Connect your primary bank."  And then it explains:
02:58:28 20    "Connect the bank account you get paid to and get approved
       21    for the higher amount."  And then it has different bars
       22    here:  "Take interest-free advances.  Get money instantly."
       23              And then it says:  "Dave charges a membership fee
       24    of $1 per month to connect your bank."
02:58:45 25              And then it says:  "Questions?  See our FAQs" in

02:58:49   1   blue and then, it says "Connect account."

           2           So, presumably, where it says "Connect your

           3   primary bank" and then it says it charges $1 to connect to

           4   your primary bank and then it says "Connect an account,"

02:59:00   5   that if you were to connect your account, you would be

           6   charged a dollar.  I don't know how -- I mean, that seems

           7   pretty apparent from the way that this works.

           8           Top of the screenshot, middle part, bottom part.

           9           THE COURT:  Do you agree that ROSCA requires a

02:59:15  10   consumer's express informed consent and you believe this is

          11   sufficient at the motion to dismiss stage?

          12           MS. BAKER:  Absolutely, Your Honor.  It is

          13   sufficient.  And all of Count 3, including subpart D and

          14   Count 4 should be dismissed, based on this screenshot alone.

02:59:32  15           And I want to just talk about Count 5, which is

          16   simple cancellation.  So the Department of Justice, the

          17   Government, alleges that Dave failed to provide simple

          18   mechanisms to stop recurring charges.

          19           Now, its own complaint undermines that fact,

02:59:56  20   because you need look no further than paragraph 41 which

          21   talks about the fact that thousands -- it alleges, at

          22   least -- that thousands of consumers contact Dave each month

          23   to cancel their account.  So the mechanism must be simple

          24   enough to enable that.

03:00:12  25           THE COURT:  But isn't the allegation that they're

03:00:13  1  contacting Dave because they can't cancel their accounts?

2  Is that -- let me take a closer look at -- you said

3  paragraph 41?

4           MS. BAKER:  Yes, Your Honor.

03:00:39  5           THE COURT:  So this paragraph alleges that

6  thousands of consumers contact Dave to cancel their accounts

7  because the offered advance amounts are smaller than

8  promised or because Dave offers them nothing, not to stop

9  recurring charges.

03:01:01  10          MS. BAKER:  Well, if they're canceling their

11  accounts, then that's what that means.  It stops recurring

12  charges.

13          THE COURT:  But I -- the way I understand their

14  claim is that it's not simple to cancel the recurring

03:01:13  15  charges.

16          MS. BAKER:  That's what they claim, but they don't

17  actually explain -- they do have to do something.  They

18  can't just make a conclusory statement in their complaint.

19  Even under *Iqbal Twombly*, they cannot do that.  They don't

03:01:27  20  actually explain what is so not simple about it.  Let me

21  give you an example.  So they cite paragraph 77 and they say

22  that between August of 2021 and November of 2022, Dave did,

23  quote:  "Not allow any consumers to stop the recurring

24  charge through an in-app process, if they had also opened a

03:01:46  25  Dave bank account."

03:01:46  1          So that's one of the paragraphs they cite.  But

2     here's the problem with that paragraph.  What they don't

3     cite and what they don't put in the complaint is the fact of

4     whether or not a consumer was ever in this category paying a

03:01:57  5     recurring charge in the first instance.  So they don't

6     allege in paragraph 77 that a consumer was paying a

7     recurring charge and they weren't able to stop paying that

8     recurring charge between August of 2021 and November of '22.

9     So that's a problem with their -- with their Count 5.

03:02:14 10          So you look at paragraph 41.  You look at the

11     flawed paragraph 77.

12          They talk about in paragraph 84, nine steps that

13     they claim involve cancellation, but they don't explain what

14     those nine steps are or why any of those steps renders this

03:02:35 15     not simple.  And you can look at a couple of different cases

16     to get an example of what a non --

17                    THE COURT:  You have three minutes, Counsel.

18                    MS. BAKER:  Thank you, Your Honor.

19          You can look at a couple of different cases to get

03:02:46 20     an example of what non-simple or what would offend ROSCA --

21                    THE COURT:  I'm telling you I'm having a hard time

22     understanding how four, five paragraphs of allegations here

23     are insufficient to plausibly allege this claim.

24                    MS. BAKER:  Well, you can have many paragraphs,

03:03:06 25     but just because the paragraphs are on the paper doesn't

*Deborah D. Parker, U.S. Court Reporter*

03:03:10  1    mean that they allege --

2              THE COURT:  I understand that, Counsel.

3              MS. BAKER:  I know, Your Honor.

4              THE COURT:  They are pretty specific.

03:03:14  5            MS. BAKER:  Your Honor, respectfully, I don't

6    think that they adequately show that this isn't -- that is a

7    not simple -- I'm using double negatives -- that this is a

8    not simple process.

9              And Your Honor can look at the *Amazon* case.  And,

03:03:29 10   for example, in the *Amazon* case, the motion to dismiss, the

11   complaint alleged that the cancellation flow required

12   consumers to click six times and go through four screens

13   seeking to entice consumers not to cancel the subscription

14   or merely pause the subscription.  That's nowhere here.

03:03:46 15           You can look at the *U.S. versus MyLife* case where

16   it talked about the fact that consumers could only cancel

17   using the phone; that they had no other way to do that --

18   that is not in this complaint -- and that when they called,

19   they got a six-part retention sales script thrown at them.

03:04:02 20   That's not in this complaint.  The only allegation in this

21   complaint is that people have to cancel.  They want to

22   cancel and they can cancel.  And, indeed, the complaint

23   itself acknowledges that.  It says thousands cancel every

24   month.

03:04:17 25           THE COURT:  But not through the app.  That's the

*Deborah D. Parker, U.S. Court Reporter*

03:04:21  1    allegation, the in-app process for users --

2              MS. BAKER:  Well, you're talking about

3    paragraph --

4              *(Overtalking:  Unable to report.)*

03:04:21  5            THE COURT:  -- it's not simple, but let's move on.

6    You have one minute.

7              MS. BAKER:  Yeah.  Paragraph 77 is -- it does not

8    allege that consumers are paying recurring fees.  That's

9    very important, Your Honor.  That's what I think Your Honor

03:04:38 10   is referencing.

11             Your Honor, I understand that you've read our

12   papers.  We, obviously, have a number of other arguments.

13             I'm here if Your Honor has any other questions,

14   but I think at least as of now, unless I have the ability to

03:04:50 15   rebut the Government, I will let my colleague speak about

16   Mr. Wilk.

17             THE COURT:  Yes.  Let me hear from your colleague.

18             MS. BAKER:  Thank you.

19             MR. BROWN:  Thank you, Your Honor.

03:05:06 20             I join in Ms. Baker's arguments regarding

21   Section 5 and ROSCA.  To the extent that the Court has

22   additional questions, I'm available to answer.

23             And I think, in particular, it's important to note

24   that paragraph 77 does not allege -- and nowhere in fact

03:05:35 25   does the complaint allege -- that there wasn't a simple

03:05:40  1    mechanism available to consumers to cancel or pause the $1

2    subscription.  The language in paragraph 77 has been

3    carefully chosen in that regard.

4              But I'm, obviously, here talking about Mr. Wilk.

03:05:56  5    Again, I think the procedural issues here are important.  He

6    was not named as a defendant when the complaint was

7    originally filed.  An answer was provided.  At that point,

8    it's not proper for him to be -- to simply be added without

9    the Government seeking leave.  And so we believe that the

03:06:16 10    entire complaint should be dismissed but at the very least

11    that he should be dismissed.

12              THE COURT:  Why is that?  Why can't the Government

13    amend its complaint and add your client as a defendant?

14              MR. BROWN:  Well, we had answered.

03:06:33 15              THE COURT:  Another defendant had answered.

16              MR. BROWN:  Apologies, Your Honor.

17              Let's get to Mr. Wilk's connection --

18              THE COURT:  Your main claim is that the claims

19    against your client are time-barred; is that correct?

03:06:51 20              MR. BROWN:  Well, it's difficult -- I mean, so

21    this is part of the challenge associated with the filing of

22    the amended complaint, right?  So the complaint doesn't

23    specify the time period that is allegedly covered,

24    particularly with respect to Mr. Wilk.  And there was no

03:07:10 25    tolling agreement entered as between Mr. Wilk and the

03:07:12  1    Government, dating back to the time that the investigation

2    began.  And so, yes, that is one dimension of the prejudice

3    and confusion.

4            And then with regard to his connection to the

03:07:32  5    allegations in the complaint, as we pointed out, it's not

6    sufficient as a matter of law to simply rely on general

7    corporate governance in his position as a shareholder.

8            The Government points, in response to that, to

9    four paragraphs, essentially, paragraph 40, an internal

03:07:52  10   survey related to complaints that the company had received

11   related to the amount of money that the company had

12   received.

13           Paragraph 43 alleges that Mr. Wilk received a

14   presentation related to screens that present the express fee

03:08:11  15   and then recounts a recommendation that the company had not

16   adopted paragraph 69 which relates to an allegation related

17   to Mr. Wilk's views about the experiments related to the

18   screen showing tips and then paragraph 73 which recount

19   various consumer complaints related to the one-dollar fee.

03:08:37  20           None of those paragraphs lay out the level of

21   involvement or control in the specifics associated with

22   either of those paragraphs or anything having to do with the

23   app that would tie Mr. Wilk to the particular decisions.

24   And I think that the contrast is sort of best laid out by

03:08:57  25   looking at the cases on which the Government -- to which the

03:08:59  1    Government points but doesn't discuss in its opposition

2    brief.

3          So *FTC versus American Standard Credit*, 874

4    F.Supp. 1080, beyond having an economic interest and control

03:09:11  5    in the corporate governance sense, quote:

6          The individual defendants formulated, reviewed,

7    approved, implemented and disseminated the company's

8    marketing policies and procedures.  One of the individual

9    defendants is marketing director of ASCS, implemented the

03:09:26 10    company's marketing policies and procedures and monitored

11    the marketing activities of the third-party marketers for at

12    least nine months.  That person also entered into the

13    contract that was the basis of the claim.

14          *FTC versus Publishing Clearing House*, not to be

03:09:42 15    confused with Publisher's Clearing House.  The individual

16    defendant filed the corporate defendant's business license

17    at the direction of someone she knew was facing criminal

18    charges concerning his telemarketing activities.  She had

19    worked as a solicitor for the prior company which had closed

03:09:57 20    down due to a criminal fraud investigation, and she signed

21    the contract that was the basis for the marketing.

22          *FTC versus Network Services Depot*, 617 F.3d 1127,

23    that particular case arose out of an investment scam.

24    Network Services sold the opportunity to invest in Internet

03:10:17 25    kiosks, and it contacted with somebody to install them.  The

03:10:20  1   FTC sued among others the owner and senior executive of

2   Network Services.  And the District Court concluded, and the

3   Ninth Circuit agreed, that those two people knew of the

4   scheme; that they knew that their business partner had made

03:10:33  5   unreasonable projections; that their business partner had

6   overestimated the number of kiosks that it made and that

7   they knew from joint customers that kiosks that their

8   business partner had claimed to install had not been

9   installed.  And indeed, the District Court concluded and the

03:10:47  10  Ninth Circuit agreed that at least one of the individuals

11  had actively been complicit in concealing the

12  non-installation of kiosks.

13          And then, *U.S. versus MyLife*, again, beyond

14  ownership and control, the complaint alleged the company's

03:11:02  15  creator and principal director had been responsible for

16  overall direction and business strategies, had directed

17  billing, marketing, advertising and subscription practices

18  and personally marketed the product.

19          THE COURT:  Is it your position that the

03:11:14  20  first-amended complaint does not allege any active

21  involvement by your client?

22          MR. BROWN:  I think it does not contain the level

23  of allegations that would permit a jury to rule that he had

24  the requisite knowledge and participation --

03:11:27  25          THE COURT:  The jury.

*Deborah D. Parker, U.S. Court Reporter*

03:11:27  1          MR. BROWN:  Well, that's the standard.

2          THE COURT:  At this point, it's a motion to

3  dismiss the allegations --

4          *(Overtalking:  Unable to report.)*

03:11:31  5          MR. BROWN:  Well, 12(b)(6), of course, points to

6  is it sufficient for a -- are the facts sufficient to

7  support a legal judgment?  And no, I don't believe that the

8  complaint sets forth facts that --

9          *(Overtalking:  Unable to report.)*

03:11:40 10          THE COURT:  -- or plausible claim.

11          MR. BROWN:  And I don't -- there is no case on

12  which the Government relies which supports that conclusion.

13  And, again -- I mean, I can --

14          Fifth, *U.S. versus Stratics Networks*, since I've

03:11:55 15  talked about four of them, I might as well finish.

16          THE COURT:  I'm hearing your disagreement and that

17  there are clearly factual disputes.

18          *(Overtalking:  Unable to report.)*

19          MR. BROWN:  No, no.  My point is not a factual

03:12:02 20  dispute, Your Honor.  And I apologize for interrupting.

21          My point is that the complaint does not contain

22  factual allegations that support a legal conclusion that he

23  controlled --

24          THE COURT:  But you're not saying it doesn't

03:12:17 25  contain any allegations of active involvement?

*Deborah D. Parker, U.S. Court Reporter*

03:12:19  1          MR. BROWN:  I'm saying that it does not contain

2  sufficient allegations to support a legal conclusion that he

3  controlled or directed sufficient to have individual

4  responsibility -- that is correct -- juxtapose against the

03:12:31  5  kind of allegations that exists in other complaints where

6  beyond both ownership and control in the governance sense

7  that were necessary for the courts in those cases to reach a

8  conclusion that the individuals were appropriately

9  defendants in those cases.  And I would be curious, if the

03:12:53 10  Court -- if the Department wants to identify what they think

11  is their single best case, well, let's parse it and see if

12  it supports the conclusion, but they don't -- other than

13  selectively usurping them in the complaint, they don't

14  discuss any -- I mean, in their opposition, they don't

03:13:10 15  discuss any of them.

16          THE COURT:  Thank you, Counsel.

17          Is there anything further?

18          MR. BROWN:  That's it.

19          THE COURT:  I'll hear from the Government.

03:13:16 20      (Pause.)

21          THE COURT:  Counsel, why don't we start with the

22  allegations or claims against Mr. Wilk and your argument as

23  to why the first amended complaint plausibly alleges claims

24  against Mr. Wilk.

03:13:46 25          MS. WILLIAMS:  Yes, Your Honor.

03:13:46  1          One of the most important paragraphs in the

2    first-amended complaint with respect to Mr. Wilk is

3    paragraph 10.  That's the paragraph that describes his role.

4    It talks about the fact that he served as CEO since 2016.

03:14:00  5    He's a cofounder of the company, so there's really not a lot

6    of mystery as to the time that he's been with the company.

7    That is clearly alleged.  It also alleges that he directs

8    decisions for Dave's operations, including the admittable

9    acts, digital content and design.

