UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | 2:24-cv-09566-MRA-AGR | Date | September 12, 2025 |
|---|---|---|---|
| Title | *Federal Trade Commission v. Dave, Inc.* | | |

| Present: The Honorable | MONICA RAMIREZ ALMADANI, UNITED STATES DISTRICT JUDGE |
|---|---|

| Melissa H. Kunig | None Present |
|---|---|
| Deputy Clerk | Court Reporter |
| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
| None Present | None Present |

**Proceedings:    (IN CHAMBERS) ORDER DENYING DEFENDANTS' MOTION TO DISMISS [50]**

Before the Court is Defendant's Motion to Dismiss Plaintiff's First Amended Complaint. ECF 50. The Court read and considered the moving, opposing, and reply papers and held a hearing on June 30, 2025. ECF 70. For the reasons stated herein, the Court **DENIES** the Motion.

## I.    BACKGROUND[1]

The Federal Trade Commission (the "FTC") filed this case against Defendant Dave, Inc. ("Dave") on November 5, 2024. ECF 1. On December 30, 2024, the United States, acting upon notification and referral from the FTC, (hereinafter, "Plaintiff" or the "government") filed the operative First Amended Complaint ("FAC"), adding Jason Wilk ("Wilk") as a Defendant. ECF 44.

### A.    Dave's ExtraCash Advertisements

Dave operates a personal finance mobile application that offers short-term cash advances to consumers who are considered "financially vulnerable" or "financially coping." FAC ¶¶ 1, 9. Dave advertises its app as a tool that offers short-term cash advances to cover unexpected emergencies and that avoids the financial penalties that can attend them. *Id.* ¶ 13. Dave calls its advances "ExtraCash." *Id.* Wilk is the co-founder and Chief Executive Officer ("CEO") of Dave. *Id.* ¶¶ 1, 10-11. He has served as Dave's CEO since 2016, and he controls and has a key role in directing numerous decisions for Dave's operations, including the mobile app's digital

---

[1] The Court describes the factual background as alleged in Plaintiff's First Amended Complaint ("FAC") and in materials incorporated by reference in the FAC or subject to judicial notice. *See Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 998 (9th Cir. 2018).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | 2:24-cv-09566-MRA-AGR | Date | September 12, 2025 |
|---|---|---|---|
| Title | *Federal Trade Commission v. Dave, Inc.* | | |

content and design and how Dave presents itself and its offerings to consumers.  *Id.* ¶ 10.   Wilk also holds 60% of the voting power of Dave's executive stock, allowing him to control any matters submitted to shareholders, including but not limited to the election of directors.   *Id.*   Acting alone or in concert with others, Wilk "formulated, directed, controlled, had the authority to control, or participated" in the acts and practices of Dave at issue in this case.   *Id.*

Dave advertises its App to consumers through multiple channels, including online and through social media.  *Id.* ¶¶ 15, 17.   Dave's advertising promotes that consumers can "get up to $500" in a cash advance "instantly" or "in up to five minutes" simply by downloading the app. *Id.*   Dave promotes that customers pay "no interest" and "no hidden fees."  *Id.* ¶ 15.



*Id.* ¶ 17, Advertisements 1-2.

On social media, Dave's video ads often feature fictitious scenarios in which a stuffed bear representing Dave appears before an actor facing a difficult financial situation and, often through a zap of green lightning, appears to transfer $500 to the actor's smartphone.  *Id.* ¶ 17.   Phrases like "Tap for up to $500," "Get up to $500 on the spot," "instantly," and "Get cash now" appear onscreen throughout a typical video ad.  *Id.*   A voiceover during the video ad typically states, "Download Dave and get up to $500 instantly.   No interest.   No credit check."   *Id.*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | 2:24-cv-09566-MRA-AGR | Date | September 12, 2025 |
|---|---|---|---|
| Title | *Federal Trade Commission v. Dave, Inc.* | | |



*Id.* ¶ 17, Advertisements 3-4.  Several of Dave's ads promoting the ExtraCash program show screens from the user experience inviting consumers to select an amount up to $500.



*Id.* ¶ 19, Advertisements 7-8.  Other Dave ads depict fictitious scenarios in which actors are shown learning about the app and immediately receiving $500.  The Complaint alleges:

> In one ad, for example, an actor is shown at a gas pump, unable to afford gas for his car.  A stuffed bear appears, holding a phone that prominently shows "$500" on its screen.  The bear introduces himself as "Dave" and explains that it can get the actor "up to $500 of your future money, now."  The actor asks, "$500? Instantly?"  The bear confirms: "instantly."  When the actor looks at his phone, the screen reads,

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | 2:24-cv-09566-MRA-AGR | Date | September 12, 2025 |
|---|---|---|---|
| Title | *Federal Trade Commission v. Dave, Inc.* | | |

"Your $500 is on its way."   A voiceover in ads states, "Download Dave and get up to $500 instantly.   No interest.   No credit check."

*Id.* ¶ 20.   In another video ad, a stuffed bear sits silently under two lines of text that read "Get up to $500 instantly" and "Download Dave now."   *Id.* ¶ 21.   Next, after a door falls off a cabinet in the background, the bear says, "Expect the unexpected.   Download Dave.   Get up to $500 instantly, when you need it most."   *Id.*   The next screen contains a smartphone prominently displaying the text "$500," the Dave logo, and the text "Get your future money now.   No interest. No credit check."   *Id.*

Consumers can download the Dave app to their smartphones through Apple's App Store or the Google Play store.   *Id.* ¶ 24.   In the Google Play store, a search for Dave's app will pull up a listing that invites consumers to an "[a]dvance up to 500 dollars."   *Id.*   A consumer who swipes through the app listing's carousel of advertising screens will again see the claim that consumers can receive "up to $500 in 5 minutes or less."   *Id.*   Similar content appears in the Apple's App Store.   *Id.*   Once consumers download and open the Dave app on their smartphones, they again encounter screens promoting instant advances of up to $500.   *Id.* ¶ 25. For example, Dave presented consumers with a welcome screen that tells them, "Get up to $500 when you need it*" and shows a smarphone screen displaying an available balance of $500.   *Id.* This screen includes a large, prominent button that invites consumers to "Sign up for Dave."   *Id.*



UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | 2:24-cv-09566-MRA-AGR | Date | September 12, 2025 |
|---|---|---|---|
| Title | *Federal Trade Commission v. Dave, Inc.* | | |

*Id.* ¶ 25, App Screenshot 1.

### B. Dave's ExtraCash Enrollment Process

Consumers who download and open the app are ushered through a series of enrollment screens in which consumers must, among other things, create a sign-in ID using their email address and enter their name and phone number. *Id.* ¶ 26. Dave then presents many consumers with a prompt—"What can we help you with today?"—for which one of the responses is "Accessing up to $500." *Id.* A consumer who selects that option is taken to a screen which states, "Get an ExtraCash advance up to $500*." *Id.*



*Id.* ¶ 26, App Screenshot 2. After a consumer taps "Get started"—the green button at the bottom of the example screen above—Dave prompts the user on the next screen, headed "Connect your primary bank," to provide their bank account information in order to "get approved for the highest amount." *Id.* ¶ 27.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | 2:24-cv-09566-MRA-AGR | Date | September 12, 2025 |
|---|---|---|---|
| Title | *Federal Trade Commission v. Dave, Inc.* | | |



*Id.* ¶ 27, App Screenshot 3.

When a consumer taps the green "Connect account" button in the example screen above, Dave solicits the user to provide information about their bank account. *Id.* ¶ 30. Dave uses this information to make decisions about how much, if any, cash to advance the consumer. *Id.* Dave also uses its access to consumer bank accounts to collect on advances and charge consumers directly. *Id.* After a consumer grants Dave access to their bank account and completes the enrollment process, Dave determines whether it will offer the consumer an advance. *Id.* ¶ 31. Regardless of whether Dave offers or declines to offer an advance to the consumer when they first complete the enrollment process, Dave continues to represent to enrolled app users—both through the app and through other channels such as emails—that they can return to the app to get cash advances of "up to $500." *Id.* Each time the consumer later uses the app to access the home screen or the "ExtraCash" section, Dave makes a new determination of whether to offer the consumer an advance. *Id.* If Dave offers the consumer an advance, it displays the advance amount on the screen. *Id.*

After accepting a cash advance and selecting a transfer method, Dave typically presents consumers with a screen that it uses to charge the user a tip. *Id.* ¶ 46. The screen is headed "Your advance is on its way!" *Id.* In smaller text just below, the screen states "Your optional tip helps us stay in business. We also provide a meal for every % you tip." *See id.* A large green button labeled "Thank you!" appears at the bottom of the screen. *Id.* ¶ 47.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | 2:24-cv-09566-MRA-AGR | Date | September 12, 2025 |
|---|---|---|---|
| Title | *Federal Trade Commission v. Dave, Inc.* | | |



*Id.* ¶ 46, App Screenshot 4.

### C.    Dave's Purported Misrepresentations

#### 1.    *Actual Cash Advance Amounts*

Despite Dave's claims that consumers will receive cash advances of up to $500, few customers are offered anything close to that amount, if Dave offers them any advance at all.    *Id.* ¶ 34.   In the first 14 months after Dave began advertising advances of up to $500, Dave offered new users a $500 advance only 0.002% of the time, *i.e.*, a rate of less than 1 in 45,000.   *Id.*   More than 75% of the time, Dave did not offer first-time customers any advance at all.   *Id.* ¶ 35.   On average, more than 40% of new users were unable to obtain any cash advance offer from Dave in a calendar month.   *Id.*   Of those new users who received advance offers, about 0.009% of those offers—or less than 1 in 10,000—were for $500 and only 0.56%, or about 1 in 175, were for at least $250.   *Id.*   Returning Dave users also received offers for much less than the maximum amount advertised.   *Id.* ¶ 36.

Neither Dave's ads nor its app store content informs consumers that very few users receive cash advances for the full advertised amount.   *Id.* ¶ 36.   The only references to the amount of consumers' advances are typically in small print, buried in block text, use vague or confusing language, and/or are found in obscure locations.   *Id.*   Internal documents reflect that consumers believe they will be offered Dave's advertised advance amounts and are surprised to receive less.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | 2:24-cv-09566-MRA-AGR | Date | September 12, 2025 |
|---|---|---|---|
| Title | *Federal Trade Commission v. Dave, Inc.* | | |

*Id.* ¶ 40.   A Dave internal analysis of customer service data found that "Low advance amount," "Low advance limits and approval," and "Advance request denied" were among the top "drivers" of consumer contacts with customer service.   *Id.*   Similarly, a Dave internal survey found that "Not enough money" was a top source of dissatisfaction for all Dave users.   *Id.*   Wilk received and reviewed many consumer complaints and internal Dave analyses reflecting consumer dissatisfaction.   Multiple analyses performed by Dave have found that of customers who reach out to cancel their accounts, "most don't qualify for an advance or get a smaller than expected advance."   *Id.* ¶ 41.