03:14:16  10          So the complaint is alleging that Mr. Wilk has

11    made the determinations in the mobile app design decisions

12    that are going throughout the allegations.  Going through

13    the complaint, you can find Mr. Wilk specifically called out

14    in some places, such as his decision regarding tipping, but

03:14:35  15    you also found allegations -- find allegations against both

16    defendants, the "defendants" plural and that's a perfectly

17    acceptable way to plead a complaint to have plural

18    defendants.

19          Ms. Baker asked for the most helpful case on point

03:14:52  20    here, the case I would first point to, although there are

21    many as *Amazon*.  *Amazon* has a good discussion of individual

22    liability applying Ninth Circuit law.

23          And under that standard, it's clear that at the

24    motion-to-dismiss stage, Mr. Wilk is an appropriate

03:15:13  25    defendant.

03:15:16  1          THE COURT:  Both defendants have argued that the

2    first-amended complaint here is improper, because

3    United States improperly substituted itself in the case and

4    then there was -- Mr. Wilk was added to the case.

03:15:31  5          What is your position on that?

6          MS. WILLIAMS:  Rule 15(a)(1) allows the amendment.

7    The --

8          *(Court Reporter requests clarification for the*

9          *record.)*

03:15:41 10          MS. WILLIAMS:  I apologize.  Rule 15(a)(1) allows

11   the amendment.  This is still an amendment as a matter of

12   course.  Neither defendant has ever answered the complaint.

13   That's why we're here today on a motion to dismiss.  So this

14   is at an early stage in the case where the Government can do

03:16:02 15   it as a matter of right.

16          THE COURT:  I thought I heard from Dave's counsel

17   that they had answered the complaint.

18          MR. BROWN:  That was my error, Your Honor.

19          THE COURT:  So that is not correct?

03:16:12 20          MR. BROWN:  Correct.

21          MS. WILLIAMS:  That is incorrect.

22          There's also no rule that would provide for

23   dismissal on these grounds and Ninth Circuit case law

24   strongly favors decisions on the merits.  It would be

03:16:23 25   reversible error to dismiss the complaint because the

*Deborah D. Parker, U.S. Court Reporter*

03:16:27  1  plaintiff employed Rule 15(a)(1).

2              Additionally, there is no prejudice for not

3  notifying Mr. Wilk before the complaint was filed.  There is

4  no requirement that a defendant be notified in advance.  The

03:16:44  5  requirement is that he be summoned to court, and he was

6  here.

7              THE COURT:  Let's turn to the ROSCA claims.  How

8  is the Government defining transaction?

9              MS. WILLIAMS:  A transaction is simple,

03:16:55  10  Your Honor.  It's a trade.  It's an exchange.  You give

11  something and you get something.  Here in the mind of the

12  reasonable consumer, which the Ninth Circuit in *Cyberspace*

13  and other cases tells us it's the standard to use.  It's an

14  exchange for a cash advance of up to $500 instantly.  That's

03:17:14  15  what the consumer thinks they're getting.  You see that

16  throughout the ads that are shown to the consumer in

17  paragraphs 17, 18 and 19, and then you see it in the

18  enrollment flow:  "Get $500."  So to the consumer, they're

19  exchanging information and giving access to their bank

03:17:34  20  account in exchange for this cash advance.

21              It is not limited to the negative option feature

22  itself.  That completely betrays the standard that is

23  supposed to be employed here which is looking at it from the

24  perspective of the consumer.

03:17:51  25              THE COURT:  How do you respond to their argument

03:17:54  1    that if the statutory text was so clear the FTC would have

2    no reason to propose this new Click to Cancel Rule?

3            MS. WILLIAMS:  Well, they've misrepresented the

4    Click to Cancel Rule in significant part, Your Honor.  One

03:18:09  5    small detail is the date of efficacy.  Just for the record,

6    it will not be effective until July 14th of this year.  It's

7    been kicked out as far as effective date.

8            But if you read the actual text of the Click to

9    Cancel Rule, it's very consistent with FTC's position in

03:18:26 10    this case.  Click to Cancel is bigger than ROSCA, because it

11    covers negative option features that are not covered in

12    ROSCA, and it also covers misrepresentations.

13    Misrepresentations are not the three ROSCA prongs, and you

14    see that in our complaint.  The two misrepresentation counts

03:18:42 15    are one and two.  Those are coming from Section 5 of the FTC

16    Act.  That's not ROSCA.  ROSCA is not about

17    misrepresentations.  ROSCA is about disclosure.  That's what

18    Count 3 is getting to.

19            So what defendants have done is cite the sections

03:18:57 20    that are about misrepresentation in the Click to Cancel Rule

21    and ignored the sections that are about ROSCA.  Reading the

22    sections on ROSCA, ROSCA clearly prohibits charging or

23    attempting to charge consumers for goods or services sold on

24    the Internet through any negative option feature, unless the

03:19:17 25    marketer clearly and conspicuously discloses all material

03:19:23  1  terms of the transaction before obtaining the consumer's

2  billing information, regardless of whether a material term

3  directly relates to the terms of the negative option offer.

4  That language appears when they describe ROSCA on the page

03:19:41  5  ending in 717, going into page 718.

6        When they talk about the 2021 enforcement policy

7  for ROSCA, again the FTC says that earlier enforcement

8  policy emphasized ROSCA's requirement that sellers disclose

9  all material terms related to the underlying product or

03:20:01  10  service that are necessary to prevent deception, regardless

11  of whether that term relates directly to the terms of the

12  negative option.

13        On the page that ends in 727, they're talking

14  about the new rule in contrast to the existing regime of

03:20:24  15  ROSCA and they say, specifically, the proposed rule, like

16  ROSCA, would require sellers to disclose any material

17  conditions related to the underlying product or service that

18  is necessary to prevent deception, regardless of whether the

19  term directly relates to the term of the negative option

03:20:47  20  offer.

21        So it's clear in all of FTC's earlier

22  interpretations that "all material terms" means all material

23  terms to the transaction.  It's also clear that if you were

24  to look at the material terms of the negative option itself,

03:21:03  25  which is not the correct reading but the one that Dave has

03:21:06 1    advanced, these terms are material to the negative option.

2    Nobody would get a subscription with Dave if they didn't

3    think they were also getting a cash advance.  The reason to

4    enter the subscription to the extent people are voluntarily

03:21:23 5    doing so is to obtain a cash advance.

6              So the defendants have put forth a truly

7    implausible reading of "all material terms" that isn't

8    consistent both with the text of the statute, with the

9    agency's interpretation in the Click to Cancel Rule when you

03:21:42 10   read the sections that actually relate to disclosure in

11   ROSCA instead of sections about misrepresentation about

12   something else.

13             THE COURT:  Let me ask you with respect to Claim 3

14   on the "Connect Your Account" screen that we discussed

03:21:56 15   earlier, Dave appears to disclose the express fee for

16   instant cash in the one dollar membership fee.  What is the

17   Government's position on those disclosures?

18             MS. WILLIAMS:  We would look to Ninth Circuit law

19   case, particularly *Cyberspace* and *Amazon* that talks about

03:22:17 20   fine print and the importance of recognizing context.  So

21   this screen, it is true that that text appears at

22   paragraph 27 of the complaint and that there's a

23   light-colored text.  The fact that it's light colored and

24   small makes it easier for consumers to miss it.  This is

03:22:34 25   something that *Amazon* very directly speaks to, as do other

| | | |
|---|---|---|
| 03:22:37 | 1 | cases, as do *Adobe* and *Doxo* as well.  It's also -- |
| | 2 | You cannot look at this in isolation.  When |
| | 3 | Ms. Baker was here, she said -- and I believe this is pretty |
| | 4 | close to an exact quote -- that you can decide the case |
| 03:22:51 | 5 | based on this screenshot alone. |
| | 6 | That is what you cannot do under Ninth Circuit |
| | 7 | law.  Ninth Circuit law urges the Court to look to all of |
| | 8 | the information that's presented to consumers and put |
| | 9 | yourself in the shoes of a reasonable consumer who's |
| 03:23:05 | 10 | going -- who's seen these advertisements, which say nothing |
| | 11 | about a subscription, has started enrollment flow on the |
| | 12 | promise of instant $500 and, finally, gets to this third |
| | 13 | screen where the highlighted feature is "Connect Your |
| | 14 | Account to Get Your Advance."  It's very clear that you're |
| 03:23:24 | 15 | looking for an advance here, as well you're looking to get |
| | 16 | approved for the highest amount, take out interest-fee |
| | 17 | advances. |
| | 18 | If Dave has other products outside of the |
| | 19 | complaint that are not an issue today, they're not the ones |
| 03:23:35 | 20 | being advertised on this screen here in paragraph 27. |
| | 21 | So this is something that is put in a place where |
| | 22 | it's easy for consumers to miss.  And that's something, |
| | 23 | again, that *Amazon* specifically talks about.  It's not |
| | 24 | enough to just have fine print somewhere where you know |
| 03:23:53 | 25 | consumers are going to miss it.  And we also know that |

03:23:56  1    consumers do miss it.  This also goes to the case law when

2    consumers regularly miss something that speaks to the fact

3    that it is deceptive that consumers are not seeing this.

4    *Cyberspace*, at page 1101, talks about how consumers actually

03:24:13  5    being misled is strong evidence.  And that's discussed in 72

6    and 73 of the complaint.

7         I would also like to note, Your Honor, *Adobe* was

8    discussed with reference to Count 3.  It is not true that

9    *Adobe* partially dismissed.  *Adobe* dismissed -- I'm sorry,

03:24:37 10    partially granted -- granted partial dismissal.  *Adobe*

11    denied total dismissal.  The motion to dismiss was denied in

12    its entirety.  If you look at page 23 of that opinion, you

13    can see that there was part of claim -- the disclosure claim

14    there was Claim 1.  Part of it was, is this an annual plan?

03:24:56 15         And the Court found *Adobe* had said, *It's an annual*

16    *plan.  It was clear to consumers, it was an annual plan.*

17    Other at aspects of Count 1 were not clear to consumers.

18    And so the Court maintained the complaint and denied the

19    motion to dismiss as to Count 1 and all of the other counts.

03:25:13 20         It's also not true that none of these cases have

21    included a separate fee from the subscription fee.  *Doxo* is

22    the case I would look to.  Although every product is unique

23    and you have to consider the statute in connection with

24    Dave's product and the allegations, *Doxo* did involve a

03:25:36 25    separate payment delivery fee that was in addition to the

03:25:42  1   subscription fees.

2     THE COURT:  In the interest of time, can you,

3   please, address Claim 5, the simple cancellation mechanism

4   and the arguments you heard from defense counsel?

03:25:55  5     MS. WILLIAMS:  Yes, I can, Your Honor, although

6   defense counsel seemed to be very carefully trying to read

7   only paragraph 41 as if it spoke for the whole complaint.

8   When the bulk of the allegations, as Your Honor pointed out,

9   appear between paragraphs 75 and 85, they are highly

03:26:14  10  specific.  The idea that we failed to allege there was a

11  recurring charge makes no sense in the context even of the

12  language of 77 where it says that "Users are contacting Dave

13  to stop the recurring charge."

14    I believe Your Honor has already pointed out also

03:26:32  15  with respect to paragraph 41, consumers contacting Dave to

16  cancel is very different than getting Dave to cancel.

17  Getting Dave to cancel is almost impossible and for some

18  consumers impossible.

19    You also see in paragraph 79, for example, these

03:26:55  20  consumer complaints.  They're saying, *Hey, keeps charging me*

21  *one dollar every single month.*  So there's no question that

22  these people are trapped and continuing to pay the monthly

23  fee that they don't want which is exactly what ROSCA is

24  intended to protect consumers from.

03:27:13  25    THE COURT:  Thank you, Counsel.  I don't have any

03:27:15 1  further questions.

2              I'll allow defendants five minutes to respond.

3              MS. BAKER:  Thank you, Your Honor.

4              Your Honor, I want to talk about a couple of items

03:27:39 5  that the Government mentioned just now.  So, first of all,

6  this question about whether or not Count 5, as to the simple

7  mechanism to cancel has been adequately pled, again, we

8  believe it has not been adequately pled.  And Your Honor can

9  look, also, at the *Adobe* complaint itself.  So the *Adobe*

03:28:02 10  complaint also alleges unlawful cancellation practices.  And

11  it, specifically, gives -- 1, 2, 3, 4, 5, 6, 7, 8, 9, 10,

12  11, 12, 13, 14, 15, 16, 17, 18, 19, 20, 21, 22, 23, 24,

13  25 -- 26 paragraphs describing in great detail why it

14  believes there isn't a simple mechanism to cancel, in

03:28:30 15  contrast to the paragraphs that were just mentioned, almost

16  all of which contain conclusory allegations.  So Count 5 has

17  not been adequately pled.

18              So I want to talk briefly about *Doxo* -- *Doxo* or

19  *Doxso* [phonetic] -- which was decided in March of this year

03:28:47 20  is actually a very important case to look at.  Because the

21  material terms in that case were very important because of a

22  couple of things.  First of all, what was at issue in that

23  case as it relates to the ROSCA claim was, one, whether a

24  consumer knew that they were being charged anything.  So

03:29:03 25  what I understand they had is they had a box.  And it said,

*Deborah D. Parker, U.S. Court Reporter*

03:29:06  1    *If you clicked here to learn about the terms and conditions,*

2    when you clicked on that "Terms and Conditions" link, the

3    box in *Doxo* was automatically clicked as well and you were

4    automatically subscribed.  That's very different,

03:29:21  5    Your Honor, than paragraph 27's screenshot.  Very different.

6    So that's not the same situation.

7         And the issue there with the additional fees was

8    that the way it was advertised was *If you subscribe to us,*

9    *you don't pay additional fees.*  That's not what's at issue

03:29:37 10    in Count 3.  What Count 3 is claiming is that there are

11    additional fees that a company in advance, that you may or

12    may not chose to get, if you are a consumer who has also

13    decided to become a member of Dave.  They are apples and

14    oranges, respectfully.

03:29:54 15         Now, the Government said something interesting.

16    They said nobody could get a subscription, if they didn't

17    think they were going to get a cash advance.  That's just

18    not correct.  And nowhere in the complaint does it say that,

19    nor could it say that.  Because, indeed, as the Government

03:30:08 20    knows, there are consumers who are members of Dave and who

21    have never taken -- or who have chosen not to take advances.