2.   ***Undisclosed "Express Fee" for "Instant" Cash Advance***

Although Dave advertises that consumers will receive funds "instantly," "on the spot," "now," and "in under 5 minutes," Dave requires consumers to wait two to three business days before receiving their advance unless they pay an "Express Fee" of $3 to $25.   *Id.* ¶ 42.   Neither Dave's ads nor its app store content informs consumers that they must pay the Express Fee to receive funds quickly, as advertised.   *Id.* ¶ 45.   The only references to the Express Free in Dave's advertising or in the app stores appears in small print, are buried in block text, use vague or confusing language, and/or are found in obscure locations, and do not disclaim that unless a consumer pays the Express Fee, Dave will require them to wait several days before receiving their advance.   *Id.* ¶ 45.   In the enrollment process, the "Connect your primary bank" example screen above contains the statement "Get money instantly for a small fee," but it does so in text that is smaller and fainter than either the screen's bold-print heading or the large green "Connect account" button.   *Id.* ¶ 44.   This statement does not inform consumers that, if they do not pay the unspecified "small fee," Dave will require them to wait several days before receiving their advanced funds.   *Id.*   It also does not inform the consumer of the amount of the fee.   *Id.*   An internal Dave presentation received by Wilk and others at the company noted in a discussion of the screen that demands an Express Fee in order to receive "money now," that "[w]hat we promised [to consumers] is not what they see."   *Id.* ¶ 43.   The presentation recommended that Dave "[s]et expectations much earlier on [as to] the true cost of the money [consumers] are borrowing."   *Id.*   Dave did not adopt that recommendation.   *Id.*

3.   ***Charitable "Tip"***

Consumers who accept an advance from Dave are prompted to "tip" Dave to help Dave "stay in business" and "provide a meal for every % of your tip."   *Id.* ¶ 46, App Screenshot 4. Consumers who simply tap the "Thank you!" button shown in the "Your advance is on its way!" example screen above are charged an extra 15% of their advance.   *Id.*   Many consumers who tap "Thank you" are surprised to learn that Dave has charged them an extra 15% of their advance.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | 2:24-cv-09566-MRA-AGR | Date | September 12, 2025 |
|---|---|---|---|
| Title | *Federal Trade Commission v. Dave, Inc.* | | |

*Id.* ¶ 47.   Dave does not mention the charge in its advertising and consumers who open the Dave app for the first time and proceed directly to attempt to take an advance do not encounter any mention of this charge, or how to avoid being subject to it, before granting Dave access to their bank accounts.   *Id.*

Many consumers understood the extra charge to be an unavoidable part of Dave's advance process.   *Id.* ¶ 48.   An internal Dave analysis of customer service data states that "[m]embers are still unaware they left a tip when they advance" and that consumers are "upset" about these charges.   *Id.* ¶ 49.   The analysis notes that consumers are "having a hard time" avoiding being charged Dave's preset "tip" of 15% and recommend that Dave "provide better visibility" about how to avoid the charge.   *Id.*   Dave did not implement the recommendation.   *Id.*   An internal Dave presentation describes these screens as a "[d]ark" user interface and states that "selecting custom tip is unnoticeable and some didn't know this was possible."   *Id.* ¶ 50.   The presentation recommends that Dave "[m]ake sure to have the option to not tip be clear."   *Id.*   An internal Dave study found that "Didn't want to pay tip" was one of the top sources of user dissatisfaction, and another Dave document lists "[n]o clear option to not tip" as a "Pain-Point[]" for consumers. *Id.* ¶ 51.   That same document recommends, as a top of the list of "Future Initiatives," adding a "[n]o tip button."   *Id.*   Dave did not add this button.   *Id.*   Several Dave employees who collected and examined app store reviews discussed the fact that customers do not understand how to edit their tip amount or how to add no tip in the absence of a no-tip button.   *Id.* ¶ 52.   Dave users find it impossible to change their "tip" amount after pressing the "Thank you" button or entering a custom "tip."   *Id.* ¶ 53.   There is no easy mechanism to "update" the tip amount in the app, and under Dave's terms and conditions, users are told that they "will be unable to update [their] tip in the app if the settlement has started."   *Id.*

Dave also represents that based on the consumer's percentage tip, Dave will pay for or donate a specified number of "healthy meals" for children in need.   *Id.* ¶ 54.   The "Your advance is on its way!" example screen above depicts a colorful image of a smiling cartoon child holding a spoon who is surrounded by various food items.   *Id.* ¶ 55.   Beneath the images are three boxes labeled "10 Healthy Meals," "15 Healthy Meals," and "20 Healthy Meals."   *Id.* ¶ 56.   If the user taps on "20 Healthy Meals," the number of food items around the child increases to 12; whereas if the user taps on "10 Healthy Meals," the number of food items around the child drops.   *Id.*

To avoid paying a "tip," consumers must tap the "Leave a custom tip" button, which is approximately half as long as the "Thank you!" button and colored white against a white background, unlike the "Thank you! Button" which is colored green against a white background. *Id.* ¶ 58.   If the consumer taps this button, the three labeled boxes are replaced with a horizontal "slider."   *Id.*   Initially, above the slider in large, bold-print text appear the words "15 Healthy

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | 2:24-cv-09566-MRA-AGR | Date | September 12, 2025 |
|---|---|---|---|
| Title | *Federal Trade Commission v. Dave, Inc.* | | |

Meals" and an image of the same cartoon child holding a spoon surrounded by 10 food items.  *Id.*
If the consumer moves the slider to the right, the number of "Health Meals" displayed increases
incrementally up to 25, and as the count of "Healthy Meals" increases, more food items appear
around the cartoon child.  *Id.* ¶ 59.  If the consumer moves the slider to the left, the number of
"Healthy Meals" displayed decreases incrementally down to zero.  *Id.* ¶ 60.  As the slider moves
to the left and the count of "Healthy Meals" decreases, the food items surrounding the child
disappear.  *Id.* ¶ 60.  If the count of "Healthy Meals" reaches two, the only items around the
child are bread and water.   When the user moves the slider fully to the left to reduce the count of
"Healthy Meals" to zero, the slider turns from green to red, the text of the large green button at
the bottom of the screen changes from "Thank you!" to "No tip," and the image of the child is
replaced by an image of an empty plate with a fork and spoon.  *Id.* ¶ 61.

These design elements lead consumers to believe that, if the consumer permits Dave to
charge a large "tip," Dave will pay for or donate a specified number of meals to children in need,
based on the size of the "tip."  *Id.* ¶ 62.  The "frequently asked questions" material posted to
Dave's website poses the question, "What are tips and who do they benefit?"  *Id.* ¶ 63.  Dave's
answer states that "Dave has partnered with" a "hunger-relief organization to maximize your
impact."  *Id.*  It also claims, "This year, Dave is working to provide at least $250,000" for the
charity's "network of food banks serving every county in America . . . .   Your contribution will
help feed 44 million people including more than 13 million children facing hunger in the U.S."
*Id.*

In actuality, Dave does not pay for or donate a specified number of meals to children in
need based on its user "tips."  *Id.* ¶ 64.  Instead, for each percentage point of a "tip" charged to
a consumer, Dave donates only 10 cents and keeps the rest.  *Id.*  For instance, in the "Your
advance is on its way!" example screen above, if consumers were to tap the "Thank you!" button,
Dave would not pay for or donate "15 Healthy Meals" as stated in bold print surrounded by images
of numerous food items but instead donate only $1.50 to a hunger relief organization.  *Id.* ¶ 64.
Dave's internal documents acknowledge that this content is misleading.  *Id.* ¶ 65.  For example,
a Dave executive described the "Healthy Meals" content to Wilk as involving a "dark / guilt
inducing design pattern" that helps drive revenue.  *Id.*  Two Dave executives similarly described
the interface as a "dark pattern" and that the "hungry child def[initely] leaves us open for
criticism" and exhibits "questionable design decisions."  *Id.*  An internal document notes that
the "Healthy Meals" content has been "called out by industry advocates and media publications
as manipulative and misleading."  *Id.*

Dave knows that this "Healthy Meals" content affects consumer behavior.  *Id.* ¶ 66.  For
example, Dave ran an experiment in which some consumers used a version of the app that did not

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | 2:24-cv-09566-MRA-AGR | Date | September 12, 2025 |
|---|---|---|---|
| Title | *Federal Trade Commission v. Dave, Inc.* | | |

include the "Healthy Meals" content. Without this content, the percentage of new users who were charged a "tip" dropped by about a third and overall "tip" revenue dropped by almost a quarter. *Id.* An internal Dave analysis found that although the sample size involved was small, the experiment nevertheless caused a substantial fall in Dave's monthly revenue, and it recommended that Dave immediately resume the "Healthy Meals" content. *Id.* Similarly, Dave ran an experiment in which some users were shown a version of the interface that did not include the initial screen with three "Healthy Meals" boxes but instead taken directly to one of several variations of the slider screen. *Id.* ¶ 67. An internal Dave analysis of this experiment also found that the number of consumers charged for a "tip" and the amounts of those charges both fell, especially for the variations that eliminated any "Healthy Meals" content from the slider screen. *Id.* ¶ 68. A subsequent internal Dave analysis expressed concern about the drop in revenues resulting from the changes and recommended that Dave resume showing "Healthy Meals" content to all users. *Id.* Wilk concluded that Dave's experimentation showed its strategy of presenting "tips" as connected to the provision of healthy meals was important to preserving the company's revenue. *Id.* ¶ 69. Dave continues to present screens with "Healthy Meals" representations to the vast majority of consumers to whom it offers a cash advance. *Id.*

### 4. Undisclosed Monthly "Membership" Fee

Dave charges consumers who connect their bank accounts to its app an automatically recurring monthly fee. *Id.* ¶ 70. Dave does not allow users to get a cash advance without first enrolling in this automatically recurring charge. *Id.* Dave's user interface draws consumers' attention towards continuing with Dave's services and away from the terms of those services through various design elements, including the placement, color, text size, and action buttons. *Id.* ¶ 28. In the "Connect your primary bank" example screen above, for example, attention is drawn to the bright action button "Connect account" and away from the light-colored text above it, which disclaims that "Dave charges a membership fee of $1 per month to connect your bank." *Id.*; *see also id.* ¶ 74. Consumers are surprised to learn that Dave enrolls all users who tap the "Connect account" button in an automatically renewed subscription, whether or not they are offered a cash advance. *Id.* ¶ 72. An internal Dave document, for example, acknowledged that "[p]eople don't know they're paying [the] $1" membership fee and it can be "a surprise to members" to discover that Dave has taken $1 each month from their bank accounts. *Id.* Similarly, an internal Dave analysis of a customer survey notes that "our members say" that Dave "doesn't tell you it's going to charge a monthly fee when you first sign up . . . ." *Id.* Dave's customer service has received, on a monthly basis, hundreds of communications from consumers on the topic "What is the $1 charge?" *Id.* Wilk and others at Dave have received complaints from consumers that they did not agree to be charged the membership fee. *Id.* ¶ 73.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | 2:24-cv-09566-MRA-AGR | Date | September 12, 2025 |
|---|---|---|---|
| Title | *Federal Trade Commission v. Dave, Inc.* | | |