22    They use the company's other products, the ones I enumerated

23    which is why -- which is why commingling Section 5 deception

24    with ROSCA in Count 3 and Count 4 doesn't work, because it's

03:30:30 25    not correct.  ExtraCash is not one in the same with the

```
03:30:36   1   actual mechanism of subscription which is what ROSCA

           2   governs.

           3              Now --

           4              THE COURT:  I have a question about that.

03:30:43   5              Government counsel pointed to that third

           6   screenshot that is in paragraph, I believe, 27 of the first

           7   amended complaint.  And that screenshot, as we discussed

           8   before, states that "Dave charges a membership fee of $1 per

           9   month to connect your bank.  Questions?"

03:31:10  10              The Government stated that this screenshot does

          11   not appear or does not include, I should say, other

          12   products, other Dave products.  You're discussing other Dave

          13   products.

          14              MS. WILLIAMS:  It doesn't include other Dave

03:31:30  15   products, because this connecting your bank account doesn't

          16   mean you're getting an advance.  Like, the connecting of the

          17   bank account, the $1 is not the only -- like, you connect

          18   your bank account for other reasons.  So, for example,

          19   there's a gold product and the gold product allows you to

03:31:49  20   use some of your savings or to delineate some of your money

          21   and put it towards savings.

          22              THE COURT:  But those are other products.  With

          23   respect to the product at issue here, the ExtraCash advance,

          24   the language -- the subscription language is in this

03:32:06  25   screenshot, correct?
```

03:32:07  1             MS. BAKER:  No, Your Honor.

       2             This subscription screenshot doesn't say anything

       3   about ExtraCash.  That's my point.  ExtraCash is not the

       4   same thing as the membership.  They're different things.  So

03:32:18  5   you can subscribe to Dave.  You pay a dollar to have your

       6   account connected as this notes.  And once you've connected

       7   your account, your bank account, you could use it to

       8   understand better your savings goals and never get an

       9   advance which is what ExtraCash is.  They're not the same

03:32:35 10   thing.  They are not one and the same.

      11             THE COURT:  I understand your argument, but if you

      12   look at this screenshot, the language here about the

      13   membership, this relates to the ExtraCash advance.

      14             MS. WILLIAMS:  I'm sorry, Your Honor.  I'm looking

03:32:48 15   at App Screenshot 3.  I don't see that.  I'm sorry, I'm not

      16   sure --

      17             THE COURT:  "Connect your primary bank.  Connect

      18   the bank account you get paid to and get approved for the

      19   highest amount.  Take interest-free advances.  Get money

03:33:05 20   instantly for a small fee."

      21             MS. BAKER:  That does relate to ExtraCash, but you

      22   could become a member and never get ExtraCash.

      23             THE COURT:  Okay.  Thank you, Counsel.  Your time

      24   has expired.

03:33:17 25             The Court --

03:33:19  1          MR. BROWN:  Can I reply on the individual

 2    defendants' issues?

 3          THE COURT:  You have 30 seconds to reply.

 4          MR. BROWN:  Okay.  So I want to cite with respect

03:33:29  5    to the conflating of the defendants and *FTC versus Lights of*

 6    *America*.  This is a case decided in the Central District,

 7    760 F.Supp --

 8          THE COURT:  What do you mean "conflating of the

 9    defendants"?

03:33:45 10          MR. BROWN:  The --

11          THE COURT:  When the complaint references

12    "defendants" plural?

13          MR. BROWN:  Both defendants.

14          As the Court pointed out, in this case, the

03:33:54 15    individual defendants were dismissed precisely for the same

16    mistake that the FTC originally -- where the Department of

17    Justice has made here.  It has not -- it has failed to

18    allege the who, what and where and how of the individual

19    defendant's connection to the acts and practices at issue.

03:34:14 20          So this is at page 854, just ahead of the jump to

21    855.  And I can bring the complaint to the Court, if that

22    would be helpful or the [sic] case to the complaint.

23          And then, counsel for the plaintiff also

24    referenced the *Amazon* matter and the individual defendants

03:34:36 25    there.  And the relevant pages are 50 to 52.  And in that

03:34:44 1  particular context, the FTC alleged connection of each of

2  the three defendants to the particular product and services

3  at issue.  So one defendant was the senior vice president of

4  Amazon who oversaw Amazon Prime, including the sign-up

03:35:04 5  process and the cancellation process.  Defendant Lindsay was

6  the Amazon executive with the most responsibility for the

7  Prime subscription, which he managed as the Amazon vice

8  president and senior vice president and then Defendant Ghani

9  oversaw the Prime subscription program as a vice president.

03:35:23 10  He had authority over the Prime enrollment and cancellation

11  process and, again, individual connection to the particular

12  decisions that are being made.

13       Because as we all know now having spent -- I don't

14  know -- 20 minutes talking about the font layout on the

03:35:40 15  screenshot on page 27 of the complaint, like the entire --

16  the entire ROSCA claim hinges on whether that language is

17  sufficiently visible to somebody who is going through a

18  subscription flow, again not necessarily to get an advance

19  but simply to connect their account to the Dave service.

03:36:05 20  And so the relevant people, right, for individual

21  responsibility to the extent that there would be those who

22  are directly responsible for those screen layouts.  That's

23  what the FTC alleged in the *Amazon* case and what is absent

24  from this complaint.  And that's -- that is precisely why my

03:36:23 25  defendant deserves to be dismissed, even if this case is

03:36:26 1    procedurally proper.

2         I just want to close, if I may, with one point,

3    and I appreciate Your Honor's patience.  Earlier on my

4    colleague, Ms. Baker, referenced Costco and the fact that in

03:36:45 5    order to go to Costco, you need to have a membership and

6    then there's a whole bunch of stuff that you can get at

7    Costco, right?  That's the same -- the service that Dave

8    sells on a subscription basis, on a negative option basis is

9    the connection of the account to the Dave service.

03:37:05 10   Everything else is optional.  That's one.

11        And then the second, not everybody who obtains an

12   advance pays for the subscription, so this -- this fails on

13   both of the dimensions.

14        THE COURT:  Thank you, Counsel.

03:37:20 15       I appreciate everyone's arguments today.

16        The Court will take the motion under submission

17   and issue a written ruling.

18        Thank you.

19        MR. BROWN:  Thank you, Your Honor.

03:37:31 20

21        *(At 3:37 p.m., proceedings were adjourned.)*

22                       -oOo-

23

24

25

*Deborah D. Parker, U.S. Court Reporter*

```
 1                         CERTIFICATE

 2          I hereby certify that pursuant to Section 753,

 3   Title 28, United States Code, the foregoing is a true and

 4   correct transcript of the stenographically reported

 5   proceedings held in the above-entitled matter and that the

 6   transcript page format is in conformance with the

 7   regulations of the Judicial Conference of the United States.

 8

 9   Date:  July 5, 2025

10

11

12                  _____/s/DEBORAH D. PARKER_____
                    DEBORAH D. PARKER, OFFICIAL REPORTER
13

14

15

16

17

18

19

20

21

22

23

24

25
```

*Deborah D. Parker, U.S. Court Reporter*

42/12
MR. BROWN: [21] 3/13
7/11 7/24 26/19 27/14
27/16 27/20 30/22 31/1
31/5 31/11 31/19 32/1
32/18 34/18 34/20 46/1
46/4 46/10 46/13 48/19
MS. ARISTEI: [1] 3/15
MS. BAKER: [41] 3/11
4/9 4/13 5/25 6/8 10/22
10/25 11/12 12/7 12/12
12/21 12/25 13/2 17/2
17/6 17/9 17/11 17/14
18/12 18/17 19/2 19/7
20/7 21/2 21/9 21/13
21/16 22/12 23/4 23/10
23/16 24/18 24/24 25/3
25/5 26/2 26/7 26/18
42/3 45/1 45/21
MS. WILLIAMS: [11]
3/7 32/25 34/6 34/10
34/21 35/9 36/3 38/18
41/5 44/14 45/14
THE CLERK: [1]  3/3
THE COURT: [65]

$
$1 [8]  19/20 20/8 21/17
21/24 22/3 27/1 44/8
44/17
$500 [5]  3/25 4/2 35/14
35/18 39/12

'
'22 [1]  24/8

-
-o0o [1]  3/2
-oOo [1]  48/22

/
/s/DEBORAH [1]  49/12

0
053 [1]  1/21

1
1-053 [1]  1/21
10 [3]  18/25 33/3 42/11
10 minutes [1]  19/4
101 [1]  2/16
10342 [1]  1/19
106 [1]  8/12
106A [1]  9/20
1080 [1]  29/4
11 [1]  42/12
1101 [1]  40/4
1127 [1]  29/22
12 [2]  31/5 42/12
13 [1]  42/12
14 [1]  42/12
14th [1]  36/6
15 [8]  5/16 9/8 9/16
20/20 34/6 34/10 35/1
42/12
16 [1]  42/12
17 [7]  5/17 5/18 5/19
6/4 6/17 35/17 42/12
1700 [1]  2/12
18 [2]  35/17 42/12
18 months [2]  9/24 9/25
19 [3]  17/16 35/17

42/12
2
20 [1] 42/12
20 minutes [1] 47/14
20001 [1] 2/6
20036 [1] 1/7
2016 [1] 33/4
202 [2] 2/6 2/12
2021 [3] 23/22 24/8
37/6
2022 [1] 23/22
2024 [4] 4/24 5/2 5/3
7/12
2025 [3] 1/15 3/1 49/9
2050 [1] 2/11
21 [1] 42/12
22 [1] 42/12
229-4305 [1] 1/22
23 [2] 40/12 42/12
24 [1] 42/12
24-09566-MRA [1] 1/8
25 [1] 42/13
26 [1] 42/13
27 [5] 19/16 38/22
39/20 44/6 47/15
27's [1] 43/5
28 [1] 49/3
2:32 [2] 1/16 3/1

3
30 [2] 1/15 3/1
30 seconds [1] 46/3
30th [1] 5/2 5/11 7/1
36 [1] 8/12
3:37 [1] 48/21

4
40 [1] 28/9
41 [5] 22/20 23/3 24/10
41/7 41/15
411 [1] 1/21
415 [1] 2/18
4269 [1] 2/6
43 [1] 28/13
4305 [1] 1/22
450 [1] 2/5
46 [1] 17/15
48th [1] 2/17

5
50 [1] 46/25
52 [1] 46/25
5407 [1] 2/5
551-1700 [1] 2/12
5th [6] 2/5 4/24 5/2 5/13
6/18 7/12

6
616-4269 [1] 2/6
617 [1] 29/22
657 [1] 1/22
69 [1] 28/16

7
70 [1] 12/23
7100 [1] 2/18
717 [1] 37/5
718 [1] 37/5
72 [1] 40/5
727 [1] 37/13
73 [2] 28/18 40/6
75 [1] 41/9

753 [1] 49/2
760 [1] 46/7
77 [7] 23/21 24/6 24/11
26/7 26/24 27/2 41/12
79 [1] 41/19

8
84 [1] 24/12
8403 [3] 9/9 9/16 20/20
85 [1] 41/9
854 [1] 46/20
855 [1] 46/21
856-7100 [1] 2/18
874 [1] 29/3

9
92701 [1] 1/22
94111 [1] 2/17
9566 [1] 3/4

A
AAA [4] 16/2 16/2 16/4
16/7
ability [1] 26/14
able [1] 24/7
about [44] 6/22 8/9 10/6
12/22 13/13 13/14
13/18 15/19 16/20 19/4
19/5 19/8 20/17 22/15
22/21 23/20 24/12
25/16 26/2 26/15 27/4
28/17 31/15 33/4 36/16
36/17 36/20 36/21 37/6
37/14 38/11 38/11
38/19 39/11 39/23 40/4
42/4 42/6 42/18 43/1
44/4 45/3 45/12 47/14
above [2] 21/12 49/5
above-entitled [1] 49/5
absent [1] 47/23
Absolutely [3] 6/8 17/6
22/12
acceptable [1] 33/17
access [2] 18/14 35/19
account [1] 11/10
11/21 11/25 18/14 20/3
21/20 22/1 22/4 22/5
22/23 23/25 35/20
38/14 39/14 44/15
44/17 44/18 45/6 45/7
45/7 45/18 47/19 48/9
accounts [4] 13/4 23/1
23/6 23/11
acknowledges [2] 15/23
25/23
Act [3] 8/7 15/12 36/16
action [1] 6/10
active [2] 30/20 31/25
actively [1] 30/11
activities [2] 29/11
29/18
acts [2] 33/9 46/19
actual [4] 5/17 15/16
36/8 44/1
actually [5] 23/17 23/20
38/10 40/4 42/20
add [1] 27/13
added [2] 27/8 34/4
addition [1] 40/25
additional [5] 4/3 26/22
43/7 43/9 43/11
Additionally [1] 35/2
address [5] 9/2 9/5

10/11 19/1 41/13
14/17
addressed [3] 10/1 10/2
14/17
adequately [7] 10/16
14/20 19/12 25/6 42/7
42/8 42/17
adjourned [1] 48/21
administrator [1] 6/11
admittable [1] 15/2
Adobe [14] 10/7 13/13
13/18 13/19 13/20
16/17 39/1 40/7 40/9
40/9 40/10 40/15 42/9
42/9
Adobe case [1] 13/13
adopted [2] 28/16
ads [1] 35/16
advance [29] 3/25 13/5
15/21 17/5 17/21 17/24
17/24 18/2 18/3 18/15
18/16 18/19 18/20 23/7
35/4 35/14 35/20 38/3
38/5 39/14 39/15 43/11
43/17 44/16 44/23 45/9
45/13 47/18 48/12
advanced [1] 38/1
advances [7] 8/22 8/24
11/16 21/22 39/17
43/21 45/19
advertised [3] 8/23
39/20 43/8
advertisements [1]
39/10
advertising [1] 30/17
affect [2] 17/10 17/11
affects [1] 17/8
after [1] 7/18
afternoon [5] 3/7 3/10
3/11 3/17 4/14
again [1] 16/17 20/19
27/5 30/13 31/13 37/7
39/23 42/7 47/11 47/18
against [6] 4/25 27/19
32/4 32/22 32/24 33/15
agency's [1] 38/9
agree [1] 10/19 17/7
18/10 22/9
agreed [2] 30/3 30/10
agreement [2] 21/8
27/25
ahead [1] 46/20
al [1] 1/6
all [31] 4/17 4/19 7/12
8/2 9/11 10/1 10/1
10/20 10/23 11/15
14/12 14/15 14/16 16/6
16/18 17/1 19/10 21/18
22/13 36/25 37/9 37/21
37/22 37/22 38/7 39/7
40/19 42/5 42/16 42/22
47/13
allegation [5] 8/21 22/25
25/20 26/1 28/16
allegations [18] 3/24 9/5
12/21 24/22 28/5 30/23
31/3 31/22 31/25 32/2
32/5 32/22 33/12 33/15
33/15 40/24 41/8 42/16
allege [9] 24/6 24/23
25/1 26/8 26/24 26/25
30/20 41/10 46/18
alleged [11] 8/21 9/19
10/15 13/7 13/20 13/23