### 5.    *Insufficient Disclaimers*

Even where Dave accompanies its claims with footnotes or additional text behind links, consumers who review that information are still not informed of key details.  *Id.* ¶ 29.  For example, if a consumer were to tap on and review the content hidden behind either the "See terms" link on the "Get up to $500 when you need it*" example screen or on the "See how ExtraCash works" link on the "Get an ExtraCash advance up to $500*" example screen, the content would not reveal the following information: (i) that Dave offers cash advances at or near the amounts advertised to very few consumers, with some being offered no advance at all; (ii) that consumers cannot obtain cash advances without waiting two to three business days unless they pay an additional fee, and the details of that fee; (iii) the steps consumers must take to avoid being subject to an additional charge that Dave refers to as a "tip"; and (iv) that Dave will charge an automatically recurring membership subscription fee.  *Id.*

### 6.    *Simple Mechanisms for Cancellation*

Consumers who realize that Dave is charging them monthly and want to stop the recurring charges have often been unable to find a simple mechanism to do so.  *Id.* ¶ 76.  From at least August 2021 through November 2022, Dave did not allow *any* consumers to stop the recurring charge through an in-app process if they had also opened a Dave bank account, which Dave began requiring of all new consumers in early 2022 if they wanted advances.  *Id.* ¶ 77.  Even after November 2022, Dave failed to give many users an in-app cancellation option.  *Id.*  Dave also does not inform consumers how to stop the recurring charges, including the options for cancellation, the terms of those cancellation options, or where any in-app process for cancellation can be found.  *Id.* ¶ 78.  Dave has also refused to cancel subscriptions unless the consumer's account is settled.  *Id.*  An internal Dave analysis of consumer complaints made to the Better Business Bureau ("BBB") flagged "inability to cancel easily within the app" as a top driver of complaints, noting that consumers are "upset that there isn't a self-cure option in-app."  *Id.* ¶ 79.  Even Dave managers struggle to understand the cancellation mechanisms.  *Id.*  For example, in one internal exchange, two senior managers at Dave discussed the option to temporarily stop the recurring charge by "pausing" an account, but voiced uncertainty about whether that is in fact an option.  *Id.* ¶ 80.

Consumers who are unable to find an in-app process sometimes send a message to Dave's customer service requesting to cancel the charge.  *Id.* ¶ 81.  Instead of stopping the recurring charge, Dave will undertake one or more of the following: "(a) point the consumer to an in-app process that may or may not be available for the consumer; (b) deny that Dave customer service has the ability to stop the charge for the consumer; or (c) demand, in order to cancel or 'pause'

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | 2:24-cv-09566-MRA-AGR | Date | September 12, 2025 |
|---|---|---|---|
| Title | *Federal Trade Commission v. Dave, Inc.* | | |

the charge, that the consumer provide multiple points of personal and/or financial account information." *Id.*    Dave has also failed to respond to requests to stop recurring charges. *Id.* ¶ 82.   The internal Dave analysis of BBB complaints also noted that consumers who want to stop the charges often abandon these efforts in the face of Dave's demands for sensitive information. *Id.* ¶ 83.   For one customer who wanted to "pause" her account, it took 29 days, nine messages to customer support, and a threat to contact the BBB to get Dave to stop charging her. *Id.*

Dave's in-app processes for cancellation, even when identified, require a consumer starting on the app's main screen to take at least nine separate steps to reach and complete the process. *Id.* ¶ 84.   In part of this process, consumers are diverted from cancellation if they select the most prominent option on the screen. *Id.*   One Dave executive admitted that the design of the cancellation app functionality is "not good" and was "bad," in a response to a colleague's description that the functionality is "purposefully confusing and hard." *Id.*   In some instances, Dave has altogether refused to cancel the recurring charges. *Id.* ¶ 85.   In July 2020, Dave informed its customer service team that consumers who are eligible to pause are those "who *do not* have an open advance or an advance with pending advance payment." *Id.*   In the years following, Dave's customer service representatives have repeatedly informed consumers that they cannot "pause" or cancel to stop the recurring charges because Dave claimed they had an unpaid advance. *Id.*

**D.    Causes of Action**

On these factual allegations, the government brings two counts of violations of Section 5(a) of the Federal Trade Commission Act (the "FTCA"), 15 U.S.C. § 45(a), for (1) misrepresentations regarding cash advances and (2) misrepresentations regarding "tipping" charges. *Id.* ¶¶ 89-98.   The government also brings three counts of violations of the Restore Online Shoppers' Confidence Act ("ROSCA"), 15 U.S.C. §§ 8401 *et seq.*, for (1) failure to provide clear and conspicuous disclosures, (2) failure to obtain express informed consent, and (3) failure to provide simple mechanisms to stop recurring charges. *Id.* ¶¶ 99-116.   The government seeks, *inter alia*, a permanent injunction and civil penalties under Section 5(m)(1)(A) of the FTCA, 15 U.S.C. § 45(m)(1)(A), for each violation of ROSCA. *Id.* ¶¶ 118-120.

**E.    Procedural History**

On January 28, 2025, the Court granted Defendants' unopposed motion to file a combined motion to dismiss.   ECF 47.   On February 28, 2025, Defendants filed the instant Motion to Dismiss the FAC, ECF 50, accompanied by a Request for Judicial Notice, ECF 51 ("RJN").   On April 7, 2025, the government filed its Opposition.   ECF 61.   On April 21, 2025, Defendants filed their Reply.   ECF 62.   Following several continuances, ECF 60, 63, 65, 67, the Court

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | 2:24-cv-09566-MRA-AGR | Date | September 12, 2025 |
|---|---|---|---|
| Title | *Federal Trade Commission v. Dave, Inc.* | | |

ultimately heard the matter and took it under submission on June 30, 2025, ECF 70.

## II.   <u>LEGAL STANDARD</u>

Federal Rule of Civil Procedure 12(b)(6) permits dismissal for failure to state a claim upon which relief can be granted.   "On a motion to dismiss, all material facts are accepted as true and are construed in the light most favorable to the plaintiff."   *Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136, 1140 (9th Cir. 2012) (citing *Coal. for ICANN Transparency, Inc. v. VeriSign, Inc.*, 611 F.3d 495, 501 (9th Cir. 2010)); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).   Dismissal is appropriate only where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory.   *See Johnson v. Riverside Healthcare Sys., LP*, 534 F.3d 1116, 1121 (9th Cir. 2008).   In other words, a complaint must "state a claim to relief that is plausible on its face."   *Twombly*, 550 U.S. at 570.   "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."   *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (per curiam). This is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."   *Id.* at 679.

## III.   <u>DISCUSSION</u>

### A.   **Defendants' Request for Judicial Notice**

Defendants request that the Court take judicial notice of three of Dave's SEC filings: (1) a December 31, 2024, Form 8-K and the enclosed press release, (2) a February 20, 2025, Form 8-K and the enclosed press release, and (3) a Form 10-K for the Fiscal Year that ended on December 31, 2022.   RJN at 3.   The government opposes on the grounds that the propositions purportedly established by the SEC filings are beyond the allegations in the FAC and because the propositions themselves cannot be "accurately and readily determined from" Dave's own statements and press releases, and because those are not "sources whose accuracy cannot be reasonably questioned." ECF 61 at 38.

In general, a district court may not consider materials outside the pleadings when assessing the sufficiency of a complaint under Rule 12(b)(6) without converting the motion into a motion for summary judgment under Rule 56.   *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 998 (9th Cir. 2018) (citing *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001)); *see also* Fed. R. Civ. P. 12(d).   One exception to this rule is judicial notice under Federal Rule of Evidence 201, which "permits a court to notice an adjudicative fact if it is 'not subject to reasonable dispute.'"   *Khoja*, 899 F.3d at 999 (quoting Fed. R. Evid. 201(b)).   "A fact is 'not subject to reasonable dispute' if it is 'generally known,' or 'can be accurately and readily determined from

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | 2:24-cv-09566-MRA-AGR | Date | September 12, 2025 |
|---|---|---|---|
| Title | *Federal Trade Commission v. Dave, Inc.* | | |

sources whose accuracy cannot reasonably be questioned.'" *Id.* (quoting Fed. R. Evid. 201(b)(1)-
(2)). "A court may take judicial notice of matters of public record without converting a motion
to dismiss into a motion for summary judgment," *Lee*, 250 F.3d at 689, but it "cannot take judicial
notice of disputed facts contained in such public records," *Khoja*, 899 F.3d at 999. Thus, a court
must "consider—and identify—which fact or facts it is noticing . . . . Just because the document
itself is susceptible to judicial notice does not mean that every assertion of fact within that
document is judicially noticeable for its truth." *Id.*

Here, Defendants cite the SEC filings in support of two propositions: (1) that "Dave
recently transitioned to a simplified mandatory fee structure that eliminates optional tips and
express fees for the Company's ExtraCash product;" and (2) that Dave had "every reason to
believe that its practices were compliant" because the Consumer Financial Protection Bureau
("CFPB") "opened and closed an investigation—and declined to recommend enforcement action
against Dave." *See* ECF 50-1 at 11 n.1, 32. The Court agrees with the government that neither
proposition is a judicially noticeable fact. Notably, with respect to the CFPB proposition,
Defendants cites at length its own statements that it "provided the CFPB with all information and
documents required" and that "the CFPB staff notified us that it currently did not intend to
recommend that the CFPB take any enforcement action." *Id.* at 32. These statements are subject
to reasonable dispute. For one, they refer to acts taken and communications made in private, not
matters of general knowledge. Nor can their veracity be accurately and readily determined.
Even if Defendants' factual propositions are not subject to reasonable dispute, they do not alter
the Court's findings and therefore are not susceptible to judicial notice. *See Waterkeeper v. Clay*,
No. 18-CV-00333-DOC-DFM, 2023 WL 6787811, at *1 (C.D. Cal. Aug. 25, 2023) ("An
irrelevant fact cannot be classified as an adjudicative fact for purposes of Rule 201.").
Accordingly, the Court **DENIES** Defendants' RJN.

**B.    Section 5(a) of the FTCA**

Section 5(a) of the FTCA makes it unlawful to engage in "unfair or deceptive acts or
practices in or affecting commerce" that causes harm to consumers. 15 U.S.C. § 45(a)(1).
"An act or practice is deceptive if first, there is a representation, omission, or practice that, second,
is likely to mislead consumers acting reasonably under the circumstances, and third, the
representation, omission, or practice is material." *F.T.C. v. Stefanchik*, 559 F.3d 924, 928 (9th
Cir. 2009) (quoting *F.T.C. v. Gill*, 265 F.3d 944, 950 (9th Cir. 2001). A representation "may be
likely to mislead by virtue of the net impression it creates even though the [representation] also
contains truthful disclosures." *F.T.C. v. Cyberspace.Com LLC*, 453 F.3d 1196, 1200 (9th Cir.
2006)). "A misleading impression created by a solicitation is material if it 'involves information
that is important to consumers and, hence, likely to affect their choice of, or conduct regarding, a

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | 2:24-cv-09566-MRA-AGR | Date | September 12, 2025 |
|---|---|---|---|
| Title | *Federal Trade Commission v. Dave, Inc.* | | |

product." *Id.* at 1201 (quoting *Matter of Cliffdale Assocs., Inc.*, 103 F.T.C. 110, 165 (1984)). Here, the government alleges that Defendants violated Section 5(a) based on (a) their representations that consumers can receive a cash advance of "up to" $500 instantly and without hidden fees and (b) their representations related to the "tipping" feature. FAC ¶¶ 91-98.