25/11 30/14 33/7 47/1
47/23
allegedly [1] 27/23
alleges [10] 8/14 12/13
12/20 22/17 22/21 23/5
28/13 32/23 33/7 42/10
alleging [1] 33/12
allow [5] 5/17 13/5
18/13 23/23 42/2
allows [5] 5/15 7/17
11/23 11/25 34/6 34/10
44/19
ALLYSON [3] 2/10 3/12
4/14
allysonbaker [1] 2/13
ALMADANI [1] 1/4
almost [2] 4/1 41/17
42/15
alone [2] 22/14 39/5
already [3] 17/23 17/24
41/14
also [26] 2/20 7/8 8/8
16/11 18/6 19/12 20/16
23/24 29/12 33/7 33/15
34/22 36/12 37/23 38/3
39/1 39/25 40/1 40/7
40/20 41/14 41/19 42/9
42/10 43/12 46/23
although [3] 33/20
40/22 41/5
Amazon [16] 14/6 14/17
16/17 25/9 25/10 33/21
33/21 38/19 38/25
39/23 46/24 47/4 47/4
47/6 47/7 47/23
Amazon Prime [1] 47/4
amend [1] 27/13
amended [11] 3/20 3/23
5/3 5/10 6/25 27/22
30/20 32/23 33/2 34/2
44/7
amendment [3] 34/6
34/11 34/11
America [2] 3/9 46/6
American [1] 29/3
among [1] 30/1
amount [11] 4/2 17/8
17/11 17/23 18/9 18/14
18/20 21/21 28/11
39/16 45/19
amounts [8] 8/22 23/7
ANA [4] 1/3 1/14 1/22
3/1
analogized [1] 13/19
analogy [1] 13/12
analysis [1] 14/18
annual [4] 10/11 40/14
40/15 40/16
another [2] 14/25 27/15
another's [1] 6/13
answer [2] 26/22 27/7
answered [4] 27/14
27/15 34/12 34/17
any [20] 6/3 6/16 7/15
8/17 8/23 16/16 16/20
19/22 21/4 21/5 23/23
24/14 26/13 30/20
31/25 32/14 32/15
36/24 37/16 41/25
anymore [1] 18/24
anything [4] 28/22
32/17 42/24 45/2
anywhere [1] 16/16

## A

Apologies [1] 27/16
apologize [2] 31/20 34/10
app [13] 11/9 12/20 12/22 13/4 17/16 19/17 21/13 23/24 25/25 26/1 28/23 33/11 45/15
apparent [1] 22/7
appear [2] 41/9 44/11
appearances [2] 1/24 3/5
appears [3] 37/4 38/15 38/21
apples [1] 43/13
apply [1] 4/5
applying [1] 33/22
appreciate [2] 48/3 48/15
approach [1] 4/10
appropriate [1] 33/24
appropriately [1] 32/8
approved [4] 21/20 29/7 39/16 45/18
are [65]
arguably [1] 19/23
argue [1] 17/3
argued [1] 34/1
argument [4] 4/6 32/22 35/25 45/11
arguments [4] 26/12 26/20 41/4 48/15
Aristei [2] 2/21 3/15
arose [1] 29/23
around [2] 14/15 16/4
as [50]
ASCS [1] 29/9
ask [3] 16/24 19/4 38/13
asked [1] 33/19
asking [2] 12/11 18/12
aspects [2] 16/21 40/17
assenting [1] 21/7
assert [1] 8/16
associated [8] 10/11 11/5 14/4 16/13 16/20 20/2 27/21 28/21
attempting [1] 36/23
attention [2] 17/15 19/16
August [2] 23/22 24/8
authority [1] 47/10
authorized [4] 5/22 5/24 6/1 6/14
automatically [5] 13/4 13/6 14/9 43/3 43/4
available [2] 26/22 27/1
aware [2] 19/14 20/1

## B

back [4] 4/22 9/21 21/1 28/1
background [1] 20/15
bailee [1] 6/12
BAKER [6] 2/10 3/12 4/14 33/19 39/3 48/4
Baker's [1] 26/20
bank [11] 11/10 11/20 13/4 18/14 19/20 20/3 20/9 21/19 21/20 21/24 22/3 22/4 23/25 35/19 44/9 44/15 44/17 44/18
457 45/17 45/18
bar [1] 20/12
barred [1] 27/19
bars [1] 21/21
based [3] 11/8 22/14 39/5
basically [1] 11/22
basis [6] 7/5 8/16 29/13 29/21 48/8 48/8
be [31] 3/17 4/2 4/15 4/18 7/4 7/19 8/8 11/11 13/19 16/22 18/16 19/13 20/16 22/5 22/14 22/23 27/8 27/8 27/10 27/11 29/14 32/9 34/24 35/4 35/5 35/23 36/6 41/6 46/22 47/21 47/25
bearing [1] 17/4
because [23] 6/20 6/23 7/21 9/18 13/24 18/3 18/23 19/14 20/12 22/20 23/1 23/7 23/8 24/25 34/2 34/25 36/10 42/20 42/21 43/19 43/24 44/15 47/13
become [3] 18/13 43/13 45/22
becomes [1] 15/10
been [15] 6/13 12/16 12/17 13/20 15/17 15/19 27/2 30/8 30/11 30/15 33/6 36/7 42/7 42/8 42/17
before [12] 3/19 9/11 18/11 18/18 19/4 19/9 19/22 20/3 20/10 35/3 37/1 44/8
began [1] 28/2
beginning [1] 3/6
behalf [2] 4/15 4/16
being [7] 8/15 10/15 20/22 39/20 40/5 42/24 47/12
believe [9] 4/18 21/9 22/10 27/9 31/7 39/3 41/14 42/8 44/6
believed [1] 7/13
believes [1] 42/14
benefit [2] 6/10 6/13
best [2] 28/24 32/11
betrays [1] 35/22
better [1] 45/8
between [5] 5/2 23/22 24/8 27/25 41/9
beyond [7] 9/18 10/4 16/15 16/15 29/4 30/13 32/6
bigger [1] 36/10
billing [4] 9/12 19/8 30/17 37/2
bit [2] 4/22 13/14
blends [1] 20/15
blue [1] 22/1
both [6] 32/6 33/15 34/1 38/8 46/13 48/13
bottom [1] 22/8
box [2] 42/25 43/3
BRANCH [1] 2/4
brief [2] 6/22 29/2
briefly [2] 19/6 42/18
bring [1] 46/21
brought [3] 4/25 6/11 7/15

## B (continued)

BROWN [3] 2/15 3/13 4/15
bulk [1] 41/8
bunch [1] 48/6
business [6] 18/6 29/16 30/4 30/5 30/8 30/16
buttons [1] 21/6
buy [1] 16/14
buying [1] 16/12

## C

Calendar [1] 3/3
CALIFORNIA [7] 1/2 1/14 1/22 2/16 2/17 3/1 10/9
call [1] 5/10
called [4] 11/5 11/22 25/18 33/13
Calling [1] 3/3
came [1] 16/5
can [27] 11/20 11/21 11/24 13/1 14/16 18/2 19/5 20/4 20/7 24/15 24/19 24/24 25/9 25/15 25/22 31/13 33/13 34/14 39/4 40/13 41/2 41/5 42/8 45/5 46/1 46/21 48/6
can't [4] 21/10 23/1 23/18 27/12
cancel [25] 15/16 22/23 23/1 23/6 23/14 25/13 25/16 25/21 25/22 25/22 25/23 27/1 36/2 36/4 36/9 36/10 36/20 38/9 41/16 41/16 41/17 42/7 42/14
canceling [2] 10/12 23/10
cancellation [9] 20/18 20/18 22/16 24/13 25/11 41/3 42/10 47/5 47/10
cancelled [1] 10/13
cannot [1] 23/19 39/2 39/6
car [1] 16/3
card [1] 20/23
carefully [4] 14/21 14/21 27/3 41/6
case [47] 5/8 5/8 5/9 7/4 7/14 7/25 10/7 10/9 10/9 10/15 12/4 13/13 13/14 13/14 13/20 14/6 14/6 14/8 14/25 14/25 15/4 16/22 25/9 25/10 25/15 29/23 31/11 32/11 33/19 33/20 34/3 34/4 34/14 34/23 36/10 38/19 39/4 40/1 40/22 42/20 42/21 42/23 46/6 46/14 46/22 47/23 47/25
cases [13] 10/1 10/3 10/3 10/6 13/15 24/15 24/19 28/25 32/7 32/9 35/13 39/1 40/20
cash [13] 3/25 4/2 8/22 8/23 13/5 17/4 18/16 35/14 35/20 38/3 38/5 38/16 43/17
category [1] 24/4
CENTRAL [2] 1/2 46/6

## C (continued)

CEO [2] 8/1 33/4
CERTIFICATE [1] 48/23
CERTIFIED [1] 1/5
certify [1] 49/2
challenge [1] 27/21
charge [9] 13/7 13/9 23/24 24/5 24/7 24/8 36/23 41/11 41/13
charged [2] 22/6 42/24
charges [13] 13/3 19/19 20/8 20/22 21/16 21/23 22/3 22/18 23/9 23/12 23/15 29/18 44/8
charging [3] 19/9 36/22 41/20
check [1] 12/15
chief [2] 2/21 3/15
choose [1] 11/17
chose [2] 7/17 43/12
chosen [2] 27/3 43/21
circuit [11] 9/24 9/25 16/16 30/3 30/10 33/22 34/23 35/12 38/18 39/6 39/7
cite [5] 23/21 24/1 24/3 36/19 46/4
civil [5] 2/4 5/6 7/15 7/18 7/25
claim [22] 5/23 5/24 6/1 6/3 10/17 13/15 13/16 15/10 23/14 23/16 24/13 24/23 27/18 29/13 31/10 38/13 40/13 40/13 40/14 41/3 42/23 47/16
Claim 1 [1] 40/14
Claim 3 [1] 38/13
claimed [1] 30/8
claiming [1] 43/10
claims [10] 3/21 8/5 8/8 8/21 8/24 10/1 27/18 32/22 32/23 35/7
clarification [4] 6/6 7/22 20/5 34/8
clear [13] 5/21 8/10 9/9 15/18 16/25 18/3 33/23 36/1 37/21 37/23 39/14 40/16 40/17
Clearing [2] 29/14 29/15
clearly [6] 9/10 19/14 31/17 33/7 36/22 36/25
click [10] 15/16 20/3 20/10 25/12 36/2 36/4 36/8 36/10 36/20 36/22
clicked [3] 43/1 43/2 43/3
clicking [1] 21/6
client [8] 7/10 7/11 7/12 7/20 7/21 27/13 27/19 30/21
close [2] 39/4 48/2
closed [1] 29/19
closely [1] 14/21
closer [1] 23/2
Code [1] 49/3
cofounder [1] 33/5
cognizable [1] 6/3
colleague [5] 4/15 19/4 26/15 26/17 48/4
color [1] 20/13
colored [2] 38/23 38/23
come [1] 9/21

## C (continued)

coming [1] 36/15
commingling [1] 43/23
COMMISSION [9] 1/6 2/2 3/4 4/25 5/5 7/13 7/15 11/13 15/12
company [11] 14/5 15/8 16/21 18/23 28/10 28/11 28/15 29/19 33/5 33/6 43/11
company's [4] 29/7 29/10 30/14 43/22
complaint [76]
complaints [4] 28/10 28/19 32/5 41/20
completely [1] 35/22
complicit [1] 30/11
comply [1] 15/22
component [1] 16/3
components [3] 14/15 16/7 16/10
concealing [2] 4/1 30/11
conceding [1] 9/3
concern [3] 8/6 9/22 16/11
concerned [1] 13/17
concerning [1] 29/18
concerns [1] 19/25
concluded [2] 30/2 30/9
conclusion [5] 31/12 31/22 32/2 32/8 32/12
conclusory [2] 23/18 42/16
conditions [4] 21/7 37/17 43/1 43/2
Conference [1] 49/7
Confidence [1] 8/7
conflating [2] 46/5 46/8
conformance [1] 49/6
confused [1] 29/15
confusion [1] 28/3
connect [21] 11/10 13/3 19/20 20/4 20/9 20/10 21/19 21/20 21/24 22/1 22/2 22/3 22/4 22/5 38/14 39/13 44/9 44/17 45/17 45/17 47/19
connected [4] 17/25 18/20 45/6 45/6
connecting [3] 20/3 44/15 44/16
connection [8] 15/9 27/17 28/4 40/23 46/19 47/1 47/11 48/9
consent [2] 19/9 22/10
consider [1] 40/23
considered [2] 11/11 18/16
consistent [1] 36/9 38/8
conspicuous [4] 8/11 16/25 20/11
conspicuously [2] 9/10 36/25
constitutes [1] 21/7
consumer [21] 2/4 11/9 13/8 15/5 17/22 18/1 20/10 20/21 21/6 24/4 24/6 28/19 35/12 35/15 35/16 35/18 35/24 39/9 41/20 42/24 43/12
consumer's [4] 9/12 20/22 22/10 37/5
consumers [35] 3/25 4/1 8/23 9/2 11/16 12/1

## C

consumers... [29] 13/3
14/11 19/9 19/14 19/21
20/1 22/22 23/6 23/23
25/12 25/13 25/16 26/8
27/1 36/23 38/24 39/8
39/22 39/25 40/1 40/2
40/3 40/4 40/16 40/17
41/15 41/18 41/24
40/20
contact [2] 22/22 23/6
contacted [1] 29/25
contacting [3] 23/1
41/12 41/15
contain [5] 30/22 31/21
31/25 32/1 42/16
contains [1] 3/23
contemplate [2] 8/3
14/4
contemplated [1] 6/16
contemplates [2] 8/15
13/25
contends [2] 8/25 17/19
content [1] 33/9
context [3] 38/20 41/11
47/1
continuing [1] 41/22
contract [3] 6/13 29/13
29/21
contrast [3] 28/24 37/14
42/15
control [4] 28/21 29/4
30/14 32/6
controlled [2] 31/23
32/3
converted [1] 14/10
copy [1] 20/13
corporate [3] 28/7 29/5
29/16
correct [19] 5/22 6/24
10/21 10/24 11/10
11/14 12/20 17/5 17/6
21/10 27/19 32/4 34/19
34/20 37/25 43/18
43/25 44/25 49/4
Costco [5] 16/9 16/9
48/4 48/5 48/7
costs [1] 14/10
could [7] 7/15 16/6
25/16 43/16 43/19 45/7
45/22
counsel [16] 2/1 3/5 7/2
18/25 24/17 25/2 32/16
32/21 34/16 41/4 41/6
41/25 44/5 45/23 46/23
48/14
count [43] 8/6 8/6 8/6
8/9 9/6 9/6 9/6 9/18
9/19 10/15 13/10 13/20
14/24 15/24 15/25
16/14 16/15 16/22
16/25 19/3 19/3 19/8
19/10 19/13 19/23
19/25 20/16 20/17 21/1
22/13 22/14 22/15 24/9
36/18 40/8 40/17 40/19
42/6 42/16 43/10 43/10
43/24 43/24
Count 1 [1] 40/17
Count 3 [22] 8/6 8/9 9/6
9/18 9/19 10/15 13/10
13/20 14/24 15/24