> ### 1.    *Applicability of Heightened Pleading Standard*

The parties dispute whether the heightened pleading standard for fraud claims under Rule 9(b) applies to Section 5(a) claims. ECF 50-1 at 17-18; ECF 61 at 11-12. Under Federal Rule of Civil Procedure 9(b), "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b). This heightened pleading standard serves two principal purposes: (1) "to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged" and (2) to "protect[] against false or unsubstantiated charges." *United States v. United Healthcare Ins. Co.*, 848 F.3d 1161, 1180 (9th Cir. 2016). As a result, the Ninth Circuit has explained that "[b]road allegations that include no particularized supporting detail do not suffice, but statements of the time, place and nature of the alleged fraudulent activities are sufficient." *Id.* (internal citations and quotation marks omitted).

"Rule 9(b) applies when (1) a complaint specifically alleges fraud as an essential element of a claim, (2) when the claim 'sounds in fraud' by alleging that the defendant engaged in fraudulent conduct . . . and (3) to any allegations of fraudulent conduct, even when none of the claims in the complaint 'sound in fraud.'" *Davis v. Chase Bank U.S.A., N.A.*, 650 F. Supp. 2d 1073, 1089-90 (C.D. Cal. 2009) (citing *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1102-06 (9th Cir. 2003)). To ascertain whether a complaint sounds in fraud, courts "normally determine, after a close examination of the language and structure of the complaint, whether the complaint 'allege[s] a unified course of fraudulent conduct' and 'rel[ies] entirely on that course of conduct as the basis of a claim.'" *Rubke v. Capitol Bancorp Ltd.*, 551 F.3d 1156, 1161 (9th Cir. 2009) (quoting *Vess,* 317 F.3d at 1103-04).

The Ninth Circuit has not applied Rule 9(b)'s heightened pleading standard to claims under Section 5(a) of the FTCA. *See Fed. Trade Comm'n v. Grand Canyon Educ., Inc.*, 745 F. Supp. 3d. 803, 837 (D. Ariz. 2024) (recognizing that the Ninth Circuit has not yet decided whether Rule 9 applies to Section 5(a) claims). Yet Defendants do not cite any circuit court that has applied Rule 9(b) to such claims. To the contrary, the Tenth Circuit has taken the position that "strict compliance" with Rule 9(b) for purposes of a Section 5(a) claim is "highly impractical" and "inconsistent with the purpose of the FTC Act." *F.T.C. v. Freecom Commc'ns, Inc.*, 401 F.3d 1192, 1204 n.7 (10th Cir. 2005). The court reasoned that a Section 5(a) claim "simply is not a claim of fraud as that term is commonly understood or as contemplated by Rule 9(b)" because

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | 2:24-cv-09566-MRA-AGR | Date | September 12, 2025 |
|---|---|---|---|
| Title | *Federal Trade Commission v. Dave, Inc.* | | |

"[u]nlike the elements of common law fraud, the FTC need not prove scienter, reliance, or injury
to establish a § 5 violation." *Id.*   District courts in this circuit have taken different positions on
this issue.   For example, the district court in *Grand Canyon* followed the reasoning in *Freecom*
in finding that Section 5(a) claims do not implicate Rule 9(b) because they "do not require a
showing that Defendants knew the challenged representations were false or deceptive or that
Defendants acted with the intent to defraud." *Grand Canyon*, 745 F. Supp. 3d at 837.   Whereas
an earlier decision by the district court in *F.T.C. v. Lights of Am., Inc.* held that even if the pleading
omits the "magic word"—fraud—a Section 5(a) claim still "sounds in fraud" where it alleges "a
unified course of fraudulent conduct and relies entirely on that course of conduct as the basis of
[the] claim." *F.T.C. v. Lights of Am., Inc.*, 760 F. Supp. 2d 848, 853 (C.D. Cal. 2010).   Most
district courts, however, have avoided the issue entirely by finding that even if the allegations
sound in fraud, the complaint meets the heightened pleading standard. *See, e.g.*, *Fed. Trade
Comm'n v. Amazon.com, Inc.*, 735 F. Supp. 3d 1297, 1325 (W.D. Wash. 2024); *United States v.
MyLife.com, Inc.*, 499 F. Supp. 3d 757, 761 (C.D. Cal. 2020).

The Court finds persuasive the district courts' observation in *Lights of America* that Section
5(a) claims are not unlike a negligent misrepresentation claim or deceptive advertising claims
under California's consumer protection statutes, which are subject to the heightened pleading
standard. *See Lights of Am.*, 760 F.2d at 853-54.   But the Court need not decide whether Rule
9(b) applies here because even if does, the government clearly satisfies Rule 9(b)'s requirements.
The Court's exhaustive recitation of the government's factual allegations above reflects that the
FAC sufficiently "identifies the circumstances constituting fraud so that [Defendants] can prepare
an adequate answer from the allegations." *See Moore v. Kayport Package Exp., Inc.*, 885 F.2d
531, 540 (9th Cir. 1989).   Defendants insists that the FAC "repeatedly levels temporally
ambiguous conclusory allegations about what Dave disclosed (or allegedly failed to disclose) to
consumers." ECF 50-1 at 18.   That is simply not the case.   Rule 9(b) "does not require absolute
particularity or a recital of the evidence." *United Healthcare*, 848 F.3d at 1180.   "[A] complaint
need not allege 'a precise time frame,' 'describe in detail a single specific transaction' or identify
the 'precise method' used to carry out the fraud." *Id.* (quoting *Cooper v. Pickett*, 137 F.3d 616,
627 (9th Cir. 1997)).   The FAC details the course of deceptive conduct at issue and enumerates
the time frame for this conduct.   Rule 9(b) does not require any greater level of detail.

### 2. *Count 1: Misrepresentations Regarding Cash Advance*

Defendants argue that Dave's statements representing that customers could receive "up to"
$500 as a cash advance are not materially misleading as a matter of law because its statements are
"indisputably accurate" or otherwise akin to puffery.   ECF 50-1 at 35-39.   The government
responds that Defendants only address the "up to" portion of the cash advance representations and

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | 2:24-cv-09566-MRA-AGR | Date | September 12, 2025 |
|---|---|---|---|
| Title | *Federal Trade Commission v. Dave, Inc.* | | |

do not dispute the representations that their cash advances are available instantly and without hidden fees.

As an initial matter, the Court agrees that Defendants do not adequately address why Dave's representations regarding instant availability and hidden fees are not materially misleading. Defendants contend that they addressed these representations in part because they moved to dismiss the FAC in its entirety and headed the relevant section of their brief as the FAC "does not plausibly allege a Section 5 claim." ECF 62 at 24. That Defendants seek dismissal of the claim in its entirety does not mean they adequately set forth grounds for dismissing the claim in its entirety. Tellingly, Defendants *do not* discuss their purported representations that cash advances are available instantly and without hidden fees in *that* section. Instead, they point to a separate section of their moving papers addressing the government's ROSCA claim, in which Defendants contend that "the express fee feature is explicitly disclosed at the start of the enrollment flow." ECF 50-1 at 29 (citing FAC ¶ 27). The Court does not countenance disorganized briefing, and in any event, this argument misses the mark. Defendants' focus on the Express Fee disclosure in the enrollment flow ignores the allegations in the FAC that Dave's advertisements and in-app interface repeatedly represent that the cash advance is available instantly and without hidden fees and that even the disclosure made does not actually inform a consumer about the amount of the Express Fee until after the user gives Dave access to their bank account and tries to collect an offered advance. *See* FAC ¶¶ 15, 17, 18, 25, 43, 45. The government has plausibly alleged that the "net impression" formed by a reasonable consumer is that they can obtain a cash advance from Dave "instantly" and without an additional fee.

As to Dave's "up to" representations, Defendants maintain that "Dave can, does and did provide $500 advances" and that consumers "would not, as a matter of law, be misled to think that they were guaranteed to get $500." ECF 50-1 at 37, 39. They further note that "'[u]p to' statements are even less likely to mislead when accompanied by additional disclosures." *Id.* at 37. Neither argument is persuasive. Numerous courts have found that "up to" representations can materially mislead reasonable consumers where the defendant does not or cannot provide the good or service as represented, especially when the representation references a particular, quantified amount. *See, e.g.*, *Fed. Trade Comm'n v. Frontier Comc'ns Corp.*, No. 2:21-cv-04155-RGK-MAA, 2021 WL 6540379, at *6 (C.D. Cal. Oct. 3, 2021) (denying motion to dismiss section 5(a) claim where internet service provider advertised internet service "up to" or "as fast as" a particular speed); *Gamino v. Thinx Inc.*, No. EDCV 23-2067 JGB (SHKX), 2024 WL 2429307, at *8 (C.D. Cal. Apr. 18, 2024) (holding that Defendant's representations that its menstrual underwear products provide "up to" a certain amount of absorbency are actionable where the plaintiff had plausibly alleged through personal experience, testing, and other customers' complaints that the products do not provide the absorbency advertised). Relatedly,

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | 2:24-cv-09566-MRA-AGR | Date | September 12, 2025 |
|---|---|---|---|
| Title | *Federal Trade Commission v. Dave, Inc.* | | |

statements that "results may vary" are still actionable as misleading when "the vast majority of consumers did not earn the amount represented as the earning potential" because "consumers could reasonably believe that the statements of earnings potential represent typical or average earnings." *F.T.C. v. Medicor LLC*, 217 F. Supp. 2d 1048, 1054 (C.D. Cal. 2002). The government has plausibly alleged that it was exceedingly rare for Dave to offer the maximum amount of the cash advance advertised or even amounts approaching the maximum.[2] *See* FAC ¶¶ 22, 35, 36. Such representations can materially mislead a reasonable consumer, especially when consumers are given the added impression that the cash advance can help cover the cost of life emergencies such as home repairs and gas. *See id.* ¶¶ 20, 21.