## D

D.C [1] 2/6
date [3] 36/5 36/7 49/9
dating [1] 28/1
DAVE [46] 1/9 2/9 2/21
3/4 3/12 3/16 3/24 4/15
4/25 5/1 8/10 11/20
11/20 11/21 11/25 13/3
13/7 19/19 20/8 21/16
21/23 22/17 22/22 23/1
23/6 23/8 23/22 23/25
37/25 38/2 38/15 39/18
41/12 41/15 41/16
41/17 43/13 43/20 44/8
44/12 44/12 44/14 45/5
47/19 48/7 48/9
Dave's [3] 33/8 34/16
40/24
DC [1] 2/12
ddparker.com [1] 1/23
DEBORAH [3] 1/19
49/12 49/12
December [3] 5/2 5/11
7/1
December 30th [3] 5/2
5/11 7/1
deception [4] 15/14
37/10 37/18 43/23
deceptive [1] 40/3
decide [1] 39/4
decided [6] 10/7 10/8
15/1 42/19 43/13 46/6
decision [2] 17/3 33/14
decisions [5] 28/23 33/8

## C (cont.)

15/25 16/14 16/15
16/22 16/25 19/10 19/3
19/23 19/10 19/22
22/13 22/14 22/14
22/14 24/11 11/8
defect [1] 11/8
defendant [17] 2/9 2/14
3/14 3/20 4/8 8/22 27/6
27/13 27/15 29/16
33/25 34/12 35/4 47/3
47/5 47/8 47/25
Defendant Jason [1]
3/14
defendant's [2] 29/16
46/19
defendants [18] 1/10
29/6 29/9 32/9 33/16
33/16 33/18 34/1 36/19
38/6 42/2 46/5 46/9
46/12 46/13 46/15
46/24 47/2
defendants' [3] 3/19
46/2
defense [2] 41/4 41/6
defining [1] 35/8
delineate [1] 44/20
delivered [1] 14/14
delivery [1] 40/25
denied [3] 40/11 40/11
40/18
deny [1] 3/22
DEPARTMENT [10] 2/3
4/20 5/7 5/9 5/16 7/14
11/3 22/16 32/10 46/16
Depot [1] 29/22
describe [2] 21/4 37/4
described [1] 21/10
describes [1] 33/3
describing [1] 42/13
deserves [1] 47/25
design [2] 33/9 33/11
designation [1] 6/5
detail [2] 36/5 42/13
detailed [1] 3/24
determinations [1]
33/11
did [4] 5/16 14/12 23/22
40/24
didn't [2] 38/2 43/16
different [13] 7/24 10/10
14/23 14/23 15/7 16/7
21/21 24/15 24/19
41/16 43/4 43/5 45/4
difficult [1] 27/20
digital [1] 33/9
dimension [1] 28/2
dimensions [1] 48/13
direct [2] 17/14 19/16
directed [2] 30/16 32/3
direction [2] 29/17
30/16
directly [5] 37/3 37/11
37/19 38/25 47/22
director [2] 29/9 30/15
directs [1] 33/7
disagreement [1] 31/16
disclose [3] 37/8 37/16
38/15
disclosed [5] 8/15 8/15
10/16 14/20 19/12
discloses [2] 9/10 36/25
disclosure [4] 9/17
36/17 38/10 40/13
disclosures [4] 8/11
16/25 21/3 38/17
discreet [2] 12/16 12/16
discuss [3] 29/1 32/14

## C (cont.)

33/11 34/24 47/12
deciding [1] 11/8
defect [1] 11/8
discussed [7] 38/14
40/5 40/8 44/7
discussing [1] 44/12
discussion [1] 33/21
dismiss [11] 3/19 7/7
7/8 22/11 25/10 31/3
33/24 34/13 34/25
40/11 40/19
dismissal [4] 3/21 34/23
40/10 40/11
dismissed [14] 4/19
5/12 8/8 10/17 16/22
19/13 20/16 22/14
27/10 27/11 40/9 40/9
46/15 47/25
dispute [1] 31/20
disputes [1] 31/17
disseminated [1] 29/7
DISTRICT [9] 1/1 1/2
1/20 10/8 14/7 15/1
30/2 30/9 46/6
DIVISION [2] 1/3 2/4
do [22] 4/6 8/3 8/23
12/17 15/4 16/11 16/19
18/10 18/21 22/9 23/17
23/17 23/19 25/17
28/22 34/14 35/25
38/25 39/1 39/6 40/1
46/8
does [22] 5/17 5/19
13/5 14/3 14/3 15/11
15/21 16/14 17/9 17/10
17/11 26/7 26/24 26/25
30/20 30/22 31/21 32/1
43/18 44/10 44/11
45/21
doesn't [12] 5/18 15/23
18/23 19/11 24/25
27/22 29/1 31/24 43/24
44/14 44/15 45/2
doing [3] 7/6 15/13 38/5
dollar [7] 19/21 20/2
22/6 28/19 38/16 41/21
45/5
don't [21] 12/5 21/9
22/6 23/16 23/19 24/2
24/3 24/5 24/13 25/5
31/7 31/11 32/12 32/13
32/14 32/21 41/23
41/25 43/9 45/15 47/13
done [4] 5/12 5/16 11/4
36/19
double [1] 25/7
down [2] 20/24 29/20
Doxo [10] 13/14 14/25
14/25 16/17 39/1 40/21
40/24 42/18 42/18 43/3
Doxso [1] 42/19
due [2] 10/6 29/20
dynamic [1] 17/20

## E

each [5] 8/20 10/6
13/15 22/22 47/1
earlier [5] 18/18 37/7
37/21 38/15 48/3
early [1] 34/14
easier [1] 38/24
easy [1] 39/22
economic [1] 29/4
effective [2] 36/6 36/7
efficacy [1] 36/5

## E (cont.)

either [2] 5/7 28/22
eligibility [1] 17/4
eligible [1] 18/1
else [3] 16/16 38/12
48/10
emphasized [1] 37/8
employed [2] 35/1
35/23
enable [1] 22/24
encounters [1] 17/22
ending [1] 37/5
ends [1] 37/13
enforcement [2] 37/6
37/7
enough [2] 22/24 39/24
enrolling [2] 13/6 14/11
enrollment [5] 14/22
16/19 35/18 39/11
47/10
enter [1] 38/4
entered [2] 27/25 29/12
entice [1] 25/13
entire [3] 27/10 47/15
47/16
entirety [4] 4/19 40/12
entitled [1] 49/5
enumerated [1] 43/22
enumerates [3] 8/11
8/13 19/11
equivalent [1] 15/25
error [2] 34/18 34/25
essentially [3] 11/4 16/1
28/9
et [1] 1/9
even [4] 15/5 23/19
41/11 47/25
event [4] 10/5 11/6 12/3
19/24
ever [2] 24/4 34/12
every [7] 11/4 14/4 16/3
18/7 25/23 40/22 41/21
everybody [1] 48/11
everyone [1] 3/17
everyone's [1] 48/15
Everything [1] 48/3
evidence [1] 40/5
exact [1] 39/4
exactly [1] 41/23
examine [1] 14/12
example [10] 11/24
13/18 14/25 16/1 23/21
24/16 24/20 25/10
41/19 44/18
examples [1] 16/18
exchange [3] 35/10
35/14 35/20
exchanging [1] 35/19
executive [2] 30/1 47/6
executor [1] 47/11
existing [1] 37/14
exists [1] 32/5
expanded [1] 8/18
expands [1] 9/18
experiments [1] 28/17
expired [1] 45/24
explain [6] 4/17 5/13
11/15 23/17 23/20
24/13
explained [1] 19/10
explaining [1] 3/24
explains [1] 21/19
express [4] 19/9 22/10
28/14 38/15

E

extend [1]  13/19
extent [4]  19/22 26/21 38/4 47/21
ExtraCash [16]  11/6 11/10 11/13 11/16 11/19 12/2 12/6 12/8 43/25 44/23 45/3 45/3 45/9 45/13 45/21 45/22

F

F.3d [1]  29/22
F.Supp [2]  29/4 46/7
facing [1]  29/17
fact [20]  7/18 8/9 9/15 14/9 14/11 18/23 19/14 19/15 19/18 20/9 20/11 22/19 22/21 24/3 25/16 26/24 33/4 38/23 40/2 48/4
facts [3]  11/9 31/6 31/8
factual [5]  3/24 12/11 31/17 31/19 31/22
failed [4]  8/10 22/17 41/10 46/17
fails [1]  48/12
FAQs [2]  20/14 21/25
far [2]  15/24 36/7
favors [1]  34/24
feature [6]  10/24 10/25 14/4 35/21 36/24 39/13
features [4]  14/16 15/9 16/20 36/11
FEDERAL [9]  1/6 2/2 3/4 4/25 5/5 7/13 7/14 11/3 15/12
fee [20]  4/3 4/4 13/5 13/8 19/20 20/2 20/8 21/17 21/23 28/14 28/19 38/15 38/16 39/16 40/21 40/21 40/25 41/23 44/8 45/20
fees [8]  4/1 4/4 10/11 26/8 41/1 43/7 43/9 43/11
few [5]  7/2 7/11 8/23
Fifth [1]  31/14
filed [9]  5/4 5/10 5/11 5/13 6/25 7/4 27/7 29/16 35/3
filing [1]  27/21
finally [1]  39/12
find [2]  33/13 33/15
fine [2]  38/20 39/24
finish [1]  31/15
first [25]  3/20 3/23 4/8 4/17 4/19 5/3 5/7 7/12 8/17 8/20 8/21 9/8 10/7 11/15 13/6 21/18 24/5 30/20 32/23 33/2 33/20 34/2 42/5 42/22 44/6
first-amended [5]  3/20 3/23 30/20 33/2 34/2
five [2]  24/22 42/2
five minutes [1]  42/2
fix [1]  16/3
fixed [1]  16/5
flaw [1]  4/20
flawed [1]  24/11
FLOOR [1]  2/17
flow [7]  11/9 18/17 18/18 25/11 35/18

39/1 47/18
focus [2]  15/10 16/4
follow [1]  15/22
following [1]  6/9
font [1]  47/14
foregoing [1]  49/3
format [1]  49/6
formulated [1]  29/6
forth [2]  31/8 38/6
foul [1]  6/24
found [4]  10/15 14/19 33/15 40/15
four [5]  8/13 24/22 25/12 28/9 31/15
FOURTH [1]  1/21
frame [1]  20/14
FRANCISCO [1]  2/17
fraud [1]  29/20
free [4]  7/5 14/9 21/22 45/19
front [1]  5/3
FTC [11]  29/3 29/14 29/22 30/1 36/1 36/15 37/7 46/5 46/16 47/1 47/23
FTC's [2]  36/9 37/21
function [2]  13/22 14/22
furniture [1]  16/14
further [6]  9/23 14/6 15/16 22/20 32/17 42/1

G

general [3]  6/5 12/19 28/6
get [32]  7/9 11/16 11/20 11/21 13/5 13/9 14/13 14/17 16/6 18/11 18/18 21/20 21/20 21/22 24/16 24/19 27/17 35/11 35/18 38/2 39/14 39/15 43/12 43/16 43/17 45/8 45/18 45/18 45/19 45/22 47/18 48/6
gets [2]  12/9 39/12
getting [5]  35/15 36/18 38/3 41/16 41/17 44/16
Ghani [1]  47/8
give [4]  4/22 13/12 23/21 35/10
gives [2]  5/6 42/11
giving [1]  35/19
go [8]  4/22 8/20 12/22 12/23 15/24 19/3 25/12 48/5
Goal [1]  11/25
goals [1]  45/8
goes [3]  16/15 16/15 40/1
going [11]  4/15 7/3 20/24 21/1 33/12 33/12 37/5 39/10 39/25 43/17 47/17
gold [2]  44/19 44/19
gone [1]  10/4
good [6]  3/7 3/10 3/11 3/17 4/14 33/21
goods [1]  36/23
got [1]  25/19
govern [1]  9/15
governance [3]  28/7 29/5 32/6
Government [24]  6/18 6/21 8/24 12/20 15/13

17/18 17/19 22/17 20/15 27/9 27/12 28/17 28/8 28/25 29/1 31/12 32/19 34/14 35/8 42/5 43/15 43/19 44/5 44/10
Government's [5]  3/21 3/23 12/21 21/5 38/17
governs [1]  44/2
granted [2]  40/10 40/10
great [1]  42/13
green [2]  20/12 21/6
grounds [2]  3/21 34/23
guardian [1]  6/11

H

had [24]  7/3 15/4 23/24 25/17 27/14 27/15 28/10 28/11 28/15 29/18 29/19 30/4 30/5 30/8 30/8 30/11 30/15 30/16 30/23 34/17 40/15 42/25 42/25 47/10
happens [1]  14/12
hard [1]  24/21
harm [1]  6/24
has [25]  6/13 13/8 15/17 17/14 17/23 18/21 21/21 26/13 26/21 27/2 33/10 33/21 34/12 37/25 39/11 39/18 41/14 42/7 42/8 42/16 43/12 45/24 46/17 46/17 46/17
HASTINGS [2]  2/11 2/16
have [49]  5/12 5/16 5/19 7/15 7/18 10/1 10/1 10/4 11/4 11/4 12/16 13/19 13/20 15/22 16/10 16/10 18/10 18/13 18/13 18/19 18/24 18/25 19/8 20/13 20/18 20/20 23/17 24/17 24/24 25/21 26/6 26/12 26/14 32/3 33/17 34/1 36/1 36/19 36/24 40/20 40/23 41/25 43/21 43/21 44/4 45/5 46/3 48/5
having [6]  15/19 24/21 28/22 29/4 47/13
he [12]  17/23 27/5 27/11 30/23 31/22 32/2 33/4 33/7 35/5 35/5 47/7 47/10
he's [2]  33/5 33/6
hear [5]  4/6 4/8 7/2 26/17 32/19
heard [2]  34/16 41/4
hearing [2]  9/5 31/16
held [1]  49/5
here [33]  5/9 5/23 6/15 6/16 6/17 7/20 9/16 10/20 11/9 15/13 16/14 16/22 20/4 21/16 24/22 24/22 25/14 26/13 27/4 27/5 33/20 34/2 34/13 35/6 35/11 35/23 39/3 39/15 39/20 43/1 44/23

17/12 46/17
Here's [1]  24/2
hereby [1]  49/2
Hereto [1]  19/13
hewed [2]  14/21 14/21
Hey [1]  41/20
hidden [1]  4/1
higher [1]  21/21
highest [2]  39/16 45/19
highlighted [1]  39/13
highly [1]  41/9
him [1]  27/8
hinges [1]  47/16
his [5]  28/4 28/7 29/18 33/3 33/14
historic [1]  18/23
history [1]  4/23
Honor [62]
Honor's [1]  48/3
HONORABLE [1]  1/4
house [3]  14/14 29/14 29/15
how [20]  3/24 7/10 7/20 10/12 12/19 12/22 14/13 15/15 15/22 16/6 17/13 18/11 18/21 19/18 22/6 24/22 35/7 35/25 40/4 46/18
However [1]  3/21
Hustle [1]  11/22