To be sure, additional disclosures can render "up to" statements non-deceptive. *See Maloney v. Verizon Internet Servs., Inc.*, No. ED CV 08-1885-SGL(AGRx), 2009 WL 8129871, at *13-14 (C.D. Cal. Oct. 4, 2009), *aff'd*, 413 F. App'x 997, 999 (9th Cir. 2011). Here, Defendants point to a fine-print disclosure made in two internet banner advertisements that merely states, "Terms apply," ECF 50-1 at 27 (citing FAC ¶ 17, Advertisements 1, 2). Defendants do not contend that such disclosures accompanied Dave's host of other alleged advertisements of its cash advance program. *See* FAC ¶¶ 17-21. Moreover, as the government alleges, these "terms" still do not disclose material information about the cash advance program, including that most consumers who give Dave access to their bank account are not offered any advance at all. *See id.* ¶ 22. "[A] disclaimer does not automatically exonerate deceptive activities." *F.T.C. v. Gill*, 71 F. Supp. 2d 1030, 1044 (C.D. Cal. 1999), *aff'd*, 265 F.3d 944 (9th Cir. 2001). In particular, where, as here, "a disclaimer is buried in fine print and is without accentuation, it is insufficient to alter the net impression." *Fed. Trade Comm'n v. Doxo, Inc.*, 771 F. Supp. 3d 1162, 1177 (W.D. Wash. 2025); *see also F.T.C. v. Medlab, Inc.*, 615 F. Supp. 2d 1068, 1077 (N.D. Cal. 2009) ("Defendants cannot inoculate themselves from the representations that appear in the body of the text by including these cautionary statements at the foot of the advertisements.").

Accordingly, the Court **DENIES** Defendants' Motion to Dismiss Count 1.

### 3.    *Count 2: Misrepresentations Regarding "Tipping"*

Defendants argue that Dave did not mislead consumers regarding its "tipping" feature because its advertisements, product flow, and representations made clear that tipping was optional

---

[2] Defendants contend that the government's method of calculating cash advances is wrong and that the data it used is complete. ECF 62 at 25 n.27. Such a factual dispute cannot be resolved on a Rule 12(b)(6) motion to dismiss. The Court is required to take all allegations in the Complaint as true on a Rule 12(b)(6) motion to dismiss. *See Iqbal*, 556 U.S. at 678.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | 2:24-cv-09566-MRA-AGR | Date | September 12, 2025 |
|---|---|---|---|
| Title | *Federal Trade Commission v. Dave, Inc.* | | |

and "truthfully represented that Dave would provide a certain number of meals based on the consumer's tip." ECF 50-1 at 40-43. The government responds that Defendants' argument focuses almost entirely on its statement regarding "[y]our optional tip" screen but ignores the most prominent elements on the screen and that consumers were not presented with a clear option to avoid tipping. ECF 61 at 19-20. The government further contends that Defendants largely maintain the illusion that its tips provide a particular number of meals to people in need, when in reality it only donated 10 cents per percentage tip. *Id.* at 21-22.

The Court agrees with the government that Defendants focus almost exclusively on Dave's statement that "[y]our optional tip helps us stay in business," and in doing so, ignore the *net* impression formed by a reasonable consumer regarding the "tipping" feature. For one, the Court is not convinced that the statement itself constitutes a disclosure that the tip is optional in so far as the emphasis of the statement appears to be on how Dave purportedly intends to use the additional charge, *not* on the fact that it is optional. Moreover, the more prominent elements on the example "tip" screen—the bold heading "Your advance is on its way!" and the large green "Thank you!" button—do not indicate that the screen is soliciting an additional charge. Notably, nothing on the screen informs the consumer that tapping the "Thank you!" button—the only clickable area on the screen that did not reference a tip or donation—would be taken as a consumer's consent to charge a "tip." *See* FAC ¶¶ 46-48. In addition, the only way for a consumer to avoid that charge is by first counter-intuitively tapping the "custom tip" button, which is roughly half the size of the "Thank you!" button and colored white against a white background and then dragging the tip amount to zero. *Id.* ¶¶ 58-61. Further, the government cites numerous consumer complaints and internal Dave documents flagging consumer confusion surrounding the "optional" nature of the "tipping" feature. *See id.* ¶¶ 50-53, 58-61. Such proof of actual deception is "highly probative to show that a practice is likely to mislead consumers acting reasonably under the circumstances." *Cyberspace.Com*, 453 F.3d at 1201. As such, the government has plausibly alleged that Defendant's representations, taken together, form a net impression that is likely to mislead a reasonable consumer.

As to the "Healthy Meals" content, Defendants admit that "[a] reasonable consumer reading this . . . language would understand that if she left a 10% tip, Dave would donate money for 10 meals and keep some to 'help us stay in business.'" ECF 50-1 at 42. They contend, however, that the government does not allege that "the amount of money Dave donated was insufficient to provide the designated number of meals." *Id.* The FAC alleges exactly that: "Dave does not pay for or donate a specified number of meals to children in need based on its user tips;" instead, "for each percentage point of a 'tip' charged to a consumer, Dave donates only 10 cents and keeps the rest," which is "far less than it would cost . . . to purchase and prepare" the meals. FAC ¶ 64. To answer the rhetorical question posed by Defendants in their moving

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | 2:24-cv-09566-MRA-AGR | Date | September 12, 2025 |
|---|---|---|---|
| Title | *Federal Trade Commission v. Dave, Inc.* | | |

papers—"How much does the Government believe a healthy meal should cost?"—common sense
dictates a straightforward answer: not 10 cents per meal.  It strains credulity for Defendants to
imply otherwise.  Defendants suggests that the partnered hunger relief organization combines
Dave's donations with bulk food donations to provide people in need with meals.  ECF 50-1 at
43.  But that explanation ignores the content of Dave's *actual* representations, which collectively
form the impression that Dave is either directly providing or donating sufficient funds to cover a
healthy meal through the tipping feature.  Dave explicitly states that "*We* also *provide a meal* for
every % you tip," and its app design uses imagery of a child surrounded by several food items to
reinforce this message.  *See* FAC ¶¶ 55, App Screenshot 5 (emphasis added).

Defendants also assert that the government does not explain why any of this information
would be material to a consumer's decision to leave an optional tip.  ECF 50-1 at 43.  That
argument is answered by Dave's own internal analysis and communications, which, as alleged in
the FAC, revealed that the Healthy Meals content significantly affected consumer behavior and
Dave's bottom line.  FAC ¶¶ 65-69; *see Cyberspace.Com*, 453 F.3d at 1201 (explaining that a
misleading impression is misleading if it is "likely to affect [consumer] choice of, or conduct
regarding, a product").  Lastly, Defendants note that the government ignores the "Feeding
America" link at the top of the "tip" screen and does not explain in the FAC what information
could have been presented when someone clicked on the link.  ECF 50-1 at 43.  Defendants do
not explain, however, why this omission warrants dismissal, and they do not address the FAC's
allegations about representations made on the "frequently asked questions" materials posted to
Dave's website.  *See* FAC ¶ 63.  Thus, the Court finds that the government has plausibly alleged
that Defendants' "Healthy Meals" content creates a materially misleading net impression.

Accordingly, the Court **DENIES** Defendants' Motion to Dismiss Count 2.

**C.    ROSCA**

ROSCA was enacted to provide online consumers with "clear, accurate information and
give sellers an opportunity to fairly compete[.]"  15 U.S.C. § 8401.  ROSCA makes it unlawful
for "any person to charge or attempt to charge any consumer for any goods or services sold in a
transaction effected on the Internet through a negative option feature" unless the person satisfies
the following three requirements:

(1) provides text that clearly and conspicuously discloses all material terms of the
transaction before obtaining the consumer's billing information; (2) obtains a
consumer's express informed consent before charging the consumer's credit card,
debit card, bank account, or other financial account for products or services through
such transaction; and (3) provides simple mechanisms for a consumer to stop

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | 2:24-cv-09566-MRA-AGR | Date | September 12, 2025 |
|---|---|---|---|
| Title | *Federal Trade Commission v. Dave, Inc.* | | |

recurring charges from being placed on the consumer's credit card, debit card, bank account, or other financial account.

*Id.* § 8403.   A "negative option feature" is defined by the FTC Telemarketing Sales Rule ("TSR") as "in an offer or agreement to sell or provide any goods or services, a provision under which the customer's silence or failure to take an affirmative action to reject goods or services or to cancel the agreement is interpreted by the seller as acceptance of the offer."   16 C.F.R. § 310.2(w). Violations of the ROSCA requirements constitutes unfair or deceptive acts in violation of the FTCA.   15 U.S.C. § 8404.   For ROSCA violations, courts may award injunctive relief, equitable relief to redress consumer injuries, and civil penalties where a ROSCA violation is committed with "actual knowledge or knowledge fairly implied."   15 U.S.C. §§ 45(m)(1)(A), 53(b), 57b.

Here, the government alleges that Dave's automatically renewing monthly membership fee is a negative option feature subject to ROSCA and that Defendants violated ROSCA by failing to provide clear and conspicuous disclosures of all material terms, obtain a consumer's express informed consent, and provide a simple mechanism for cancellation.   *Id.* ¶¶ 102, 105-16.

### 1.    *Count 3: Disclosure of All Material Terms of the Transaction*

The government alleges that Dave was required—and failed—to disclose the following terms: (1) Dave charges an automatically recurring membership fee; (2) Dave offers few cash advances at or near the advertised amount; (3) Dave charges consumers an additional fee to receive the cash advance instantly; and (4) Dave charges consumers a "tip."   *See* FAC ¶ 106.

### a)    *The Scope of ROSCA's Disclosure Requirement*

Defendants argue as a threshold matter that ROSCA does not require Dave to disclose material terms that are unrelated to the negative option feature, *i.e.*, the monthly membership.[3] ECF 50-1 at 18-21.   The government responds that Defendants ignore the statutory text, the nature of Dave's product, and the law on materiality.   ECF 61 at 24-26.

"Statutory interpretation begins with the text of the statute."   *Matao Yokeno v. Sawako Sekiguchi*, 754 F.3d 649, 653 (9th Cir. 2014) (citing *Hughes Aircraft Co. v. Jacobson*, 525 U.S. 432, 438 (1999)).   However, courts "do not look at statutory language in isolation, but consider 'the specific context in which that language is used, and the broader context of the statute as a

---

[3] For purposes of this Motion, Defendants do not dispute that Dave's monthly membership fee is a negative option feature.   *See* ECF 50-1 at 19 n.8; ECF 60 at 11 n.1.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | 2:24-cv-09566-MRA-AGR | Date | September 12, 2025 |
|---|---|---|---|
| Title | *Federal Trade Commission v. Dave, Inc.* | | |

whole.'"   *Id.* (quoting *Robinson v. Shell Oil Co.*, 519 U.S. 337, 341 (1997)).