I

I'll [3]  9/21 32/19 42/2
I'm [22]  3/15 4/14 8/11 9/8 9/20 12/11 20/24 21/13 21/15 24/21 24/21 25/7 26/13 26/22 27/4 31/16 32/1 40/9 45/14 45/14 45/15 45/15
I've [1]  31/14
idea [1]  41/10
identify [1]  32/10
ignored [1]  36/21
immediate [1]  10/5
impermissibly [2]  4/21 5/11
implausible [1]  38/7
implemented [2]  29/7 29/9
importance [1]  38/20
important [9]  6/21 9/18 13/13 26/9 26/23 27/5 33/1 42/20 42/21
importantly [2]  13/10 13/10
impose [1]  5/6
imposed [1]  8/1
impossible [2]  41/17 41/18
improper [1]  34/2
improperly [1]  34/3
INC [4]  1/9 2/9 2/21 3/4
include [2]  44/11 44/14
included [1]  40/21
includes [1]  17/18
including [4]  4/4 22/13 33/8 47/4
incorrect [1]  34/21
indeed [9]  6/19 6/25 18/2 19/24 20/4 20/7 25/22 30/9 43/19
individual [11]  29/6 29/8

29/15 32/3 33/21 46/1 46/15 46/18 46/24 47/11 47/20
individuals [2]  30/10 32/8
inform [1]  9/17
information [4]  9/12 35/19 37/2 39/8
informed [2]  19/9 22/10
informing [1]  21/6
install [2]  29/25 30/8
installation [1]  30/12
installed [1]  30/9
instance [2]  9/4 24/5
instant [3]  3/25 38/16 39/12
instantly [4]  4/3 21/22 35/14 45/20
instead [1]  38/11
insufficient [1]  24/23
insurance [1]  16/8
intended [1]  41/24
interest [10]  5/18 5/22 6/4 6/16 6/19 21/22 29/4 39/16 41/2 45/19
interest-fee [1]  39/16
interest-free [2]  21/22 45/19
interesting [1]  43/15
internal [1]  28/9
Internet [2]  29/24 36/24
interpretation [1]  38/9
interpretations [1]  37/22
interrupting [1]  31/20
invest [1]  29/24
investigation [2]  28/1 29/20
investment [1]  29/23
involve [2]  24/13 40/24
involved [2]  13/15 20/2
involvement [3]  28/21 30/21 31/25
Iqbal [1]  23/19
is [181]
isn't [10]  5/25 6/15 7/4 11/8 13/7 21/5 22/25 25/6 38/7 42/14
isolation [1]  39/2
issue [10]  10/10 15/3 39/19 42/22 43/7 43/9 44/23 46/19 47/3 48/17
issues [2]  27/5 46/2
it [103]
it's [40]  5/25 8/2 12/17 17/16 17/18 18/8 18/9 18/20 18/20 18/22 19/24 20/10 20/11 20/12 20/15 20/19 23/14 26/5 26/23 27/8 27/20 28/5 31/2 33/23 35/10 35/10 35/13 35/13 36/6 36/9 37/21 37/23 38/23 39/1 39/14 39/22 39/23 40/15 40/20 43/24
Item [1]  3/3
items [1]  42/4
its [13]  4/19 6/22 8/1 11/25 13/4 15/23 17/18 17/21 18/4 22/19 27/13 29/1 40/12
itself [14]  9/8 9/14 10/5 11/13 12/13 13/17

itself... [8]  13/21 15/4
20/19 25/23 34/3 35/22
37/24 42/9

**J**

January [1]  15/18
JASON [2]  2/14 3/14
Joan [2]  2/21 3/15
job [1]  11/23
join [1]  26/20
joining [1]  6/10
joint [1]  30/7
JUDGE [1]  1/4
judgment [1]  31/7
Judicial [1]  49/7
July [2]  36/6 49/9
July 14th [1]  36/6
jump [1]  46/20
JUNE [2]  1/15 3/1
JUNE 30 [2]  1/15 3/1
jury [2]  30/23 30/25
just [15]  13/21 20/15
20/24 21/10 21/13
22/15 23/18 24/25 36/5
39/24 42/5 42/15 43/17
46/20 48/2
JUSTICE [9]  2/3 4/21
5/7 5/9 5/16 7/14 11/3
22/16 46/17
juxtapose [1]  32/4

**K**

keeps [1]  41/20
kicked [1]  36/7
kind [2]  4/22 32/5
kiosks [4]  29/25 30/6
30/7 30/12
knew [6]  15/5 29/17
30/3 30/4 30/7 42/24
know [10]  14/5 14/13
17/24 20/9 22/6 25/3
39/24 39/25 47/13
47/14
knowledge [1]  30/24
knows [4]  5/19 9/1
15/17 43/20

**L**

lacks [1]  12/10
laid [1]  28/24
language [11]  14/1 14/2
21/4 21/5 27/2 37/4
41/12 44/24 44/24
45/12 47/16
larger [1]  16/21
last [2]  9/24 9/25
law [8]  15/15 28/6
33/22 34/23 38/18 39/7
39/7 40/1
lay [1]  28/20
layout [1]  47/14
layouts [1]  47/22
learn [1]  43/1
learned [1]  6/18
least [5]  22/22 26/14
27/10 29/12 30/10
leave [2]  17/4 27/9
legal [5]  2/21 3/15 31/7
31/22 32/2
let [10]  8/20 8/20 11/2
11/15 16/24 23/2 23/20

25/15 26/17 38/13
let's [4]  28/5 27/17
32/11 35/17
level [2]  28/20 30/22
liability [1]  33/22
license [1]  29/16
light [2]  38/23 38/23
light-colored [1]  38/23
Lights [1]  46/5
like [8]  11/24 16/2 19/1
37/15 40/7 44/16 44/17
47/15
limited [1]  35/21
Lindsay [1]  47/5
link [1]  43/2
little [1]  4/22
LLP [2]  2/11 2/16
look [20]  9/23 14/6
15/16 22/20 23/2 24/10
24/10 24/15 24/19 25/9
25/15 37/24 38/18 39/2
39/7 40/12 40/22 42/9
42/20 45/12
looked [1]  10/3
looking [10]  9/8 9/20
16/2 21/13 21/15 28/25
35/23 39/15 39/15
45/14
lot [1]  33/5

**M**

made [6]  6/13 30/4 30/6
33/11 46/17 47/12
main [1]  27/18
maintained [1]  40/18
make [1]  23/18
makes [6]  6/22 9/9
15/18 18/2 38/24 41/11
managed [1]  47/7
many [2]  24/24 33/21
March [2]  15/2 42/19
markedly [2]  14/22
14/23
marketed [1]  30/18
marketer [1]  36/25
marketers [2]  15/22
29/11
marketing [6]  29/8 29/9
29/10 29/11 29/21
30/17
matching [2]  15/14
15/14
material [34]  8/5 8/13
8/17 8/25 9/11 9/16
10/2 10/4 10/10 10/13
10/14 10/20 10/23 11/4
13/16 13/24 14/8 14/19
15/2 15/3 16/18 17/1
19/11 19/23 36/25 37/2
37/9 37/16 37/22 37/22
37/24 38/1 38/7 42/21
matter [6]  7/6 28/6
34/11 34/15 46/24 49/5
may [10]  3/17 4/10 6/9
9/12 10/6 10/8 17/14
43/11 43/12 48/2
me [10]  8/20 8/20 11/2
11/15 16/24 23/2 23/20
26/17 38/13 41/20
meal [1]  18/6
mean [7]  22/6 25/1
27/20 31/13 32/14
44/16 46/8

means [3]  17/22 23/11
37/22
mechanics [4]  10/12
13/17 13/21 20/1
mechanism [8]  17/25
20/21 22/23 27/1 41/3
42/7 42/14 44/1
mechanisms [1]  22/18
member [3]  18/13 43/13
45/22
members [1]  43/20
membership [12]  4/4
13/8 18/11 19/20 20/8
21/17 21/23 38/16 44/8
45/4 45/13 48/5
mentioned [3]  12/2 42/5
42/15
merely [1]  25/14
merits [1]  34/24
middle [1]  22/8
might [1]  31/15
mind [1]  35/11
minute [1]  26/6
minutes [6]  7/2 18/25
19/4 24/17 42/2 47/14
misconstrues [2]  13/11
13/11
mislead [1]  3/24
misled [1]  40/5
misrepresentation [3]
36/14 36/20 38/11
misrepresentations [3]
36/12 36/13 36/17
misrepresented [1]  36/3
miss [5]  38/24 39/22
39/25 40/1 40/2
mistake [2]  6/17 46/16
mixing [2]  15/14 15/14
mobile [1]  33/11
model [1]  18/24
moment [1]  9/21
moments [2]  12/16
12/17
MONDAY [2]  1/15 3/1
money [8]  5/6 7/15 7/18
7/25 21/22 28/11 44/20
45/19
monitored [1]  29/10
month [9]  19/20 19/21
20/8 21/17 21/24 22/22
25/24 41/21 44/9
monthly [5]  4/4 10/11
13/5 14/10 41/22
months [3]  9/24 9/25
29/12
more [3]  13/10 13/10
18/25
most [3]  33/1 33/19
47/6
motion [10]  3/19 3/22
22/11 25/10 31/2 33/24
34/13 40/11 40/19
48/16
move [1]  26/5
Mr [1]  26/16
Mr. [19]  4/16 7/1 8/10
19/5 27/4 27/17 27/24
27/25 28/13 28/17
28/23 32/22 32/24 33/2
33/10 33/13 33/24 34/4
35/3
Mr. Wilk [17]  4/16 7/1
8/10 19/5 27/4 27/24

27/25 28/13 28/23
32/22 32/24 33/2 33/10
33/13 33/24 34/4 35/3
Mr. Wilk's [2]  27/17
28/17
MRA [1]  1/8
Ms. [4]  26/20 33/19
39/3 48/4
Ms. Baker [3]  33/19
39/3 48/4
Ms. Baker's [1]  26/20
much [3]  11/7 18/18
18/21
must [3]  11/10 19/8
22/23
my [15]  3/22 4/7 4/15
7/11 7/12 7/20 7/21
19/4 26/15 31/19 31/21
34/18 45/3 47/24 48/3
MyLife [2]  25/15 30/13
mystery [1]  33/6
MONICA [1]  1/4

**N**

N.W [2]  2/5 2/11
name [1]  6/12
named [2]  8/1 27/6
names [2]  6/9 7/1
nature [2]  16/7 16/13
near [1]  8/22
necessarily [1]  47/18
necessary [1]  32/7
37/10 37/18
need [9]  9/23 12/5 12/8
14/6 15/15 19/8 20/18
22/20 48/5
needed [1]  16/6
negative [15]  9/2 9/3
9/7 9/14 10/23 10/25
35/21 36/11 36/24 37/3
37/12 37/19 37/24 38/1
48/8
negatives [1]  25/7
Neither [1]  34/12
Network [3]  29/22 29/24
30/2
Networks [1]  31/14
never [7]  4/2 11/16
11/17 11/17 43/21 45/8
45/22
new [5]  7/1 7/17 7/19
36/2 37/14
next [1]  20/14
nine [3]  24/12 24/14
29/12
nine months [1]  29/12
Ninth [8]  30/3 30/10
33/22 34/23 35/12
38/18 39/6 39/7
Ninth Circuit [8]  30/3
30/10 33/22 34/23
35/12 38/18 39/6 39/7
no [34]  1/8 5/15 6/17
6/17 6/23 6/23 6/24
6/24 7/3 7/5 8/16 8/17
8/18 9/23 10/18 14/6
15/16 17/4 17/9 17/11
22/20 25/17 27/24 31/7
31/11 31/19 31/19
34/22 35/2 35/4 36/2
41/11 41/21 45/1
No. [1]  3/3
No. 1 [1]  3/3

nobody [2]  38/2 43/16
hon [4]  16/21 24/16
24/20 30/12
non-installation [1]
30/12
non-simple [1]  24/20
non-subscription [1]
16/21
none [7]  9/21 10/3 10/3
12/1 12/1 28/20 40/20
Northern [1]  10/8
not [116]
note [2]  26/23 40/7
notes [1]  45/6
nothing [3]  18/21 23/8
39/10
notice [2]  7/3 15/21
notified [1]  35/4
notifying [1]  35/3
November [7]  4/24 5/2
5/13 6/18 7/12 23/22
24/8
November 5th [5]  4/24
5/2 5/13 6/18 7/12
now [15]  6/20 8/1 8/1
9/3 9/12 11/3 13/18
16/23 20/17 22/19
26/14 42/5 43/15 44/3
47/13
nowhere [3]  25/14
26/24 43/18
number [6]  4/18 7/7
11/19 19/11 26/12 30/6
numerous [1]  3/20

**O**

o0o [1]  3/2
obtain [2]  12/6 12/8
19/9 38/5
obtaining [2]  9/11 37/1
obtains [1]  48/11
obviously [2]  26/12 27/4
offend [1]  24/20
offer [3]  8/23 37/3 37/20
37/23
offered [3]  9/2 11/17
23/7
offering [2]  3/25 9/22
offers [6]  8/22 11/20
14/5 15/8 16/7 23/8
officer [2]  2/21 3/16
OFFICIAL [1]  1/20
49/12
Okay [4]  19/7 19/7
45/23 46/4
once [1]  45/6
one [26]  10/16 11/14
12/3 12/8 15/10 15/20
20/2 20/12 24/1 26/6
28/2 28/19 29/8 30/10
33/1 36/4 36/15 37/25
38/16 41/21 42/23
43/25 45/10 47/3 48/2
48/10
one-dollar [2]  20/2
28/19
ones [2]  39/19 43/22
Online [1]  8/7
only [12]  4/2 4/25 7/18
11/19 13/16 16/4 19/24
20/9 25/16 25/20 41/7
44/17
oOo [1]  48/22
opened [1]  23/24

**Q**

operations [1] 33/8
operative [1] 10/19
opinion [1] 40/12
opportunity [2] 11/23 29/24
opposition [2] 29/1 32/14
option [16] 9/2 9/4 9/7 9/14 10/24 10/25 18/8 35/21 36/11 36/24 37/3 37/12 37/19 37/24 38/1 48/8
optional [4] 18/5 18/9 18/22 48/10
options [1] 11/24
oranges [1] 16/13
order [2] 12/6 48/5
organic [1] 16/13
originally [2] 27/7 46/16
other [22] 7/8 11/23 15/9 15/9 19/1 25/17 26/12 26/13 32/5 32/12 35/13 38/25 39/18 40/17 40/19 43/22 44/11 44/12 44/12 44/14 44/18 44/22
others [1] 30/1
our [4] 20/14 21/25 26/11 36/14
out [13] 6/20 14/7 20/14 28/5 28/20 28/24 29/23 33/13 36/7 39/16 41/8 41/14 46/14
outside [1] 39/18
over [1] 47/10
overall [1] 30/16
overestimated [1] 30/6
oversaw [2] 47/4 47/9
Overtalking [4] 26/4 31/4 31/9 31/18
own [6] 6/9 22/19
owner [1] 30/1
ownership [2] 30/14 32/6