The relevant text of ROSCA makes it "unlawful for any person to charge or attempt to charge any consumer for *any goods or services sold in a transaction effected on the Internet through a negative option feature . . .*," unless the person, *inter alia*, "provides text that clearly and conspicuously discloses *all material terms of the transaction* before obtaining the consumer's billing information."   15 U.S.C. § 8403 (emphases added).   Although the statute does not define "all material terms," the phrase is not ambiguous.   "[N]ormally, when a statute does not define a term, [courts] apply the term's ordinary meaning."   *Marquez-Reyes v. Garland*, 36 F.4th 1195, 1201 (9th Cir. 2022) (citing *Miss. Band of Choctaw Indians v. Holyfield*, 490 U.S. 30, 47 (1989)); *Turner v. Cook*, 362 F.3d 1219, 1227 (9th Cir. 2004) ("A fundamental canon of statutory construction directs us to interpret words according to their ordinary meaning.").   "The ordinary meaning of 'transaction' necessarily implies some type of business dealing between parties." *Turner*, 362 F.3d at 1227; *see also Transaction*, Black's Law Dictionary (12th Ed. 2024) (same). The ordinary meaning of "material" is "[o]f such a nature that knowledge of the item would affect a person's decision-making; significant."   *Material*, Black's Law Dictionary (12th Ed. 2024). Indeed, in the FTC context, a term is material if it "involves information that is important to consumers and, hence, likely to affect their choice of, or conduct regarding, a product." *Cyberspace.Com*, 453 F.3d at 1201; *see also* Negative Option Rule, 89 F.R. 90476-01 (same). Thus, "all material terms of the transaction" refers to those terms of real importance or great consequence bearing on the business dealing.

The government has plausibly alleged that Dave's automatically renewing monthly membership fee is a negative option feature.   *See MyLife.com*, 499 F. Supp. 3d at 762 (describing the defendant's "automatic renewal default for its subscriptions" as "a textbook example of a negative option feature").   The relevant "transaction" at issue is not the membership fee itself, but the cash advance product offered by Dave.   Dave's cash advance product is promoted in Dave's online advertising and in their app.   *See* FAC ¶¶ 15, 17-26.   The product is available only to those consumers who pay the negative option subscription.   *See* FAC ¶ 70.   Dave's cash advance product is sold in a transaction effected on the Internet through a negative option feature, and Defendants must disclose "all material terms" of the transaction for the cash advance product, not just the terms of the negative option feature.

Defendants' argument that ROSCA requires disclosure of only the material terms of the negative option feature, not the "transaction," misconstrues the statute.   Defendant's argument is further belied by the flow of the Dave app.   Dave entices consumers to download the app based on the availability of up to $500 cash advances instantly and without hidden fees.   FAC ¶¶ 23-26.   Once consumers are in the app, Dave continues to promote the cash advance product.   *Id.*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | 2:24-cv-09566-MRA-AGR | Date | September 12, 2025 |
|---|---|---|---|
| Title | *Federal Trade Commission v. Dave, Inc.* | | |

¶¶ 27-31.    Indeed, Defendants concede that ROSCA's disclosure requirements apply at a minimum to "the specific features relating to the subscription and *the decision around whether to pay for the subscription*." ECF 50-1 at 19 (emphasis added).    Given that consumers' entry point to Dave's membership is often the cash advance product, the availability, amount, and cost of that product are all material to a consumer's decision around whether to pay for the subscription.

Defendants also comment that the FTC's recent "Click to Cancel" rule (hereinafter, "the Negative Option Rule") implicitly recognized ROSCA's limitations and the need for rulemaking to apply ROSCA's disclosure requirements to terms unrelated to the negative option feature. This argument turns the regulation on its head.    Consistent with the statutory text, the Negative Option Rule "prohibits misrepresentations of 'any material fact,'" "provides a non-exhaustive list of categories of potentially material facts," and "adds a definition of 'material,' consistent with section 5 [of the FTCA] and the TSR."    Negative Option Rule, 89 FR 90476-01.    It reasoned that "[l]imiting a misrepresentations prohibition solely to misrepresentations about the negative option feature itself would fall well short of the scope of ROSCA and the [FTC]'s responsibility to protect the public."    *Id.*    In other words, the regulation sought to clarify what the language of the statute was intended to prohibit.    Contrary to Defendants' assertions, the Court does not find that the Negative Option Rule was "designed to fill gaps in the existing regulatory regime" or otherwise expand the existing scope of ROSCA.    *See* ECF 50-1 at 19-20.    Nor is the government attempting to apply the Negative Option Rule retroactively.    *See id.* at 20-21.    "[T]o the extent a regulation merely interprets a statute, it in theory merely elucidates a meaning that has resided in the statute since its enactment.    If an interpretive regulation merely clarifies what the language of the statute was intended to convey, it is ultimately misleading to term it retroactive."    *Barona Grp. of Capitan Grande Band of Mission Indians v. Am. Mgmt. & Amusement, Inc.*, 840 F.2d 1394, 1406 (9th Cir. 1987) (quoting *Anderson, Clayton & Co. v. United States*, 562 F.2d 972, 985 n.30 (5th Cir. 1977)).    "It is no more retroactive in its operation than is a judicial determination construing and applying a statute to a case in hand."    *Manhattan Gen. Equip. Co. v. Comm'r of Internal Revenue*, 297 U.S. 129, 135 (1936).    Moreover, for obvious reasons, Defendants' reliance on several *dissenting* opinions from individual FTC Commissioners is misplaced. *Grijalva v. ADP Screening & Selection Servs. Inc.*, No. CV-22-00206-TUC-JCH, 2024 WL 728709, at *4 (D. Ariz. Feb. 22, 2024) (recognizing that FTC opinions are persuasive, but non-binding).

In their Reply, Defendants insist that the government's interpretation would lead to absurd results, explaining that it is akin to requiring a travel membership program to disclose to every prospective member the terms of every good or service available to the program's members, not just that the terms of the membership itself.    ECF 62 at 12-13.    That would be true if the product being transacted was the membership itself, but that is not what the government alleges here.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | 2:24-cv-09566-MRA-AGR | Date | September 12, 2025 |
|----------|------------------------|------|---------------------|
| Title | *Federal Trade Commission v. Dave, Inc.* | | |

Instead, this case is analogous to one where a travel membership program heavily promotes a particular product and fails to disclose both that a consumer needs to subscribe for a membership to access that product and the material terms of that promoted product prior to charging consumers for the membership.

> **b)   Sufficiency of Factual Allegations**

Defendants argue that even if ROSCA's disclosure requirement applies to material terms unrelated to the negative option feature, Dave's disclosures are clear, conspicuous, and true.   ECF 50-1 at 23-30.   The government responds that Defendants "misplace[] the focus by arguing about 'terms' that a consumer might encounter if she left the app's primary action buttons to 'see terms.'"   ECF 61 at 26-

As explained above, ROSCA requires the seller to provide "text that *clearly and conspicuously* discloses all material terms of the transaction *before* obtaining the consumer's billing information."   15 U.S.C. § 1403(1) (emphases added).   ROSCA does not define "clearly" and "conspicuously."   Under other federal statutes, "clear" means "reasonably understandable." *Gilberg v. Cal. Check Cashing Stores, LLC*, 913 F.3d 1169, 1176 (9th Cir. 2019) (quoting *Rubio v. Cap. One Bank*, 613 F.3d 1195, 1200 (9th Cir. 2010)).   Under the ordinary meaning of "conspicuous," a disclosure is "conspicuous" if it is "clearly visible or obvious" and "so written, displayed, or presented as to cause a reasonable person who is involved in a transaction to notice." *Conspicuous*, Black's Law Dictionary (12th Ed. 2024).   Consistent with this understanding, the Negative Option Rule defined "clear" and "conspicuous" as "easily noticeable (i.e., difficult to miss) and easily understandable by ordinary consumers."   16 C.F.R. § 425.2.   Statements "buried in fine print on the payment page . . . or stated in separate Terms and Conditions documents that consumers are not required to read" do not constitute clear and conspicuous disclosures.   *F.T.C. v. Health Formulas, LLC*, No. 2:14-CV-01649-RFB, 2015 WL 2130504, at *16 (D. Nev. May 6, 2015).

Defendants argue that the app clearly discloses its monthly membership fee by providing text stating, "Dave charges a membership fee of $1 per month to connect your bank account," and by hyperlinking its "FAQs."   ECF 50-1 at 25-26.   Defendants suggest that this text is "clear" and "conspicuous" because it is in "regular font that does not appear markedly smaller than the surrounding text."   *Id.* at 25.   The Court disagrees.   The cited text is the only mention of the membership fee in the entire app flow.   The "Connect your primary bank" example screen on which the text appears uses multiple sizes and colors of text, so it is unclear what Defendants mean by "regular" in the context of surrounding text.   *See* FAC ¶ 27, App Screenshot 3.   The FAC plausibly alleges that Dave's design elements and user interface on this example screen

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | 2:24-cv-09566-MRA-AGR | Date | September 12, 2025 |
|----------|------------------------|------|---------------------|
| Title | *Federal Trade Commission v. Dave, Inc.* | | |

"draws consumers' attention toward continuing with Dave's services, and away from the terms of those services." *Id.* ¶ 28. Dave's purported disclosure appears in light-gray font against a white background. In contrast, the header—"Connect your primary bank"—and the sub-title— "Connect the bank account you get paid to, and get approved for the highest amount[]"—are in dark-colored font. The disclosure also appears immediately above a large "Connect account" button with white font against a large, green background. Defendants' assertion that the disclosure text is no smaller than the "Connect account" text ignores other design elements, such as the contrasting colors of the background and font, that draw consumers' attention towards continuing with enrollment and away from the purported fee disclosure. A reasonable consumer could overlook the disclosure text. Fatal to Defendants' argument is the fact that the text does not even disclose the negative option itself—that the monthly membership fee will *automatically* recur until the consumer takes action to cancel it. *See* FAC ¶ 106(d). The government has plausibly alleged that Dave's disclosures about its monthly membership fee are not clear, conspicuous, or complete.

Defendants next contend that its disclosures about the amount of its cash advances are actually true and that the government "cannot plausibly assert . . . that advance eligibility or a specific advance amount . . . is a 'material term' in relation to a $1 a month membership." ECF 50-1 at 26. But the government *has* plausibly alleged that the terms of Dave's advertised cash advance product—including eligibility and value—are material to a consumer's decision to sign up for a Dave membership. For instance, it is reasonable to infer that a consumer who encounters a Dave ad promoting its cash advance program and proceeds to the Dave app to obtain a cash advance would be less likely to sign up for a recurring monthly membership fee if they were made aware up front that they are not actually eligible for an advance or that the amount of the advance is almost certain to be far less than $500.

Defendants maintain that Dave disclosed that eligibility requirements applied to the cash advance program by providing hyperlinked text to "See terms" and "See how ExtraCash works" and text noting "Subject to eligibility requirements." ECF 50-1 at 26-27 (citing FAC ¶¶ 25-26, App Screenshots 1 & 2). However, as explained above, hyperlinks to a separate and optional terms of service page are not clear and conspicuous disclosures of all material terms. *See Health Formulas*, 2015 WL 2130504, at *16. Moreover, even when consumers clicked on the "terms," the FAC plausibly alleges that the material terms are still not revealed. *See* FAC ¶ 29. The "Subject to eligibility requirements" text, like the text disclosing the monthly membership fee, is in light gray font against a white background, and it does not disclose or link to what those eligibility requirements actually are. Thus, the government has plausibly alleged that Dave did not clearly and conspicuously disclose the terms of its cash advance program.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | 2:24-cv-09566-MRA-AGR | Date | September 12, 2025 |
|---|---|---|---|
| Title | *Federal Trade Commission v. Dave, Inc.* | | |

Relatedly, Defendants contend that the Express Fee is explicitly disclosed at the start of the enrollment flow in the "Connect your primary bank" example screen. ECF 50-1 at 29. Not so. That text states, "Get money instantly for a small fee," without disclosing the *amount* of that fee. It is reasonable to infer that the amount of that fee, like the amount of the cash advance, is material to whether a consumer enrolls in Dave's membership. Lastly, Dave does not disclose the "tip" charge at any point prior to obtaining consumers' bank account information.