**P**

p.m [3] 1/16 3/1 48/21
page [10] 8/12 17/16 37/4 37/5 37/13 40/4 40/12 46/20 47/15 49/6
page 19 [1] 17/16
page 27 [1] 47/15
page 36 [1] 8/12
page 718 [1] 37/5
page 854 [1] 46/20
pages [1] 46/25
paid [4] 10/11 14/10 21/20 45/18
paper [1] 24/25
papers [2] 5/18 26/12
paragraph [31] 4/12 9/20 12/23 17/15 19/16 22/20 23/3 23/5 23/21 24/2 24/6 24/10 24/11 24/12 26/3 26/7 26/24 27/2 28/9 28/13 28/16 28/18 33/3 33/3 38/22 39/20 41/7 41/15 41/19 43/5 44/6
paragraph 10 [1] 33/3
Paragraph 106A [1]

**9/20**

paragraph 27 [3] 19/18 38/22 39/20
paragraph 40 [1] 28/9
paragraph 41 [3] 23/3 24/10 41/15
Paragraph 43 [1] 28/13
paragraph 46 [1] 17/15
paragraph 69 [1] 28/16
paragraph 77 [5] 24/6 24/11 26/7 26/24 27/2
paragraph 79 [1] 41/19
paragraphs [12] 24/1 24/22 24/24 24/25 28/9 28/20 28/22 33/1 35/17 41/9 42/13 42/15
paragraphs 17 [1] 35/17
parcel [1] 11/6
PARKER [3] 1/19 49/12 49/12
parse [1] 39/18
part [9] 11/6 13/24 22/8 22/8 25/19 27/21 36/4 40/13 40/14
partial [1] 40/10
partially [2] 40/9 40/10
participate [1] 11/25
participation [1] 30/24
particular [6] 26/23 28/23 29/23 47/1 47/2 47/11
particularly [2] 27/24 38/19
partner [1] 30/4 30/5 30/8
party [14] 5/17 5/22 5/22 6/4 6/12 6/13 6/16 6/19 7/1 7/1 7/19 7/24 8/1 29/11
past [1] 10/8
patience [1] 48/3
PAUL [2] 2/11 2/16
paulhastings.com [2] 2/13 2/18
pause [5] 4/12 12/24 25/14 27/1 32/20
pay [4] 13/8 41/22 43/9 45/5
paying [7] 12/18 15/6 19/21 24/4 24/6 24/7 26/8
payment [1] 40/25
pays [1] 48/12
PDF [1] 13/22
penalties [4] 5/6 7/15 7/18 7/25
people [5] 25/21 30/3 38/4 41/22 47/20
per [5] 19/20 20/8 21/17 21/24 44/8
percentage [1] 18/7
perfectly [1] 33/16
period [1] 27/23
permit [1] 30/23
person [2] 6/10 29/12
personally [1] 30/18
perspective [1] 35/24
phone [2] 16/6 25/17
phonetic [1] 42/19
phrase [1] 10/20
place [3] 5/5 15/17 39/21
placed [1] 20/22

**places [1] 33/14**

plaintiff [8] 1/22 3/6 3/8 4/25 5/20 35/1 46/23
plan [6] 10/11 10/12 10/12 40/14 40/16 40/16
platform [1] 14/17
plausible [2] 21/12 31/10
plausibly [2] 24/23 32/23
plead [1] 33/17
please [3] 3/5 17/15 41/3
pled [3] 42/7 42/8 42/17
plural [3] 33/16 33/17 46/12
point [14] 6/20 6/21 6/22 7/16 16/4 16/19 27/7 31/2 31/19 31/21 33/19 33/20 45/3 48/2
pointed [5] 28/5 41/8 41/14 44/5 46/14
points [3] 28/8 29/1 31/5
policies [1] 29/8 29/10
policy [1] 37/6 37/8
portion [1] 10/17
position [5] 28/7 30/19 34/5 36/9 38/17
possible [1] 12/17
practices [3] 30/17 42/10 46/19
precedent [5] 8/18 8/18 9/23 9/24 16/16
precisely [2] 46/15 47/24
prejudice [6] 6/23 6/24 6/25 7/5 28/2 35/2
prejudice-free [1] 7/5
prejudiced [5] 7/10 7/11 7/21 7/21 8/2
prescribe [1] 15/21
present [2] 2/20 28/14
presentation [1] 28/14
presented [1] 39/8
president [4] 47/3 47/8 47/8 47/9
PRESIDING [1] 1/4
presumably [1] 22/2
presume [1] 9/6
presupposes [1] 11/13
pretty [3] 22/7 25/4 39/3
prevent [2] 37/10 37/18
previously [1] 7/4
primary [4] 21/19 22/3 22/4 45/17
Prime [9] 13/14 14/6 14/13 14/15 14/17 47/4 47/7 47/9 47/10
principal [1] 30/15
print [2] 38/20 39/24
prior [1] 29/19
problem [3] 8/16 24/2 24/9
problems [1] 12/9
procedural [5] 4/20 5/15 6/22 7/5 27/5
procedurally [2] 5/12 48/1
procedure [1] 11/20
procedures [2] 29/8

**29/10**

proceed [1] 3/5
proceedings [3] 1/13 48/21 49/5
process [7] 5/5 23/24 25/8 26/1 47/5 47/5 47/11
product [21] 11/5 11/5 11/12 11/19 11/21 11/23 13/11 13/22 14/4 15/8 15/8 15/10 16/12 30/18 37/9 37/17 40/22 40/24 44/19 44/19 44/23 47/2
products [12] 12/2 12/14 14/16 15/9 16/20 39/18 43/22 44/12 44/12 44/13 44/15 44/22
program [1] 47/9
prohibits [1] 36/22
projections [1] 30/5
promise [1] 39/12
promised [1] 23/8
prongs [1] 36/13
proper [2] 27/8 48/1
propose [1] 36/2
proposed [1] 37/15
prosecuting [1] 7/25
protect [1] 41/24
PROTECTION [1] 2/4
provide [6] 5/18 8/10 18/6 20/21 22/17 34/22
provided [1] 27/7
provision [1] 7/16
provisions [1] 15/23
Publisher's [1] 29/15
Publishing [1] 29/14
pulls [1] 20/14
purposes [1] 9/4
pursuant [1] 49/2
pursue [5] 5/23 5/24 6/11 7/17 7/18
pursuing [2] 6/3 7/13
put [5] 24/3 38/6 39/8 39/21 44/21

**Q**

question [12] 5/25 6/2 10/2 10/4 11/2 11/12 12/7 12/11 16/24 41/21 42/6 44/4
questions [5] 21/25 26/13 26/22 42/1 44/9
quote [3] 23/23 29/5 39/4

**R**

raises [1] 3/20
RAMÍREZ [1] 1/4
re [1] 5/13
re-filed [1] 5/13
reach [1] 32/7
read [4] 26/11 36/8 38/10 41/6
reading [5] 8/12 8/18 36/21 37/25 38/7
real [4] 5/21 6/4 6/16 6/19
really [1] 6/21 16/12 33/5
reason [3] 13/24 36/2 38/3
reasonable [2] 35/12

**39/9**

reason [5] 4/18 7/8 15/19 19/10 44/18
rebut [1] 26/15
receive [3] 17/8 18/1 18/2
received [6] 4/2 4/3 17/23 28/10 28/12 28/13
receives [1] 18/1
recognition [1] 9/19
recognizing [1] 38/20
recommendation [1] 28/15
record [6] 3/6 6/7 7/23 20/6 34/9 36/5
recount [1] 28/18
recounts [1] 28/15
recurring [15] 4/4 13/4 13/6 20/22 22/18 23/9 23/11 23/14 23/23 24/5 24/7 24/8 26/8 41/11 41/13
reference [2] 5/17 40/8
referenced [2] 46/24 48/4
references [1] 46/11
referencing [4] 14/2 14/3 20/19 26/10
refusal [1] 5/7
regard [2] 27/3 28/4
regarding [2] 26/20 33/14
regardless [3] 37/2 37/10 37/18
regime [1] 37/14
regularly [1] 40/2
regulations [1] 49/7
relate [2] 38/10 45/21
related [9] 16/21 28/10 28/11 28/14 28/16 28/17 28/19 37/9 37/17
relates [6] 28/16 37/3 37/11 37/19 42/23 45/13
relating [1] 13/16
relevant [2] 46/25 47/20
relies [1] 31/12
rely [1] 28/6
rendered [1] 20/11
renders [1] 24/14
reply [2] 46/1 46/3
report [2] 26/4 31/4 31/9 31/18
reported [1] 49/4
REPORTER [6] 1/20 6/6 7/22 20/5 34/8 49/12
REPORTER'S [1] 1/13
requests [4] 6/6 7/22 20/5 34/8
require [1] 37/16
required [1] 25/11
requirement [3] 35/4 35/5 37/8
requires [2] 9/10 22/9
requisite [1] 30/24
respect [7] 16/24 27/24 33/2 38/13 41/15 44/23 46/4
respectfully [3] 6/2 25/5 43/14
respond [3] 11/2 35/25

**R**

respond... [1] 42/2
response [1] 28/8
responsibility [3] 32/4
47/6 47/21
responsible [2] 30/15
47/22
Restore [1] 8/7
Restore Online [1] 8/7
retention [1] 25/19
reversible [1] 34/25
reviewed [1] 29/6
right [8] 5/7 18/3 18/3
20/14 27/22 34/15
47/20 48/7
role [1] 33/3
ROSCA [48] 8/7 8/15
8/19 9/1 9/1 9/7 9/8 9/9
9/15 9/18 10/1 13/15
13/16 13/24 13/25
14/18 15/10 15/11
15/11 15/15 15/21
15/23 16/4 19/13 20/19
22/9 24/20 26/21 35/7
36/10 36/12 36/13
36/16 36/16 36/17
36/21 36/22 36/22 37/4
37/7 37/15 37/16 38/11
41/23 42/23 43/24 44/1
47/16
ROSCA's [1] 37/8
rule [24] 5/15 5/16 5/17
5/18 5/19 5/21 6/3 6/4
6/17 15/17 15/19 15/20
30/23 34/6 34/10 34/22
35/1 36/2 36/4 36/9
36/20 37/14 37/15 38/9
Rule 15 [4] 5/16 34/6
34/10 35/1
Rule 17 [5] 5/17 5/18
5/19 6/4 6/17
rulemaking [1] 15/21
rules [2] 8/3 8/3
ruling [3] 3/22 4/7 48/17

**S**

SACV [1] 1/8
said [8] 4/6 11/4 23/2
39/3 40/15 42/25 43/15
43/16
sales [1] 25/19
same [10] 11/14 12/3
15/11 43/6 43/25 45/4
45/9 45/10 46/15 48/7
SAN [1] 2/17
SANTA [4] 1/3 1/14
1/22 2/22
SARAH [2] 2/3 3/8
sarah.williams [1] 2/7
save [1] 12/1
savings [3] 44/20 44/21
45/8
say [10] 6/22 9/12
12/22 23/21 37/15
39/10 43/18 43/19
44/11 45/2
saying [5] 7/20 12/5
31/24 32/1 41/20
says [20] 6/4 13/3 15/20
17/21 18/3 18/4 19/19
20/8 20/20 21/16 21/18
21/23 21/25 22/1 22/2

22/3 22/4 25/23 37/7
41/12
scam [1] 29/23
scheme [1] 30/4
screen [8] 17/21 17/23
28/18 38/14 38/21
39/13 39/20 47/22
screens [2] 25/12 28/14
screenshot [19] 17/16
17/17 17/17 17/18
18/11 19/17 21/14 22/8
22/14 39/5 43/5 44/6
44/7 44/10 44/25 45/2
45/12 45/15 47/15
script [1] 25/19
seated [1] 3/18
second [2] 20/25 48/11
seconds [1] 46/3
section [9] 9/9 9/16
15/12 18/19 20/20
26/21 36/15 43/23 49/2
Section 1 [1] 9/16
Section 5 [4] 15/12
26/21 36/15 43/23
Section 8403 [2] 9/9
20/20
sections [5] 36/19 36/21
36/22 38/10 38/11
see [13] 11/23 20/4
20/7 20/13 20/13 21/25
32/11 35/15 35/17
36/14 40/13 41/19
45/15
seeing [1] 40/3
seeking [3] 11/10 25/13
27/9
seeks [3] 5/6 9/1 9/15
seemed [1] 41/6
seems [1] 22/6
seen [1] 39/10
sees [2] 17/20 20/10
selectively [1] 32/13
sellers [2] 37/8 37/16
sells [1] 48/8
senior [3] 30/1 47/3
47/8
sense [3] 29/5 32/6
41/11
separate [2] 40/21
40/25
served [1] 33/4
service [5] 37/10 37/17
47/19 48/7 48/9
services [6] 14/16 29/22
29/24 30/2 36/23 47/2
sets [1] 31/8
shareholder [1] 28/7
she [5] 17/23 29/17
29/18 29/20 39/3
shoes [1] 39/9
Shoppers [1] 8/7
should [12] 4/18 5/12
7/7 7/8 8/8 16/22 19/13
20/16 22/14 27/10
27/11 44/11
show [1] 25/6
showing [1] 28/18
shown [1] 35/16
shows [2] 17/19 17/19
sic [1] 46/22
Side [1] 11/22
sign [1] 47/4
sign-up [1] 47/4

signed [1] 29/20
significant [1] 38/4
Similarly [1] 16/9
simple [18] 20/17 20/18
20/21 22/16 22/17
22/23 23/14 23/20
24/15 24/20 25/7 25/8
26/5 26/25 35/9 41/3
42/6 42/14
simply [1] 27/8 28/6
47/19
since [3] 15/17 31/14
33/4
single [1] 14/4 15/8
32/11 41/21
singular [1] 15/10
sitting [1] 7/20
situation [8] 5/20 6/15
6/17 7/5 8/4 15/7 16/1
43/6
six [2] 25/12 25/19
six-part [1] 25/19
slow [1] 20/24
small [4] 4/3 36/5 38/24
45/20
smaller [1] 23/7
so [80]
sold [2] 29/24 36/23
solicitor [1] 29/19
some [5] 8/24 33/14
41/17 44/20 44/20
somebody [2] 16/5
29/25 47/17
someone [2] 16/6 29/17
something [12] 6/20
16/2 20/15 23/17 35/11
35/11 38/12 38/25
39/21 39/22 40/2 43/15
somewhere [1] 39/24
soon [1] 16/6
sorry [3] 40/9 45/14
45/15
sort [2] 12/22 28/24
SOUTHERN [1] 1/3
speak [2] 19/5 26/15
speaking [1] 4/16
speaks [2] 38/25 40/2
specific [5] 8/13 9/25
11/8 11/9 14/22 15/3
15/22 16/18 19/13 25/4
41/10
specifically [8] 9/5 9/20
19/16 20/19 33/13
37/15 39/23 42/11
specificity [1] 12/10
specifics [1] 28/21
specify [1] 27/23
spent [1] 47/13
spoke [1] 41/7
stage [3] 22/11 33/24
34/14
standard [5] 29/3 31/1
33/23 35/13 35/22
start [1] 32/21
started [1] 39/11
starts [1] 19/18
state [1] 3/5
stated [1] 44/10
statement [1] 23/18
states [9] 1/1 1/20 3/8
5/23 6/1 34/3 44/8 49/3
49/7
statute [7] 6/14 7/16