Accordingly, the Court **DENIES** Defendants' Motion to Dismiss Count 3.

### 2.    *Count 4: Express Informed Consent*

Defendants argue that Dave obtained consumers' express informed consent before charging consumers by disclosing each charge, including the monthly membership fee, the express fee, and the tip. ECF 50-1 at 30. The government responds that Defendants conflate ROSCA's disclosure requirement with the separate requirement to obtain express and informed consent and that Dave failed to do so here. ECF 61 at 28-29.

ROSCA requires the seller to "obtain[] a consumer's express informed consent before charging the consumer's credit card, debit card, bank account, or other financial account for products or services through such transaction." 15 U.S.C. § 8403(2). ROSCA does not define "express informed consent." But "express consent" means "[c]onsent that is clearly and unmistakably stated," and "informed consent" means "a person's agreement to allow something to happen, made with full knowledge of the risks involved and the alternatives." *Consent*, Black's Law Dictionary (12th Ed. 2024). "[W]hen the material terms are not clearly and conspicuously disclosed, 'these inadequate disclosures constitute evidence that [the sellers] often do not obtain consumers' express informed consent before charging their cards or accounts.'" *Amazon.com*, 735 F. Supp. 3d at 1321 (quoting *Health Formulas*, 2015 WL 2130504).

The government has plausibly alleged that Dave failed to obtain its customers' express informed consent. For one, the government has plausibly alleged that Dave did not provide clear, conspicuous, and complete disclosures, which necessarily means Dave could not have obtained its customers informed consent. Moreover, Dave's app interface consists of a series of buttons—"Sign up for Dave," "Get started," "Connect account," and "Thank you!"—that do not make clear that by clicking, the customer is expressly agreeing to certain charges. *See* FAC ¶¶ 25, 27, 46. The district court's decision in *Amazon.com* is instructive. In that case, the court held that the seller failed to obtain express and informed consent where the user interface required the consumer to click on a button without making clear that by clicking, the customer was agreeing to a subscription service. *Amazon.com*, 735 F. Supp. 3d at 1321-22 (citing *Berman v. Freedom Fin. Network, LLC*, 30 F.4th 849, 856 (9th Cir. 2022)). That is because "merely clicking on a

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | 2:24-cv-09566-MRA-AGR | Date | September 12, 2025 |
|---|---|---|---|
| Title | *Federal Trade Commission v. Dave, Inc.* | | |

button on a webpage, viewed in the abstract, does not signify a user's agreement to anything."
*Berman*, 30 F.4th at 857 (addressing consent in the context of contract formation in online
transactions). Instead, "[a] user's click of a button can be construed as an unambiguous
manifestation of assent only if the user is explicitly advised that the act of clicking will constitute
assent to the terms and conditions of an agreement." *Id.* Dave's interface does not advise
customers that clicking through the enrollment process constitutes consent to charges.

Accordingly, the Court **DENIES** Defendants' Motion to Dismiss Count 4.

### 3. *Count 5: Simple Mechanism for Cancellation*

Defendants argue that the government does not plausibly allege that Dave failed to offer
customers a simple mechanism for cancelling the monthly membership fee. ECF 50-1 at 30-32.
The government responds that Defendants' argument confuses the law and the pleading standard.
ECF 62 at 29-31.

ROSCA requires the seller to "provide[] simple mechanisms for a consumer to stop
recurring charges from being placed on the consumer's credit card, debit card, bank account, or
other financial account." 15 U.S.C. § 8403(3). ROSCA does not define "simple mechanisms"
for cancellation. The plain, ordinary meaning of "simple" is "easy to understand or do; not
difficult." *Simple*, Cambridge Dictionary, https://dictionary.cambridge.org/
dictionary/english/simple (last visited July 23, 2025). In an order granting a permanent
injunction and equitable relief under ROSCA, the court in *FTC v. Cardiff* specified that, to comply
with ROSCA, the defendant needed to provide cancellation methods that were "not [] difficult,
costly, confusing, or time consuming, and must be at least as simple as the mechanism the
consumer used to initiate the [c]harge(s)." No. ED 5:18-CV-02104-SJO-PLAx, 2019 WL
9143561, at *10 (C.D. Cal. May 16, 2019). The Negative Option Rule also clarified that the
simple mechanism must be "at least as simple as consent." 16 C.F.R. § 425.6(b). That is, it
"must be at least as easy to use as the mechanism the consumer used to consent to the Negative
Option Feature." *Id.*

The government has plausibly alleged that Dave failed to provide a simple mechanism for
cancellation. The FAC alleges that Dave refused to cancel subscriptions through any mechanism,
failed to provide customers with an in-app process for cancellation, and failed to inform
consumers how to stop recurring charges. FAC ¶¶ 77-78, 85. Customers who contacted Dave's
customer service were referred to an in-app process that may or may not be available to them, told
that customer service cannot stop the charges, or told to provide multiple points of sensitive
personal and financial information. *Id.* ¶¶ 81-83. Consumers who are able to use Dave's in-app
process for cancellation are required to take "at least nine steps to reach and complete" that

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | 2:24-cv-09566-MRA-AGR | Date | September 12, 2025 |
|---|---|---|---|
| Title | *Federal Trade Commission v. Dave, Inc.* | | |

process.  *Id.* ¶ 84.

Defendants maintain that the government "does not explain what was 'complex' about those mechanisms or purported steps, or what Dave should have done to make the process of avoiding recurring charges 'simpler.'"  ECF 50-1 at 31.  This argument is belied by the detailed allegations in the FAC, which amply describe why Dave's cancellation mechanisms are not simple.  The Court further agrees with the government that the pleading is not required to elaborate on "a hypothetical, alternative business model for Defendants."  *See* ECF 61 at 30.  Defendants further contend that the government attempts to "dodge" its burden with a "barrage" of consumer complaints without providing "context" or "the volume of objections relative to the number of users of the app or the number of users who successfully avoided recurring charges."  ECF 50-1 at 32.  The FAC explicitly alleges that those complaints were pulled from an internal Dave analysis of complaints to the BBB.  *See* FAC ¶ 83.  Not even the heightened pleading standard requires the government to plead the date, time, and content of these complaints.  *See* Fed. R. Civ. P. 9(b) (requiring only that the plaintiff plead with particularity "the circumstances constituting fraud").  Nor is the government required to explain to Defendants the ratio of complaints to successful cancellation attempts in order to plausibly state a claim.

Accordingly, the Court **DENIES** Defendants' Motion to Dismiss Count 4.

### 4.    *Civil Penalties*

Defendants argue that the government's allegations do not support a demand for civil penalties for ROSCA violations.  ECF 50-1 at 32-35.  The government responds that the FAC sufficiently alleges that Defendants had actual knowledge of ROSCA violations because they operate in a highly regulated space, run a compliance system to address legal and regulatory scrutiny, and knew that the FTC was investigating Dave for potential ROSCA violations.  ECF 61 at 32.

To obtain civil monetary penalties under ROSCA, the government must demonstrate that the defendant had "actual knowledge or knowledge fairly implied on the basis of objective circumstances that such act is unfair or deceptive and is prohibited by such rule."  15 U.S.C. § 45(m)(1)(A); 15 U.S.C. § 8404(b) ("Any person who violates [ROSCA] . . . shall be subject to the penalties and entitled to the privileges and immunities provided in the [FTCA] as though all applicable terms and provisions of the [FTCA] were incorporated in and made part of this chapter.").  "Whether a defendant has violated a rule with actual or implied knowledge is based on objective factors."  *Amazon.com*, 735 F. Supp. 3d at 1332 (quoting *United States v. Nat'l Fin. Servs., Inc.*, 98 F.3d 131, 139 (4th Cir. 1996)).  "A defendant is responsible where a reasonable person under the circumstances would have known of the existence of the provision and that the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | 2:24-cv-09566-MRA-AGR | Date | September 12, 2025 |
|---|---|---|---|
| Title | *Federal Trade Commission v. Dave, Inc.* | | |

action charged violated that provision." *Nat'l Fin. Servs.*, 98 F.3d at 139. "Circumstantial evidence regarding the individual's degree of participation in business affairs is probative of knowledge." *Fed. Trade Comm'n v. Am. Fin. Benefits Ctr.*, 324 F. Supp. 3d 1067, 1080 (N.D. Cal. 2018) (citation and internal quotation marks omitted).

Defendants contend that they did not know or have reason to know that ROSCA applied to any portion of their services apart from the terms of the negative option feature. ECF 50-1 at 33. In *Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA*, the Supreme Court suggested, without deciding, that the FTCA's civil-penalties provisions contain a mistake-of-law defense. 559 U.S. 573, 584-85 (2010). The Ninth Circuit has not considered the issue, but the Seventh Circuit has observed that the FTCA "includes a variation on an ignorance-of-the-law defense; a business can be liable only if it either knew that the act was unlawful or if it should have known the act was unlawful ('knowledge fairly implied')." *United States v. Dish Network L.L.C.*, 954 F.3d 970, 978 (7th Cir. 2020).

At the pleading stage, however, the court "need not decide whether [d]efendants had actual knowledge of the [applicable law]; rather, Plaintiff need only plausibly state Defendants had knowledge or were on notice that the [applicable law] applied to survive a motion to dismiss." *United States v. Stratics Networks Inc.*, 721 F. Supp. 3d 1080, 1101 (S.D. Cal. 2024). Here, the government has plausibly alleged that Defendants had actual or constructive knowledge that their conduct violated ROSCA. The FAC alleges that Dave maintained a compliance management system to address legal and regulatory scrutiny, so there is no real question that Defendants had actual knowledge of ROSCA and that ROSCA applied to its conduct. FAC ¶ 87. The government also attests that Defendants received and analyzed numerous consumer complaints relevant to their alleged failure to disclose all material terms of the transaction. *Id.* ¶¶ 40, 41, 49, 51-52, 67-69. Other courts have found that similar allegations are plausible indicia that Defendants were on notice that their conduct violated ROSCA. *See, e.g.*, *Amazon.com*, 735 F. Supp. 3d at 1333 (finding that allegations of consumer complaints, rolled back changes, and internal reports about consumer confusion are sufficient to state a demand for civil penalties); *Stratics Networks*, 721 F. Supp. 3d at 1101 (holding that the plaintiff had plausibly stated a demand for civil penalties where it plead the existence of customer complaints, but not their content). Defendants attempt to distinguish this case from *Amazon* and *Stratics* on the grounds that both alleged more than the mere existence of some customer complaints. ECF 62 at 22-23. Yet the FAC specifically alleges not only that Dave received complaints, but also that its employees analyzed them internally and proposed responsive changes to Dave's interface that ultimately were not adopted. *See* FAC ¶¶ 40, 49-50, 72, 83-84, 86.