34/2 14/3 16/15 38/8
46/23
statutory [3] 7/16 8/16
36/1
stay [1] 18/5
stenographically [1]
49/4
step [1] 7/19
steps [4] 15/22 24/12
24/14 24/14
still [1] 34/11
stop [6] 20/21 22/18
23/8 23/23 24/7 41/13
stops [1] 23/11
strategies [1] 30/16
Stratics [1] 31/14
STREET [4] 1/21 2/5
2/11 2/16
strong [1] 40/5
strongly [1] 34/24
stuff [1] 48/6
submission [1] 48/16
subpart [4] 9/9 19/24
20/20 22/13
subscribe [12] 11/16
11/18 11/20 11/21
11/24 12/6 12/8 16/2
19/19 19/22 43/8 45/5
subscribed [1] 43/4
subscription [43] 9/15
9/17 9/22 10/5 11/6
11/13 12/3 13/17 13/21
14/5 14/10 14/11 14/13
15/4 15/6 15/6 16/3
16/10 16/11 16/19
16/21 19/15 19/15
19/18 19/23 25/13
25/14 27/2 30/17 38/2
38/4 39/11 40/21 41/1
43/16 44/1 44/24 45/2
47/7 47/9 47/18 48/8
48/12
subsequent [1] 6/18
subsequently [1] 16/11
substituted [3] 4/21
7/19 34/3
substituting [1] 5/20
such [1] 33/14
sue [1] 6/9
sued [1] 30/1
sufficient [7] 22/11
22/13 28/6 31/6 31/6
32/2 32/3
sufficiently [1] 47/17
SUITE [2] 1/21 2/5
summoned [1] 35/5
support [3] 31/7 31/22
32/2
supports [2] 31/12
32/12
supposed [1] 35/23
sure [3] 20/7 21/2 45/16
survey [1] 28/10
surveys [1] 11/24

**T**

take [8] 5/8 5/8 21/22
23/2 39/16 43/21 45/19
48/16
taken [1] 43/21
talk [9] 10/5 13/13
13/14 16/19 22/15
24/12 37/6 42/4 42/18

talked [3] 13/18 25/16
48/23
talking [4] 16/2 27/4
37/13 47/14
talks [10] 8/9 15/19
19/3 19/8 20/17 22/21
33/4 38/19 39/23 40/4
tangible [1] 8/2
telemarketing [1] 29/18
telling [1] 24/21
tells [1] 35/13
tentative [3] 3/22 4/7
term [9] 8/25 10/2 10/4
11/5 19/22 37/2 37/11
37/19 37/19
terms [36] 8/14 8/17
9/11 9/17 9/19 9/21
10/10 10/13 10/14
10/14 10/16 10/20
10/23 13/16 13/24 14/8
14/20 14/20 15/2 15/3
16/18 17/1 19/11 21/7
37/1 37/3 37/9 37/11
37/22 37/23 37/24 38/1
38/7 42/21 43/1 43/2
tethered [1] 18/9
text [6] 9/10 36/1 36/8
38/8 38/21 38/23
than [11] 9/23 14/6
14/23 15/7 15/16 22/20
23/7 32/12 36/10 41/16
43/5
Thank [12] 4/9 4/13
24/18 26/18 26/19
32/16 41/25 42/3 45/23
48/14 48/18 48/19
that [313]
that's [54]
their [26] 5/18 6/9 11/10
13/4 16/8 17/4 17/24
17/24 18/14 21/14
22/23 23/1 23/6 23/10
23/13 23/18 24/9 24/9
30/4 30/5 30/7 32/11
32/14 35/19 35/25
47/19
them [11] 7/17 11/17
11/17 11/17 11/18 23/8
25/19 29/25 31/15
32/13 32/15
themselves [2] 8/3 8/3
then [22] 8/11 8/13 18/8
19/4 21/19 21/21 21/23
21/25 22/1 22/3 22/4
23/11 28/4 28/15 28/18
30/13 34/4 35/17 46/23
47/8 48/6 48/11
there [42] 5/15 6/15
6/23 6/24 7/25 8/16
8/17 8/18 9/6 10/7 10/9
10/18 11/15 12/8 12/13
12/16 12/16 12/25 15/2
15/5 16/14 18/8 21/4
21/5 26/25 27/24 31/11
31/17 32/17 33/20 34/4
35/2 35/3 40/13 40/14
41/10 42/14 43/7 43/10
43/20 46/25 47/21
there's [19] 4/19 5/4
6/17 6/17 6/23 7/5 7/7
7/21 7/24 9/3 18/8
19/22 20/2 33/5 34/22
38/22 41/21 44/19 48/6

**T**

these [9]  8/17 21/3 21/6
34/23 38/1 39/10 40/20
41/19 41/22
they [73]
they're [12]  11/17 15/14
19/12 22/25 23/10
35/15 35/18 37/13
39/19 41/20 45/4 45/9
they've [2]  10/3 36/3
thing [3]  15/11 45/4
45/10
things [5]  7/12 12/1
15/20 42/22 45/4
think [12]  6/21 13/12
25/6 26/9 26/14 26/23
27/5 28/24 30/22 32/10
38/3 43/17
thinks [1]  35/15
third [3]  29/11 39/12
44/5
third-party [1]  29/11
this [89]
THOMAS [1]  2/15
those [30]  7/9 8/1 8/7
9/17 9/21 10/3 10/3
10/6 10/13 10/13 10/14
10/16 12/1 12/1 13/15
14/15 14/19 14/20
24/14 24/14 28/20
28/22 30/3 32/7 32/9
36/15 38/17 44/22
47/21 47/22
thought [1]  34/16
thousands [4]  22/21
22/22 23/6 25/23
three [11]  8/17 9/25
9/25 10/10 10/14 10/14
14/8 14/19 24/17 36/13
47/2
three minutes [1]  24/17
through [7]  8/20 23/24
25/12 25/25 33/12
36/24 47/17
throughout [2]  33/12
35/16
thrown [1]  25/19
thus [1]  6/23
tie [1]  28/23
time [11]  7/16 12/10
12/17 17/22 24/21
27/19 27/23 28/1 33/6
41/2 45/23
time-barred [1]  27/19
timeline [1]  14/14
times [1]  25/12
tip [9]  17/4 17/23 18/5
18/7 18/8 18/21 18/21
18/22 18/22
tipping [4]  17/20 17/25
18/24 33/14
tips [2]  4/4 28/18
tire [1]  16/5
Title [1]  49/3
today [5]  4/6 5/4 34/13
39/19 48/15
today's [1]  9/4
tolling [1]  27/25
Tom [2]  3/13 4/15
tombrown [1]  2/18
too [3]  15/2 16/22 21/15
took [1]  5/9

**T**

top [3]  17/21 21/18 22/8
total [1]  40/11
totally [2]  18/9 18/22
towards [1]  44/21
trade [10]  1/6 2/2 3/4
4/25 5/5 7/13 7/14 11/3
15/12 35/10
transaction [13]  8/14
8/25 9/11 9/13 9/14
10/20 11/1 14/1 14/2
35/8 35/9 37/1 37/23
transcript [4]  1/5 1/13
49/4 49/6
transcripts [1]  1/23
trapped [1]  41/22
trial [1]  14/9
triple [1]  12/15
triple-check [1]  12/15
true [4]  38/21 40/8
40/20 49/3
truly [1]  38/6
trustee [1]  6/12
trying [1]  41/6
turn [2]  8/5 35/7
two [5]  11/19 20/12
30/3 36/14 36/15
Twombly [1]  23/19

**U**

U.S [4]  2/3 25/15 30/13
31/14
U.S.C [3]  9/9 9/16
20/20
ultimate [1]  17/8
Unable [4]  26/4 31/4
31/9 31/18
under [7]  6/3 9/7 18/3
23/19 33/23 39/6 48/16
underlying [2]  37/9
37/17
undermines [1]  22/19
understand [13]  5/4
12/12 12/14 12/15
18/14 19/21 21/4 23/13
25/2 26/11 42/25 45/8
45/11
understanding [1]  24/22
unique [1]  40/22
UNITED [8]  1/1 1/20
3/8 5/23 6/1 34/3 49/3
49/7
United States [5]  3/8
5/23 6/1 34/3 49/7
unlawful [1]  42/10
unless [2]  26/14 36/24
unreasonable [1]  30/5
until [1]  36/6
up [3]  3/25 35/14 47/4
urges [1]  39/2
us [3]  18/5 35/13 43/8
usdoj.gov [1]  2/7
use [4]  35/13 43/22
44/20 45/7
users [1]  13/5 26/1
41/12
using [1]  25/7 25/17
usurping [1]  32/13

**V**

various [1]  28/19
versus [1]  25/15 29/3
29/14 29/22 30/13
31/14 46/5

**V**

very [27]  8/21 8/23 9/9
9/18 13/13 14/20 14/22
14/24 15/7 15/7 15/18
16/18 17/21 18/2 20/1
21/18 26/9 27/10 36/9
38/25 39/14 41/6 41/16
42/20 42/21 43/4 43/5
vice [4]  47/3 47/7 47/8
47/9
views [1]  28/17
visible [1]  47/17
voluntarily [1]  38/4
vs [1]  1/8

**W**

walked [1]  16/9
want [23]  4/6 4/22 5/13
6/20 7/9 8/5 9/5 10/5
11/17 12/14 12/22
12/23 13/12 13/13 19/3
19/22 22/15 25/21
41/23 42/4 42/18 46/4
48/2
wanted [1]  4/17
wants [1]  32/10
warranty [1]  16/13
was [49]  4/21 4/25 5/4
6/19 6/25 7/3 7/10 7/13
10/7 10/8 10/12 10/16
15/1 15/5 16/4 24/4
24/6 27/6 27/6 27/7
27/24 29/13 29/17
29/21 34/4 34/4 34/18
35/3 35/5 36/1 39/3
40/7 40/11 40/13 40/14
40/14 40/16 40/16
40/25 41/10 42/19
42/22 42/23 43/3 43/7
43/8 43/8 47/3 47/5
WASHINGTON [4]  2/6
2/12 14/7 15/1
wasn't [2]  16/4 26/25
way [14]  9/2 13/11
13/22 13/22 17/22 18/4
18/22 19/12 21/4 22/7
23/13 25/17 33/17 43/8
ways [1]  8/2
we [16]  4/18 13/13
13/18 18/6 26/12 27/9
27/14 28/5 32/21 38/14
38/18 39/25 41/10 42/7
44/7 47/13
we're [2]  9/3 34/13
we've [1]  19/10
well [22]  7/11 9/13
12/21 16/15 16/15
18/23 19/25 20/1 21/13
23/10 24/24 26/2 27/14
27/20 31/1 31/5 31/15
32/11 36/3 39/1 39/15
43/3
were [29]  8/14 10/9
10/10 10/11 10/13
10/13 13/18 14/8 14/11
14/20 14/20 15/2 15/3
15/3 15/6 16/1 22/5
32/7 32/8 37/23 38/3
40/17 42/15 42/21
42/24 43/3 43/17 46/15
48/21
weren't [1]  24/7
WEST [1]  1/21
Western [2]  14/7 15/1

**W**

what [52]
what's [4]  11/21 14/14
20/2 43/9
when [15]  5/3 10/3
12/17 14/19 15/18
25/18 27/6 37/4 37/6
38/9 39/2 40/1 41/8
43/2 46/11
where [16]  6/18 15/8
16/1 18/3 18/19 20/8
22/2 25/15 32/5 34/14
39/13 39/21 39/24
41/12 46/16 46/18
whether [15]  5/25 6/2
12/7 14/9 15/5 16/5
16/12 18/21 24/4 37/2
37/11 37/18 42/6 42/23
47/16
which [35]  5/5 8/6 9/6
11/22 11/25 15/1 15/17
17/15 17/22 19/10
19/11 19/12 20/17
20/20 22/15 22/20
28/16 28/18 28/25
28/25 29/19 31/12
31/12 35/12 35/23
37/25 39/10 41/23
42/16 42/19 43/23
43/23 44/1 45/9 47/7
who [12]  11/16 11/16
13/3 43/12 43/20 43/20
43/21 46/18 47/4 47/17
47/21 48/11
who's [2]  39/9 39/10
whole [2]  41/7 48/6
whom [1]  6/12
whose [3]  6/10 6/12 7/2
why [16]  4/18 5/14 5/23
7/8 11/15 21/12 24/14
27/12 27/12 32/21
32/23 34/13 42/13
43/23 43/23 47/24
WILK [20]  2/14 3/14
4/16 7/1 8/10 19/5
26/16 27/4 27/24 27/25
28/13 28/23 32/22
32/24 33/2 33/10 33/13
33/24 34/4 35/3
Wilk's [2]  27/17 28/17
will [4]  4/8 26/15 36/6
48/16
WILLIAMS [2]  2/3 3/8
without [6]  4/1 6/10
12/18 12/18 13/6 27/8
work [1]  43/24
worked [1]  29/19
works [7]  12/20 12/22
13/11 13/22 13/23
15/15 22/7
would [21]  4/2 10/19
13/20 17/7 19/2 22/5
24/20 28/23 30/23 32/9
33/20 34/22 34/24 36/1
37/16 38/2 38/18 40/7
40/22 46/22 47/21
written [2]  15/20 48/17

**Y**

Yeah [1]  26/7
year [5]  15/2 15/18 16/3
36/6 42/19
yes [10]  4/11 17/2
18/19 19/6 21/16 23/4

**Y**

26/17 28/2 32/25 41/5
you [118]
you'd [1]  19/1
you'll [1]  7/2
you're [7]  16/12 26/2
31/24 39/14 39/15
44/12 44/16
you've [3]  21/10 26/11
45/6
your [108]
Your Honor [12]  5/4 7/3
7/6 8/13 9/23 11/1
18/19 23/4 27/16 32/25
35/10 43/5
Your Honor's [1]  48/3
yourself [1]  39/9