In sum, the government has plausibly alleged that a reasonable person in Defendants'

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | 2:24-cv-09566-MRA-AGR | Date | September 12, 2025 |
|---|---|---|---|
| Title | *Federal Trade Commission v. Dave, Inc.* | | |

positions would have known that it was required to comply with ROSCA's requirements when soliciting customers to participate in its cash advance program through a negative option feature. Even assuming arguendo that ROSCA did not require disclosure of material terms unrelated to the negative option feature, the government has still plausibly alleged that Dave knowingly failed to disclose the material terms of its monthly membership fee, obtain consumers' express and informed consent to charge that fee, and provide simple methods for cancelling that fee.

Accordingly, the Court **DENIES** Defendants' Motion to Dismiss the government's demand for civil penalties.

### D. Claims against Wilk

Defendants argue that the government's claims should be dismissed as to Wilk because the allegations against him are "vague as to time and conclusory as to his role in the alleged conduct." ECF 50-1 at 43-47. The government responds that Dave's director status alone establishes his individual liability, but further notes that the FAC contains allegations that Wilk knowingly and directly participated in the company's allegedly unlawful practices. ECF 61 at 32-35.

An individual may be held liable for injunctive relief under the FTCA for corporate practices where the individual "participated directly in the acts or practices or had authority to control them." *F.T.C. v. Publ'g Clearing House, Inc.*, 104 F.3d 1168, 1170 (9th Cir. 1997) (citation omitted). "Authority to control the company can be evidenced by active involvement in business affairs and the making of corporate policy, including assuming the duties of a corporate officer." *F.T.C. v. Am. Standard Credit Sys., Inc.*, 874 F. Supp. 1080, 1089 (C.D. Cal. 1994) (citations omitted). An individual is also liable for consumer redress or equitable restitution pursuant to Section 19 of the FTCA, 15 U.S.C. § 57b(b), where the individual "had *knowledge* that the corporation or one of its agents engaged in dishonest or fraudulent conduct, that the misrepresentations were the type upon which a reasonable and prudent person would rely, and that consumer injury resulted." *F.T.C. v. Network Servs. Depot, Inc.*, 617 F.3d 1127, 1138 (9th Cir. 2010) (quoting *Publ'g Clearing House*, 104 F.3d at 1170). The knowledge requirement can be fulfilled by showing "(1) actual knowledge, (2) reckless indifference to truth or falsity, or (3) an awareness of a high probability of fraud and an intentional avoidance of the truth with respect to any of the admitted misrepresentations." *Id.* at 1139.

The government has plausibly alleged that Wilk is liable for injunctive relief and equitable restitution for consumer redress. The FAC alleges that Wilk is the co-founder, CEO, President, Chairman of the Board of Directors, and controlling shareholder of Dave. FAC ¶ 10. "An individual's status as a corporate officer and/or the authority of that individual to sign documents on behalf of a corporate defendant is sufficient to show the requisite control." *F.T.C. v. Dinamica*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | 2:24-cv-09566-MRA-AGR | Date | September 12, 2025 |
|---|---|---|---|
| Title | *Federal Trade Commission v. Dave, Inc.* | | |

*Financiera LLC*, No. CV 09-03554 MMM PJWX, 2010 WL 9488821, at *10 (C.D. Cal. Aug. 19, 2010) (citing *Publ'g Clearing House*, 104 F.3d at 1170); *see also Fed. Trade Comm'n v. Com. Planet, Inc.*, No. SACV0901324CJCRNBX, 2010 WL 11673796, at *2 (C.D. Cal. Feb. 12, 2010) (describing an individual's status as a president or director as "the most important fact for individual liability" under Section 5 of the FTCA). The FAC further alleges that Wilk not only had authority to control Dave's allegedly unlawful conduct, but also actively participated in this conduct. He received and reviewed many consumer complaints about the discrepancy between the actual and advertised cash advance amounts. FAC ¶ 40. Wilk was presented with information that consumers were deceived by the Express Fee, and he declined to adopt recommendations aimed at correcting the alleged misrepresentations. *Id.* ¶ 43. Wilk implemented and controlled the design of the "tipping" feature. *Id.* ¶ 47. Following Dave's internal experiment with the "Healthy Meals" content, Wilk decided to retain that content because that content was important to maintaining Dave's "tip" revenue. *Id.* ¶ 68. Wilk also received numerous complaints from consumers about the membership fee. *Id.* ¶ 73. These allegations reflect Wilk's "active involvement" in Dave's business affairs and, at the pleading stage, are "sufficient to raise the inference that [Wilk] knew of the misrepresentations or, at least, w[as] recklessly indifferent to the truth or falsity of the representations made." *FTC v. Lights of Am., Inc.*, No. SACV 10-1333, 2011 WL 1515158, at *4 (C.D. Cal. Mar. 31, 2011).

Defendants also argue that the government's allegations based on events occurring prior to December 30, 2021, fall outside the three-year statute of limitations for consumer redress. ECF 50-1 at 44-47. This argument ignores the allegations in the FAC. The FAC specifically alleges that (1) Wilk has served as CEO of Dave since 2016, (2) Dave has advertised its cash advance program product since 2020, and (3) Defendants continue to engage in allegedly unlawful conduct. FAC ¶¶ 10, 17, 22, 24, 87-88. The Court agrees with the government that this case is about ongoing, not stale, conduct. *See* ECF 61 at 35.

Accordingly, the Court **DENIES** Defendants' Motion to Dismiss the claims against Wilk.

**E.    Substitution of Real Party in Interest**

Defendants also argue that the FAC must be dismissed because the United States is not the "correct" party in this case because it improperly substituted into this case by amendment contrary to Federal Rule of Civil Procedure 17. ECF 50-1 at 47-48. The government disagrees that Rule 17 provides grounds for dismissal. ECF 61 at 36-37.

Rule 17 generally defines the "real party in interest" and provides that "an action must be prosecuted in the name of the real party in interest." Fed. R. Civ. P. 17(a)(1) "[A] party authorized by statute," among others, may "sue in [their] own name[] without joining the party

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | 2:24-cv-09566-MRA-AGR | Date | September 12, 2025 |
|----------|----------------------|------|--------------------|
| Title | *Federal Trade Commission v. Dave, Inc.* | | |

for whose benefit the action is brought." *Id.* 17(a)(1)(G). The court "may not dismiss an action for failure to prosecute in the name of the real party in interest until, after an objection, a reasonable time has been allowed for the real party in interest to ratify, join, or be substituted into the action." *Id.* 17(a)(3). The purpose of this rule is to "prevent forfeiture of an action when determination of the right party to sue is difficult or when an understandable mistake has been made." *U.S. for Use & Benefit of Wulff v. CMA, Inc.*, 890 F.2d 1070, 1074 (9th Cir. 1989). "Rule 17(a) does not apply to a situation where a party with no cause of action files a lawsuit to toll the statute of limitations and later obtains a cause of action through assignment." *Id.* at 1075. In other words, it "is not a provision to be distorted by parties to circumvent the limitations period." *Id.*

Under the FTCA, the FTC has independent authority to litigate on its own behalf to enforce the provisions of the FTC, including Section 5(a), which prohibits unfair or deceptive practice in or affecting commerce. *See generally* 15 U.S.C. §§ 41-58. Relatedly, ROSCA authorizes the FTC to enforce its provisions and to treat violations of the statute as rule violations under Section 18 of the FTCA, which authorizes the FTC to prescribe rules defining unfair or deceptive acts or practices. *Id.* § 8404(a). Where, as here, the FTC pursues an action for injunctive relief and consumer redress pursuant to Sections 13(b) and 19 of the FTC Act, 15 U.S.C. §§ 53(b) and 57b, the FTC has "exclusive authority to commence or defend, and supervise the litigation of, such action . . . in its own name," unless the FTC "authorizes the Attorney General to do so." 15 U.S.C. § 56(a)(2). The FTC "shall inform the Attorney General of the exercise of such authority and such exercise shall not preclude the Attorney General from intervening on behalf of the United States in such action[.]" *Id.* However, to pursue an action to collect a civil penalty, the FTC "may commence, defend, or intervene in, and supervise the litigation of, such action" only if (a) the FTC first "gives written notification and undertakes to consult with the Attorney General" and (b) "the Attorney General fails within 45 days after receipt of such notification to commence, defend, or intervene in, such action." *Id.* § 56(a)(1).

The Court finds that the United States' substitution comports with the law. The FTC filed the initial Complaint alleging claims under Section 5(a) of the FTCA and ROSCA, without a demand for civil penalties, against Dave only. To subsequently add a demand for civil penalties, the FTC notified and referred the matter to the Attorney General to litigate on behalf of the United States. *See* FAC ¶ 8. The Attorney General accepted the referral and filed the FAC, adding Wilk as a defendant under all counts and demands for civil penalties and other relief. *Id.* Given the referral and demand for civil penalties, the FAC substituted the United States for the FTC as the real party in interest. *Id.*

Defendants insist that the government "could have (and should have) followed the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | 2:24-cv-09566-MRA-AGR | Date | September 12, 2025 |
|---|---|---|---|
| Title | *Federal Trade Commission v. Dave, Inc.* | | |

appropriate process to refer the case to DOJ in the first instance," instead of amending their pleading.   ECF 50-1 at 48.   Defendants, however, make no persuasive argument why the government's amendment as a matter of course has caused them prejudice aside from the prospect of increased liability.   The cases cited by Defendants are inapposite.   In *United States v. Hall Family Tr. Dated June 8, 2001*, the district court held that an insurance company should not be substituted in as the real party in interest where the plaintiffs were "well aware" of the insurance company's potential claim for "more than two years" and "sat on their hands."   No. 16-CV-0538-AJB-BGS, 2019 WL 13204737, at *5 (S.D. Cal. Nov. 12, 2019).   In *Pasco Sanitary Landfill NPL Site Industrial Waste Area Generator Group III v. Basin Disposal, Inc*, the district court dismissed the complaint where the determination of the correct party to bring suit was "not difficult" at initiation based on a close reading of the statute and caselaw such that the plaintiff had not made an understandable mistake.   Here, there was no mistake in the first instance.   The United States was *not* the real party in interest at the outset of this case.   It became the real party in interest only after the FTC decided to add a demand for civil penalties and the Attorney General assumed the matter upon referral.   Even if there had been a mistake, the government amended its pleading to add its demand for civil penalties and name the United States as the real party in interest within 60 days of filing this action.   It did not sit on its hands, and Rule 17(a)(3) permits "reasonable time" for the real party in interest to substitute into the action prior to dismissal of an action for failure to prosecute.

Accordingly, the Court **DENIES** Defendants' Motion to Dismiss for improper substitution.

**IV.   CONCLUSION**

For the foregoing reasons, Defendants' Motion to Dismiss the FAC is **DENIED**.

**IT IS SO ORDERED.**

                                                     -    :    -

Initials of Deputy Clerk        mku